## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,           )
                                 )
Plaintiff,                       )
                                 )
v.                               )     Civ. A. No. 07-2037 (ESH)
                                 )
FEDERAL BUREAU OF INVESTIGATION, )
            et al.,              )
                                 )
Defendants.                      )
_____ )

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendants hereby move the Court is enter summary

judgment in their favor, on the grounds that there is no genuine issue as to any material fact and

the Defendants are entitled to judgment as a matter of law.

The Court is respectfully referred to the accompanying memorandum and to the

statement of material facts accompanying this motion. A proposed Order consistent with this

Motion is attached hereto.

Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

___/s/_____
BRANDON L. LOWY
Special Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
Telephone: (202) 307-0364

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EUGENE ALBERT FISCHER,      )
                                    )
Plaintiff,                     )
                                    )
v.                                )     Civ. A. No. 07-2037 (ESH)
                                    )
FEDERAL BUREAU OF INVESTIGATION,   )
           <u>et al.</u>,                 )
                                    )
Defendants.                  )
                                    )

**STATEMENT OF MATERIAL FACTS**
**<u>AS TO WHICH THERE IS NO GENUINE DISPUTE</u>**

      Pursuant to LCvR 7(h), Defendants hereby submit the following statement.

**I.   <u>PLAINTIFF'S FOIA/PRIVACY CORRESPONDENCE WITH THE FEDERAL</u>**
      **<u>BUREAU OF INVESTIGATION</u>**

      1.      By letter dated January 31, 1995, plaintiff submitted a FOIA/Privacy Act

("FOIPA") request to the FBI Springfield Field Office ("SIFO") for:

> [A]ll records and/or data contained in the files of your agency pertaining to the following matters which are related to a criminal case the US brought against me (US v. Fischer, Criminal No 87-40070):
>
> 1) Any investigation by your agency or other law enforcement agencies of which you may have records of federal judge James Foreman in the last ten years, concerning any criminal matters either directly or indirectly involving him.  Specifically, information is being sought concerning Archie Bob Henderson and/or Donald Medley and any investigation of them which might mention or tie in any form James Foreman to any criminal investigations or trials of them[.]
>
> 2) Information as to the criminal charges levied, the indictment dates, the judicial outcome, and the dates of incarceration of Archie Bob Henderson and/or Donald Medley from the year 1985 to the present[.]
>
> 3) Any information concerning investigations and findings (including judicial procedures) of the government's cooperating witnesses with reference to the Lanier, et al marijuana case tried in federal court during or after the trial[.] Specifically information is

sought concerning any perjury allegations or verdicts concerning the witnesses Ronald Ball, Charles Podesta, Jeffrey Tuchband, David Tobias and Ronald Valentine[.]

4) Copies of all indictments against Eugene A Fischer concerning the above mentioned case[.]

5) Information as to the proceeds, methods of sale, and actions taken with regards to any property of Eugene A Fischer taken by the U S government as a result of this case[.]

6) Copies of any 302 or other material concerning Ronald Valentine and his testimony as a cooperating witness in the above mentioned trial.

David A. Hardy Declaration ("Hardy Decl."), ¶ 7; Hardy Ex. A.

2.      By letter dated February 22, 1995, SIFO advised plaintiff that a search of the

Central Records System ("CRS") at SIFO disclosed potentially responsive cross-references;

however, SIFO had yet to review these records to determine if they were responsive to plaintiff's

request.  Hardy Decl., ¶ 8; see Hardy Ex. B.  SIFO also advised plaintiff that it was making an

effort to expedite the research and processing of documents responsive to plaintiff's January 31,

1995 request, but due to the volume of requests being processed by the SIFO, a delay was

possible.  See id.

3.      By letter dated March 30, 1995, SIFO advised plaintiff that the CRS search had

been completed and a file responsive to his request had been located.  Hardy Decl., ¶ 9; see

Hardy Ex. C.  After reviewing the file, it had been determined that the file was exempt from

disclosure pursuant to (j)(2) of the Privacy Act, 5 U.S.C. § 552a(j)(2), and FOIA Exemption

7(A), 5 U.S.C. § 552(b)(7)(A).  Hardy Decl., ¶ 9.  Plaintiff was also advised that no review had

been conducted for public source information within this responsive file and if he desired this

type of search he should advise SIFO.  Id.  Plaintiff was also informed that he could file an

administrative appeal by writing to the Co-Director, Office of Information and Privacy ("OIP"),

United States Department of Justice ("DOJ"), within sixty days from the date of this letter.  Id.

4.      By letter dated April 18, 1995, plaintiff advised SIFO that he wanted the FBI to review the responsive records for the existence of public source information.  Hardy Decl., ¶ 10; see Hardy Ex. D.  Plaintiff also agreed to pay appropriate fees.  Id.

5.      By separate letter to OIP, dated April 18, 1995, plaintiff appealed the FBI's response to his January 31, 1995 request.  Hardy Decl., ¶ 11; see Hardy Ex. E.

6.      By letter dated April 28, 1995, OIP advised plaintiff that his appeal was received on April 24, 1995.  Hardy Decl., ¶ 12; see Hardy Ex. F.  Plaintiff was also informed of OIP's substantial backlog of pending appeals and that his appeal was assigned Appeal Number 95-0974.  Id.

7.      By letter dated September 4, 1996, SIFO advised plaintiff that a review for public source information was being conducted and that this information would be released after a fee determination was made.  Hardy Decl., ¶ 13; see Hardy Ex. H.

8.      By letter dated December 30, 1996, OIP affirmed the FBI's handling of plaintiff's request.  Hardy Decl., ¶ 14; see Hardy Ex. I.  Plaintiff was also advised that his request for public source material was being handled separately and that he would be contacted directly by the FBI when the processing had been completed.  Hardy Decl., ¶ 14.  Plaintiff was advised of his right to seek judicial review if he was dissatisfied with this response.  Id.

9.      By letter dated December 18, 2006, OIP remanded plaintiff's FOIPA Request Number 414039 for further processing.  Hardy Decl., ¶ 15; see Hardy Ex. J.  OIP stated that "although the FBI properly invoked Exemption 7(A) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(A), at the time your request was processed, that exemption, which pertains to records of information compiled for law enforcement purposes...is no longer applicable to withhold the records in their entireties."  Hardy Ex. J.  Plaintiff was advised of his right to seek

3

judicial review if he was dissatisfied with this response.  See Id.

10.    By letter dated March 22, 2007, plaintiff advised that he was pursuing his request since his appeal to OIP had been granted.  Hardy Decl., ¶ 16; see Hardy Ex. M.

11.    By letter dated April 13, 2007, the FBI advised plaintiff that approximately 580 pages were potentially responsive to FOIPA Request Number 414039 and that the FBI needed to know whether plaintiff was willing to pay the anticipated duplication cost of $48.00.  Hardy Decl., ¶ 17; see Hardy Ex. N.

12.    By letter dated May 14, 2007, the FBI advised plaintiff of the status of FOIPA Request Number 414039.  Hardy Decl., ¶ 18; see Hardy Ex. O.  Plaintiff was advised that his request was being reviewed by an analyst and that in the event that the records responsive to his request contained sensitive national security information the records would undergo a declassification review prior to application of FOIA exemptions.  Id.

13.    By letter dated June 5, 2007, plaintiff requested that the FBI send him the referenced 580 pages and stated that he agreed to pay the estimated cost of duplication.  Hardy Decl., ¶ 19; see Hardy Ex. P.  Plaintiff also provided his correct address.  Id.

14.    By letter dated September 18, 2007, FBIHQ advised that it had reviewed 40 pages and was releasing 34 pages with redactions in response to FOIPA Request Number 414039.  Hardy Decl., ¶ 20; see Hardy Ex. S.  Certain information was being withheld pursuant to FOIA Exemptions (b)(2), (b)(6), (b)(7)(C) and (b)(7)(D).  Hardy Decl., ¶ 20.  Plaintiff was also advised that he could file an administrative appeal by writing to OIP within sixty days from the date of this letter.  Id.

Respectfully submitted,


____/s/_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney



____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney



___/s/_____
BRANDON L. LOWY
Special Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
Telephone: (202) 307-0364

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EUGENE ALBERT FISCHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Civ. A. No. 07-2037 (ESH) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
|        et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

        This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

pertains to Plaintiff's FOIA requests to Defendant Federal Bureau of Investigation ("FBI").[1]

"Plaintiff was tried and convicted of being a principal in a Continuing Criminal Enterprise

("CCE") for the importation and distribution of marijuana in the U.S. District Court in Benton,

Illinois in 1988 and as a result of the conviction received a life sentence without parole." R.[2] 1, ¶

5.  Plaintiff seeks to obtain documents from Defendants in an attempt to prove his alleged

innocence of the charges of which he was convicted.  See id., ¶ 6.  He alleges that the Defendants

have improperly withheld the records that he seeks.  See id., ¶ 15.  At this juncture, however,

there is no question that Defendants, after conducting reasonable searches, have released all

responsive documents found.

---

[1]    The other Defendant named by plaintiff is the Office of Information Privacy of the United States Department of Justice, which did not receive any FOIA requests from plaintiff.
[2]    "R." followed by a number refers to the document identified at that number on this Court's docket entries.

Defendants are entitled to summary judgment.  No issue of material fact exists as to whether the Defendant FBI received FOIA requests and has processed them.  Further, the FBI Springfield Field Office ("SIFO") exchanged correspondence with the Plaintiff, searched its files, located responsive documents and duly notified Plaintiff of this development via multiple letters from 1996 to 2007.  Plaintiff cannot now deny that adequate searches have been conducted and that all responsive, non-exempt documents have been released to him.  Thus, the Defendants deserve judgment as a matter of law.

## STATEMENT OF FACTS

Defendants hereby incorporate the Statement of Material Facts Not In Genuine Dispute, filed contemporaneously with this Memorandum.

## ARGUMENT

### I. LEGAL STANDARDS

#### A. Evidentiary Standard For Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).  Once the moving party has met its burden, the non-movant—here Plaintiff—may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, Plaintiff must present some objective evidence that would enable the Court to find he is entitled to relief.

In <u>Celotex Corp. v. Catrett</u>, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986); <u>see also</u> <u>Laningham v. Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).  In <u>Celotex</u>, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  477 U.S. at 327 (<u>quoting</u> Fed. R. Civ. P. 1).

**B.      FOIA Summary Judgment Standards**

In a FOIA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  <u>Washington Post Co. v. U.S. Dept. of Health and Human Services</u>, 865 F.2d 320, 325 (D.C. Cir. 1989).

An agency satisfies the summary judgment requirements in a FOIA case by showing that each document was produced, not withheld, is unidentifiable, or is exempt from disclosure. <u>Weisberg v. U.S. Dept. of Justice</u>, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden, the defendant may rely on affidavits or declarations and other evidence by the agency that shows that the documents are exempt from disclosure.  Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits or declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned' by evidence . . . of bad faith on the part of the agency."  <u>Public Citizen, Inc. v. Dept. of State</u>, 100 F. Supp. 2d 10, 16 (D.D.C. 2000) (<u>quoting</u> <u>McGhee v. Central Intelligence Agency</u>, 697 F.2d 1095, 1102 (D.C. Cir. 1983)).  Once

the Court determines that the declarations are sufficient, it need not inquire further.  Students

Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C. Cir. 2001).

## II.  DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE ADEQUATE SEARCHES WERE CONDUCTED AND RESPONSIVE MATERIALS HAVE BEEN RELEASED

In responding to a FOIA request, an agency must conduct a reasonable search for

responsive records.  Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Cleary,

Gottlieb, Steen & Hamilton v. Dept. of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993);

Weisberg v. U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  This "reasonableness"

standard focuses on the method of the search, not its results, so that a search is not unreasonable

simply because it fails to produce responsive information.  Id. at 777 n.4.  An agency is not

required to search every record system, but need only search those systems in which it believes

responsive records are likely to be located.  Oglesby, 920 F.2d at 68.  Consistent with the

reasonableness standard, the adequacy of the search is "dependent upon the circumstances of the

case."  Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990).  The fundamental question is

not "whether there might exist any other documents responsive to the request, but rather whether

the search for those documents was adequate."  Steinberg v. Dept. of Justice, 23 F.3d 548, 551

(D.C. Cir. 1994) (quoting Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Even when a requested document indisputably exists or once existed, summary judgment

will not be defeated by an unsuccessful search for the document so long as the search was

diligent and reasonable.  Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C.

Cir. 1995).  Additionally, the mere fact that a document once existed does not mean that it now

exists; nor does the fact that an agency created a document necessarily imply that the agency has

retained it.  Maynard v. CIA, 986 F.2d 547, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith."  Miller v. United States Department of State, 779 F.2d 1378, 1383 (8th Cir. 1985); Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980).  Although the agency has the burden of proof on the adequacy of its search, the "affidavits submitted by an agency are 'accorded a presumption of good faith'". Carney v. Dept. of Justice, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Servs., 926 F.2d at 1200).  Thus, once the agency has met its burden regarding adequacy of its search, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency.  Miller, 779 F.2d at 1383.  A requester may not rebut agency affidavits with purely speculative allegations.  See Carney, 19 F.3d at 813; SafeCard Servs., 926 F.2d at 1200; Maynard, 986 F.2d at 559-560 (1st Cir. 1993).  As discussed below, all of the Defendants meet the reasonableness standard in conducting their searches and are therefore entitled to summary judgment.

### A.    Processing of Plaintiff's FOIA Requests to the FBI

#### 1.  The FBI Central Records System

In processing requests from individuals seeking information on themselves, the FBI begins by searching its Central Records System ("CRS").  See Hardy Decl., ¶ 21.  The Central Records System ("CRS") enables the FBI to maintain all information it has acquired in the course of fulfilling its mandated law enforcement responsibilities.  Id.  The records maintained in the

CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes.  Id.  The subject matter of a file may correspond to an individual, organization, company, publication, activity, or foreign intelligence matter (or program).  Id. Although the CRS is primarily designed to serve as an investigative tool, the FBI utilizes the CRS to conduct searches that are likely to yield documents responsive to FOIA/Privacy Act requests.  Id.  The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS").  Id.

The ACS was implemented for all Field Offices, Legal Attachés ("Legats"), and FBIHQ in order to consolidate portions of the CRS that were previously automated.  Id., ¶ 22.  ACS can be described as an internal computerized subsystem of the CRS.  Id.  The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order.  Id., ¶ 23.  The entries in the General Indices fall into two categories:

(a)  A "main" entry --- A "main" entry, or "main" files, carries the name corresponding with a subject of a file contained in the CRS.

(b)  A "reference" entry --- "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

Searches made in the General Indices to locate records concerning a particular subject, such as Eugene Albert Fischer, are made by searching the subject requested in the index.  Id., ¶ 24.

The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases.  Id., ¶ 25.  First, the Investigative Case Management ("ICM") provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads.  Id.  Second, the Electronic Case File ("ECF") serves as the central electronic repository for the FBI's official

text-based documents.  Id.  Third, the Universal Index ("UNI") continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Id.

The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the investigative FBI Special Agent ("SA") assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ.  Id., ¶ 26.  The FBI does not index every name in its files; rather, it indexes only that information considered pertinent, relevant, or essential for future retrieval.  Id. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., Plaintiff.  Id.

## 2. Surveillance ("ELSUR") Indices

The Electronic Surveillance ("ELSUR") indices are used to maintain information on a subject whose electronic and/or voice communications have been intercepted as the result of a consensual electronic surveillance or a court-ordered (and/or sought) electronic surveillance conducted by the FBI.  Hardy Decl., ¶ 27.  The ELSUR indices are a separate system of records from the CRS.  Id., ¶ 28.  These indices include individuals who were the (a) targets of direct surveillance, (b) participants in monitored conversations, and (c) owners, leasers, or licensors of the premises where the FBI conducted electronic surveillance.  Id.  The ELSUR index also contains the date a voice was monitored, a source number to identify the individual on whom the surveillance was installed, and the location of the FBI field office that conducted the monitoring. Id.  The indices are published as a separate records system in the Federal Register because not all

names contained in the ELSUR index can be retrieved through the General Index and CRS.  See 52 Fed. Reg. 8482 (1992).  Id., ¶ 29.

Since January 1, 1960, the field offices have been including in their ELSUR indices the names of all persons whose voices have been monitored through a FBI microphone installation or telephone surveillance, which are retrievable through the FBIHQ or local field office ELSUR indices.  Id., ¶ 30.  Although a requirement to forward the names of all persons mentioned during monitored conversations to FBIHQ discontinued requirement in 1969, some field offices still include the names of individuals mentioned in monitored conversations in the field office's ELSUR index.  Id., ¶ 31.

**B.  <u>Search for Records Responsive to Plaintiff's Request</u>**

In response to OIP remanding plaintiff's request, the FBI reprocessed the following three main files responsive to plaintiff's request: 190-HQ-1200038, 281B-SI-45838 and 90A-PH-73768.  Id., ¶ 32.  These files were reprocessed and released to plaintiff in a letter dated September 18, 2007, and consisted of 40 pages being reviewed and 34 pages being released with redactions taken pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions 2, 6, 7(C), and 7(D).  5 U.S.C. § 552(b)(2), (b)(6), (b)(7)(C) and (b)(7)(D).  Id.  FBIHQ reviewed file 281B-SI-45838 and determined that it is a file concerning multiple subjects.  Id., ¶ 33.  When processing a multiple subject file, only the documents deemed responsive to the FOIA/Privacy Act request received are processed.  Id.  When FBIHQ informed plaintiff by letter dated April 30, 2007 that there were approximately 580 pages of potentially responsive records, this was before the file was reviewed and non-responsive documents were excluded.  Id.  Once FBIHQ excluded all of the documents out of the scope of plaintiff's request, 40 pages were identified as being actually responsive to the request.  Id.

Upon receipt of the complaint in this litigation, the FBI decided to conduct a second search. Id., ¶ 34. In the absence of a specific request for a search of cross-references at the administrative level, the FBI's current policy is to search for and identify only "main" files responsive to FOIA/Privacy Act requests. Id. In this case, at the administrative level, plaintiff did not specifically request that a search be conducted for cross-references. In spite of this, the FBI decided to search its HQ indices to the CRS for cross-references. Id. This second search failed to locate any responsive cross-references at SIFO. Id. The FBI has searched all locations likely to yield documents responsive to plaintiff's FOIA/Privacy Act request to SIFO. Id. A search of the ELSUR indices also located no responsive records. Id.

## C. FBI Properly Applied FOIA and Privacy Act Exemptions

All documents were processed to achieve maximum disclosure consistent with the access provisions of the Privacy Act and the FOIA. Hardy Decl., ¶ 35. Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. Id. No reasonably segregable, nonexempt portions were withheld from plaintiff. Id. To further describe the information withheld could identify the very material that the FBI seeks to protect.[3] Id. The exemptions asserted by the FBI as grounds for non-disclosure of portions of documents are Exemption (j)(2) of the Privacy Act and FOIA Exemptions 2, 6, 7(C), and 7(D). Id.

Copies of the designated documents contain, on their face, coded categories of exemptions which detail the nature of the information withheld pursuant to the provisions of the FOIA. Hardy Decl., ¶ 36. The coded categories are provided to aid in the Court and plaintiff's review of the FBI's explanations of FOIA exemptions used to withhold the protected material.

---

[3]   Copies of pages released in part and in full are attached hereto as Hardy Ex. T. Each page is consecutively numbered 1- 40 in the lower right-hand corner of the page.

Id.  Accordingly, a review of this information will reveal that all material withheld is exempt

from disclosure pursuant to FOIA Exemptions, or it is so intertwined with protected material that

segregation is not possible without revealing the underlying protected material.  Id.[4]

### 1.  Privacy Act Exemption (j)(2)

Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records

"maintained by an agency or component thereof which performs as its principal function any

activity pertaining to the enforcement of criminal laws, including police efforts to prevent,

control, or reduce crime or to apprehend criminals...."  5 U.S.C. § 552a(j)(2).  The investigatory

records at issue in this matter are part of the FBI's CRS and concern three criminal investigations

of plaintiff.  Hardy Decl., ¶ 40.  These files concern two instances where the FBI investigated

plaintiff's plot to escape from a federal prison in violation of 18 U.S.C. § 751a and the FBI

participated in a multi-agency task force investigation of narcotics charges in violation of 21

U.S.C. § 841(a)(1).[5]  Id.  Accordingly, these files are exempt from disclosure pursuant to 5

U.S.C. § 552a(j)(2), in conjunction with 28 C.F.R. § 16.96.[6]  Id.  Although access to these

records was denied under the Privacy Act, they have been processed under the access provisions

of the FOIA as well.  Id.  Exemption (j)(2) is cited on these pages: Hardy Ex. T, 22-40.[7]  Id.

---

[4]    Each withholding of information is accompanied by a code that corresponds to a category. For
example, if "(b)(7)(C)-1" appears on the page, the "(b)(7)(C)" designation refers to "Exemption
(b)(7)(C)" of the FOIA concerning "Unwarranted Invasion of Personal Privacy."  The subcategory "1"
narrows the main category into the more specific subcategory "Names and/or Identifying Information of
FBI Special Agents ("SAs") and Support Personnel."  The coded categories of exemptions used in the
processing of plaintiff's requests are set forth in a table attached hereto.  See Hardy Decl., ¶ 37.

[5]     This subsection states that "it shall be unlawful for any person knowingly or intentionally…to
manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a
controlled substance."  21 U.S.C. § 841(a)(1).

[6]    This regulation is entitled "Exemption of Federal Bureau of Investigation Systems -- limited access",
and addresses the FBI systems of records that are exempt from disclosure by the Privacy Act.  See 28
C.F.R. §16.96.

[7]    The remaining records responsive to plaintiff's request – Hardy Ex. T, pgs. 1-21 – are not subject to a
Privacy Act exemption.  An investigative file number on page 3 of Hardy Ex. T has also been withheld
pursuant to Exemption (j)(2).  However, certain items of information--in this case the names and/or

## 2.   FOIA Exemption (b)(2) – Internal Agency Rules and Practices

Exemption 2 under FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Not long after FOIA was passed, the Supreme Court declared that Exemption 2 was intended to relieve agencies of the burden of assembling and providing access to any "matter in which the public could not reasonably be expected to have an interest" and matters of public interest "where disclosure may risk circumvention of agency regulation." Dept. of Air Force v. Rose, 425 U.S. 352, 369-70 (1976). Subsequently, courts have approved two general categories of withholdings under Exemption 2: (1) internal matters of a relatively trivial nature (sometimes referred to as "low-2"); and (2) more substantial internal matters for which disclosure would risk circumvention of a legal requirement (sometimes called "high-2"). Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992); see Crooker v. ATF, 670 F.2d 1051 (D.C. Cir. 1981) (en banc) (setting forth a two part test for high-2 material). In short, this exemption protects routine internal administrative matters and functions of the FBI that have no effect on the public at large. Nevertheless, disclosure of this information could impede the effectiveness of the FBI's internal law enforcement procedures. Hardy Decl., ¶ 41.

### a. *Exemption (b)(2)-1: Telephone Numbers of FBI Personnel*

Exemption (b)(2)-1 has been asserted to protect two telephone numbers of FBI SAs. Hardy Decl., ¶ 42. The telephone numbers clearly relate to the internal practices of the FBI in that FBI personnel use this tool during the performance of their duties. Id. Disclosure of the business telephone numbers could subject these individuals to harassing telephone calls that

---

identifying information of FBI SAs and support personnel--have been redacted. Although this information appears in a file or document retrieved by an individual's name, this information is not about plaintiff and, therefore, does not qualify as records about that individual. Consequently, these records are out of scope of plaintiff's Privacy Act request. Hardy Decl., ¶ 40 n.10.

could disrupt official business (including impeding ability to conduct and conclude law enforcement investigations in a timely manner). Id. Accordingly, because these internal telephone numbers are related solely to the FBI's internal practices, because disclosure would not serve any public interest, and because disclosure would impede the FBI's effectiveness, the FBI properly withheld this information pursuant to Exemption (b)(2)-1 on the following pages: Hardy Ex. T, 1 and 19. Id., ¶ 43.

### b. *Exemption (b)(2)-2: Source Symbol Number*

Exemption (b)(2)-2 has been asserted in conjunction with Exemption (b)(7)(D)-3 to withhold one permanent source symbol number in the records responsive to plaintiff's request. Hardy Decl., ¶ 44. Permanent Source Symbol numbers are used to conceal an individual's identity administratively by inserting this number in written documents in lieu of his/her true name. Id. Source symbol numbers are assigned to confidential informants who report information to the FBI on a regular basis pursuant to an "express" grant of confidentiality. Id. A cooperating witness symbol number belonging to a third party is a unique identifier for him within a particular field office. Id. Once this number is assigned to this third party, it will always be synonymous with him. Id. Disclosure of this material would reveal information as to the strength, breadth and scope of the informant program. Id. If a particular symbol number is released to the public repeatedly and in various documents, the identity of the source could be determined. Id. Plaintiff has received all segregable information from files. Id. A third party's cooperating witness symbol number does not shed light upon the FBI's performance of its statutory duties; therefore, there exists no public interest in the release of that number. Id.

Exemption (b)(2)-2 is cited in conjunction with Exemption (b)(7)(D)-3 on the following page:

Hardy Ex. T, 34.  Id.

### 3.    FOIA Exemption (b)(6) – Clearly Unwarranted Invasion of Personal Privacy

Exemption (b)(6) of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." Lepelletier v. FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999), quoting Dept. of State v. Washington Post Co., 456 U.S. 595, 602 (1982).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 763 (1989).

In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the Court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." Lepelletier, 164 F.3d at 46 (interior quotation marks omitted), citing United States Dept. of Defense v. FLRA, 964 F.2d 26, 29 (D.C. Cir. 1992), quoting Rose, 425 U.S. at 372 (1976).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:  "[T]he *only* relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" Lepelletier, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted) (quoting United States Dept. of Defense v. FLRA, 510 U.S. 487, 497 (1994); see also Reporters Committee, 489 U.S. at 773.  Information that does not

directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Id. at 775.  Further, "something, even a modest privacy interest, outweighs nothing every time."  National Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989); but see Lepelletier, 164 F.3d at 48 (in extraordinary circumstances where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption (b)(6) must include consideration of that interest).

In this case, the FBI balanced the privacy interests of the individuals mentioned in the responsive documents against any public interest in disclosure.  Hardy Decl., ¶ 46.  In asserting this exemption, the FBI examined each piece of information to determine the degree and nature of the privacy interest of any individual whose name and/or identifying information appears in the documents at issue.  Id.  The public interest in disclosure of the information is determined by whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes, and/or how the FBI actually conducts its internal operations and investigations.  Id.  As explained below, there is no legitimate public interest in the release of the information that has been withheld pursuant to Exemption (b)(6).  Id.

### a. Exemption (b)(6)-1: Names and/or Identifying Information of FBI SAs and Support Personnel

Exemption (b)(6)-1 has been asserted, in conjunction with exemption (b)(7)(C)-1, to protect the names and identifying information of SAs responsible for conducting, supervising, and/or maintaining the investigative activities reported in the files responsive to plaintiff's request.  Hardy Decl., ¶ 47.  Publicity regarding particular investigations to which they have been assigned may seriously prejudice their effectiveness in conducting other investigations.  Id.

14

Regardless of whether they are currently employed by the FBI, SAs also have individual privacy concerns regarding unnecessary, unofficial questioning about investigations.  Id.  FBI SAs conduct official conduct searches and make arrests, both of which constitute reasonable, but nonetheless serious intrusions into peoples' lives.  Id.  The publicity associated with the release of an SA's identity in connection with a particular law enforcement investigation could rekindle animosity toward the SA for a previous unwanted intrusion.  Id.  Accordingly, SAs maintain substantial privacy interests in not having their identities disclosed.  Id.  There is no public interest to be served by disclosing the identities of the SAs or support personnel to the public, as disclosure would not shed light on the FBI's performance of its statutory duties.  Id., ¶ 48.  Thus, disclosure of this information would constitute a clearly unwarranted invasion of FBI SA's personal privacy.  Id.

The names of FBI support employees are also withheld pursuant to FOIA Exemption (b)(7)(C)-1.  Id., ¶ 49.  They were assigned to handle tasks relating to the official investigation into the activities of plaintiff and others in the files responsive to plaintiff's request.  Id.  They were and may remain in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to information.  Id.  These individuals maintain substantial privacy interests in not having their identities disclosed.  Id.  Further, there is no public interest in disclosure of the identities of these individuals, as release would not shed light on the FBI's performance of its statutory duties.  Id.  Therefore, any such disclosure on the following pages could constitute a clearly unwarranted invasion of their personal privacy: Hardy Ex. T, 1-3, 10, 16-19, 23, 25, 28 and 33.  Id.

    *b. Exemption (b)(6)-2: Names and/or Identifying Information of Third Parties Merely Mentioned*

Exemption (b)(6)-2 has been asserted, in conjunction with Exemption (b)(7)(C)-2, to withhold the names and identifying information of third parties merely mentioned in documents concerning the criminal investigation of plaintiff. Hardy Decl., ¶ 50. This identifying information includes addresses, license plates numbers and registration information, dates of birth, aliases, as well as career and job titles of people who came into contact with plaintiff during the course of his activities. Id. These individuals were not of investigative interest to the FBI, and they maintain legitimate privacy interests in not having this information disclosed. Id. The FBI's disclosure of their names and other personal information would reveal that these third parties were connected with the FBI's investigation of plaintiff, which carries an extremely negative connotation. Id. Disclosure of their identities could subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion upon them. Id. Accordingly, the FBI determined that these third parties maintained a substantial privacy interest in not having information about them disclosed. Id. Further, there is no public interest in disclosure because it would not help determine how the FBI is conducting its statutory duties. Id. Thus, disclosure of this information on the following pages would constitute a clearly unwarranted invasion of third parties' personal privacy: Hardy Ex. T, 3, 32, and 39. Id.

> c. *Exemption (b)(6)-3: Names and/or Identifying Information of Third Parties of Investigative Interest*

Exemption (b)(6)-3 has been asserted, in conjunction with Exemption (b)(7)(C)-3, to protect the names and identifying information of third parties of investigative interest to the FBI and/or other law enforcement agencies. Hardy Decl., ¶ 51. Identifying information withheld concerning these third parties includes addresses, dates of birth, Social Security Numbers, aliases, telephone numbers, FBI arrest numbers, license plate numbers, police department numbers, fingerprint classifications, and personal characteristics. Id. The release of the

16

identities of the numerous individuals of investigative interest due to their association with the suspects of illegal narcotics trafficking could subject them to harassment, embarrassment, and undue public attention.  Id.  Disclosure of such information would be a clearly unwarranted invasion of their personal privacy.  See id.

Plaintiff has not provided the FBI with any written notarized authorizations from these third parties waiving their rights to personal privacy.  Id.  The disclosure of the names of these third parties would shed no light on the FBI's performance of its statutory duties, and therefore there is no discernible public interest in the disclosure.  Id., ¶ 52.  Consequently, in balancing the substantial privacy interest that these individuals have in this information against no legitimate public interest in its disclosure, the FBI properly withheld this information pursuant to Exemption (b)(6)-3 on the following pages: Hardy Ex. T, 23-33 and 36-39.  Id.

### d. Exemption (b)(6)-4: Names and/or Identifying Information of a Cooperating Witnesses

Exemption (b)(6)-4 has been asserted, in conjunction with Exemption (b)(7)(C)-4, to protect the identities of and information provided by several Cooperative Witnesses ("CWs").  Hardy Decl., ¶ 53.  The maintenance of confidentiality surrounding CWs is essential to effective law enforcement and is reflected in official FBI policy.  Id.  A CW is any individual who meets the definition of a Confidential Informant ("CI") who has agreed to testify in a proceeding as a defendant or potential witness.  Id.  As a result, it is FBI policy to protect a CW's true identity from unauthorized disclosure to the same degree as the true identity of a Confidential Informant.  Id.  Because a CW will face the same or even greater risks from exposure as a CI, it is FBI policy that CWs be provided the same degree of protection.  Id.  Any information that could possibly identify a CW, including dates and places they have been, is protected from disclosure.  Id.  There is no public interest in disclosure, as release would not shed light on the FBI's

performance of its statutory duties.  Id.  Therefore, Exemption (b)(6)-4 has been asserted in

conjunction with Exemption (b)(7)(C)-4 and (b)(7)(D)-2 to protect the identities of CWs who

provided information to the FBI on the following pages: Hardy Ex. T, 27, 37, 38, and 40.  Id.

### 4.    FOIA Exemption (b)(7) – Confidential Source Material

Exemption 7 of the FOIA protects from mandatory disclosure records or information

compiled for law enforcement purposes, but only to the extent that disclosure could reasonably

be expected to cause one of the harms enumerated in the subpart of the exemption.  See 5 U.S.C.

§ 552(b)(7).  In this case, the harm that could reasonably be expected to result from disclosure

concerns invasion of personal privacy and revealing the identity of confidential sources.  Hardy

Decl., ¶ 54.

Before an agency can invoke any of the harms enumerated in Exemption 7, it must first

demonstrate that the records or information at issue were compiled for law enforcement

purposes.  Id., ¶ 55.  Law enforcement agencies such as the FBI must demonstrate that the

records at issue are related to the enforcement of federal laws and that the enforcement activity is

within the law enforcement duty of that agency.  Id.  Files 281B-SI-45838 and 90A-PH-73768

relate to a criminal investigation of plaintiff's involvement in the importation of narcotics and

plaintiff's alleged escape conspiracy from the USP, Lewisburg, Pennsylvania, respectively.  Id.

The FBI has jurisdiction over these two types of law enforcement investigations.  Id.  Thus, there

is no doubt that these two investigations fall within the law enforcement duties of the FBI.  Id.

Accordingly, the information in these two files readily meets the threshold requirement of

Exemption 7, and the remaining inquiry is whether their disclosure "could reasonably be

expected to constitute an unwarranted invasion of personal privacy," or "disclose the identity of

confidential sources."  Id., ¶ 56.

*a. Exemption (b)(7)(C): Unwarranted Invasion of Personal Privacy*

Exemption (b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) "show the information is likely to advance that interest." Boyd v. Criminal Division of U.S. Dept. of Justice, 475 F.3d 381, 366, (D.C. Cir. 2007) (citing Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004)).  If the public interest is government wrongdoing, then the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Favish, 541 U.S. at 174.

The FBI satisfies the standard for invoking Exemption 7 of the FOIA because of its law enforcement mission and responsibilities for enforcement of criminal statutes. Rugiero v. United States Dept. of Justice, 257 F.3d 534, 550 (6th Cir. 2001) (explaining that the "Court has adopted a per se rule" that applies not only to criminal enforcement actions, but to "records compiled for civil enforcement purposes as well.").  Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  The Supreme Court affirmed the broad scope of Exemption 7(C) in Favish, 541 U.S. 157 (2004).  When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d

19

337, 340 (D.C. Cir. 1987) (citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982)).  A

criminal law enforcement agency must simply show that "the nexus between the agency's

activity . . . and its law enforcement duties" is "'based on information sufficient to support at

least "a colorable claim" of its rationality.'"  Keys, 830 F.2d at 340 (quoting Pratt, 673 F.2d at

421).  Once the agency has demonstrated that the records were compiled for law enforcement

purposes, the Court must next consider whether the release of information withheld "could

reasonably be expected to constitute an unwarranted invasion of personal privacy."  This

determination necessitates a balancing of the individual's right to privacy against the public's

right of access to information in government files.  See, e.g., Reporters Committee, 489 U.S.

749, 776-80 (1989).  Only where the requester can produce meaningful evidence  –  "more than a

bare suspicion" – that would cause a reasonable person to believe that the government had

engaged in impropriety should the Court even consider balancing the privacy interests against

the public interest in disclosure.  Favish, 541 U.S. at 174.  Plaintiff here cannot allege any such

impropriety.

     The FBI balanced the privacy interests of the individuals mentioned in the responsive

documents against any public interest in disclosure.  Hardy Decl., ¶ 58.  In asserting this

exemption, the FBI examined each piece of information to determine the degree and nature of

the privacy interest of any individual whose name and/or identifying data appears in the

documents at issue.  Id.  The public interest in disclosure of the information is determined by

whether the information in question would inform plaintiff or the general public about the FBI's

performance of its mission to enforce federal criminal and national security statutes and/or how

the FBI actually conducts its internal operations and investigations.  Id.  The law is well settled

that all of these individuals, ranging from FBI Special Agents and support staff, to third parties

and victims, have substantial, protectable privacy interests in their anonymity.  <u>Nation Magazine</u>,

71 F.3d at 893, 895-96; <u>Computer Professionals for Social Responsibility v. United States Secret</u>

<u>Service</u>, 72 F.3d 897, 904 (D.C. Cir. 1996); <u>Farese v. U.S. Dept. of Justice</u>, 683 F. Supp. 273,

275 (D.D.C. 1987); <u>Lesar v. United States Dept. of Justice</u>, 636 F.2d 472, 487-88 (D.C. Cir.

1980).  The Hardy Declaration reflects clearly that Exemption 7(C) was appropriately applied in

this case to protect names and personal information of the following individuals.

      i. <u>Exemption (b)(7)(C)-1</u>: Names and/or Identifying Information of
         FBI SAs and Support Personnel

      Exemption (b)(7)(C)-1 has been asserted, in conjunction with Exemption (b)(6)-1, to

protect the names and identifying information of FBI SAs who were responsible for conducting,

supervising, and/or maintaining the investigative activities reported in the files responsive to

plaintiff's request.  Hardy Decl., ¶ 59.  Identifying information includes Social Security

Numbers, telephone numbers, and telephone extensions of FBI SAs.  <u>Id</u>.  Publicity regarding

particular investigations to which they have been assigned may seriously prejudice their

effectiveness in conducting other investigations.  <u>Id</u>.  Regardless of whether they are currently

employed by the FBI, SAs also have individual privacy concerns regarding unnecessary,

unofficial questioning about investigations.  <u>Id</u>.  FBI SAs conduct official conduct searches and

make arrests, both of which constitute reasonable, but nonetheless serious intrusions into

peoples' lives.  <u>Id</u>.  The publicity associated with the release of an SA's identity in connection

with a particular law enforcement investigation could rekindle animosity toward the SA for a

previous unwanted intrusion.  <u>Id</u>.  Accordingly, SAs maintain substantial privacy interests in not

having their identities disclosed.  <u>Id</u>.  There is no public interest to be served by disclosing the

identities of the SAs or support personnel to the public, as disclosure would not shed light on the

FBI's performance of its statutory duties.  Id., ¶ 60.  Thus, disclosure of this information would constitute a clearly unwarranted invasion of FBI SA's personal privacy.  Id.

The names of FBI support employees are also withheld pursuant to FOIA Exemption (b)(7)(C)-1.  Id., ¶ 61.  They were assigned to handle tasks relating to the official investigation into the activities of plaintiff and others in the files responsive to plaintiff's request.  Id.  They were and may remain in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to information.  Id.  These individuals maintain substantial privacy interests in not having their identities disclosed.  Id.  Further, there is no public interest in disclosure of the identities of these individuals, as release would not shed light on the FBI's performance of its statutory duties.  Id.  Therefore, any such disclosure on the following pages could constitute a clearly unwarranted invasion of their personal privacy: Hardy Ex. T, 3, 23, 25, 28, and 33.  Id.

ii. Exemption (b)(7)(C)-2: Names and/or Identifying
Information of Third Parties Merely Mentioned

Exemption (b)(7)(C)-2 has been asserted, in conjunction with Exemption (b)(6)-2, to withhold the names and identifying information of third parties merely mentioned in the law enforcement investigatory records responsive to plaintiff's request.  Hardy Decl., ¶ 62.  This identifying information includes addresses, license plate numbers and registration information, dates of birth, aliases, as well as career and job titles who interacted with plaintiff or other individuals mentioned in these files.  Id.  These individuals were not of investigative interest to the FBI, and they maintain legitimate privacy interests in not having this information disclosed.  Id.  The FBI's disclosure of their names and other personal information would reveal that these third parties were connected with the FBI's investigation of plaintiff, which carries an extremely negative connotation.  See id.  Disclosure of their identities could subject these individuals to

22

possible harassment or criticism and focus derogatory inferences and suspicion upon them.  Id.

Accordingly, the FBI determined that these third parties maintained a substantial privacy interest

in not having information about them disclosed.  Id.  Further, there is no public interest in

disclosure because it would not help determine how the FBI is conducting its statutory duties.

Id.  Thus, disclosure of this information on the following pages would constitute a clearly

unwarranted invasion of third parties' personal privacy: Hardy Ex. T, 3, 32, and 39.  Id.


iii. Exemption (b)(7)(C)-3: Names and/or Identifying
Information of Third Parties of Investigative Interest

Exemption (b)(7)(C)-3 has been asserted, in conjunction with Exemption (b)(6)-3, to

protect the names and identifying information of third parties of investigative interest to the FBI

and/or other law enforcement agencies.  Hardy Decl., ¶ 63.  Identifying information withheld

concerning these third parties includes addresses, dates of birth, Social Security Numbers,

aliases, telephone numbers, FBI arrest numbers, license plate numbers, police department

numbers, fingerprint classifications, and personal characteristics.  Id.  The release of the

identities of the numerous individuals, who are of investigative interest due to their association

with the suspects of illegal narcotics trafficking, could subject them to harassment,

embarrassment, and undue public attention.  Id.  Disclosure of such information would be a

clearly unwarranted invasion of their personal privacy.  See id.

Plaintiff has not provided the FBI with any written notarized authorizations from these

third parties waiving their rights to personal privacy.  Id.  The disclosure of the names of these

third parties would shed no light on the FBI's performance of its statutory duties, and therefore

there is no discernible public interest in the disclosure.  Id., ¶ 64.  Consequently, in balancing the

substantial privacy interest that these individuals have in this information, against the fact that

there is no legitimate public interest in its disclosure, the FBI properly withheld this information

pursuant to Exemption (b)(7)(C)-3 on the following pages: Hardy Ex. T, 23-33, 36-39.  Id.

       iv.  Exemption (b)(7)(C)-4: Names and/or Identifying Information
            of Cooperative Witnesses

Exemption (b)(7)(C)-4 has been asserted, in conjunction with Exemption (b)(6)-4 to

protect the identity and information provided by several Cooperative Witnesses ("CWs").  Hardy

Decl., ¶ 65.  The maintenance of confidentiality surrounding CWs is essential to effective law

enforcement and is reflected in official FBI policy.  Id.  A CW is any individual who meets the

definition of a Confidential Informant ("CI") and has agreed to testify in a proceeding as a

defendant or potential witness.  Id.  As a result, it is FBI policy to protect a CW's true identity

from unauthorized disclosure to the same degree as the true identity of a Confidential Informant

because a CW faces the same, or even greater risks from exposure as a CI does.  Id.  Any

information that could possibly identify a CW, including dates and places where they have been,

are protected from disclosure.  Id.  Exemption (b)(7)(C)-4 has been asserted, in conjunction with

Exemption (b)(6)-4 and (b)(7)(D)-2, to protect the identity of a CW who provided information to

the FBI on the following pages: Hardy Ex. T, 27, 37, 38, and 40.  Id.

### b. Exemption (b)(7)(D): Confidential Source Material

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information

compiled for law enforcement purposes if the disclosure:

> could reasonably be expected to disclose the identity of a confidential source,
> including a State, local, or foreign agency or authority or any private institution
> which furnished information on a confidential basis, and, in the case of a record or
> information compiled by a criminal law enforcement authority in the course of a
> criminal investigation or by an agency conducting a lawful national security
> intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" "is to keep open the Government's channels of confidential information."  Birch v. United States Postal Serv., 803 F.2d 1206, 1212 (D.C. Cir. 1986).[8]

When invoking Exemption 7(D), the agency must demonstrate that the information was compiled for a law enforcement purpose, that an informant provided the information under either an express or an implied promise of confidentiality and, under the first clause of 7(D), that disclosure could reasonably be expected to disclose the source's identity.  United States Dept. of Justice v. Landano, 508 U.S. 165, 171-72 (1993).  If an individual has not been given an *express* promise of confidentiality, the agency may demonstrate that a source has been given an *implied* promise of confidentiality based upon the circumstances of the case.  Id., 508 U.S. at 179-80.  The government may establish implied assurances of confidentiality by describing "generic circumstances in which an implied assurance of confidentiality fairly can be inferred."  Id. at 179.  However, once an agency establishes an express or implied promise of confidentiality, it is extremely difficult to overcome.  In order to do so, the plaintiff must come forward with "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'"  Parker v. Dept. of Justice, 934 F.2d 375, 378 (D.C. Cir. 1991) (quoting Dow Jones & Co. v. Dept. of Justice, 908 F.2d 1006, 1011 (D.C. Cir.), reh'g denied en banc, 917 F.2d 571 (D.C. Cir. 1990)).

---

[8]   The term "confidential source" is construed broadly.  See, e.g., Gula v. Meese, 699 F. Supp. 956, 960 (D.D.C. 1988) (crime victims); Putnam v. United States Dept. of Justice, 873 F. Supp. 705, 716 (D.D.C. 1995) (medical personnel).  Moreover, the term "confidential" signifies that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others.  Dow Jones & Co. v. Dept. of Justice, 917 F.2d 571, 575-76 (D.C. Cir. 1990).  As such, "the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential."  United States Dept. of Justice v. Landano, 508 U.S. 165, 172 (1993).

The Court in Landano stressed two factors to be considered in determining whether an implied promise of confidentiality exists:  "the nature of the crime investigated and the witness' relation to it."  Id. at 181.  In applying these factors, a key consideration is the potential for retaliation against the source.  Id. at 179-80; see also Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (implied assurance of confidentiality found where crimes investigated were serious and violent and sources were "sufficiently close to" targets of investigation); Hale v. Dept. of Justice, 99 F.3d 1025, 1031 (10th Cir. 1996).

Once the agency has demonstrated that a confidential informant gave information, Exemption 7(D) applies not only to the name of the source, but to other information as well.  The first clause of Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would tend to reveal the source's identity.  Pollard v. FBI, 705 F.2d 1151, 1155 (9th Cir. 1983); see also Stone v. Defense Investigative Serv., 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"); Doe v. U.S. Dept. of Justice, 790 F. Supp. 17, 21 (D.D.C. 1992) (when source is well known to individual investigated, agency must protect "even the most oblique indications of identity").  The second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.

Importantly, and unlike some other FOIA exemptions, Exemption 7(D) does not require a balancing of public and private interests.  Parker, 934 F.2d at 380 (the "judiciary is not to balance interests under Exemption 7(D)"); Jones v. FBI, 41 F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure").

26

Therefore, "once the agency receives information from a '"confidential source" during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection.'" Parker, 934 F.2d at 380 (editing by the court, quoting Lesar, 636 F.2d at 492 & n. 114 (D.C. Cir. 1980)).  Moreover, Exemption 7(D) continues to apply even after an investigation has been closed, Ortiz v. HHS, 70 F.3d 729, 733 (2d Cir. 1995), cert. denied, 517 U.S. 1136 (1996), and after the death of the source.  Campbell v. Dept. of Justice, 164 F.3d 20, 33 n.14 (D.C. Cir. 1998).

     Numerous informants report to the FBI on a regular basis and are informants in the common meaning of the term.  Hardy Decl., ¶ 67.  Some of the sources provide information under an express assurance of confidentiality, and others are interviewed under circumstances from which an assurance of confidentiality can reasonably be inferred.  Id.  Information they provide is singular in nature and, if released, could reveal their identities.  Id.  During the course of the FBI's investigation, FBI SAs sought the assistance of numerous individuals in obtaining information to aid its investigation.  Id., ¶ 68.  Information was provided by certain third parties under an implied grant and/or express assurances of confidentiality, because they were placed directly in positions that could subject them to acts of reprisal, harassment, or an unnecessary amount of public attention if the FBI disclosed their cooperation.  Id., ¶ 69.  Informants must be free to furnish that information with complete candor and without the understandable tendency to hedge or withhold information out of fear that their names or their cooperation with the FBI will later be made public.  Id.

            i. Exemption (b)(7)(D)-1: Identity of a Foreign Authority Providing Information in the Course of a Criminal Investigation

27

Exemption (b)(7)(D)-1 has been asserted to withhold the identity of a foreign authority that provided information to the FBI. Hardy Decl., ¶ 70. To breach the anonymity this foreign authority was promised when it provided the information could sever the relationship the FBI has with this foreign authority in other investigations. Id. If the FBI were to disclose this information, other foreign authorities could refuse to cooperate and provide the FBI with essential information during future investigations. Id. Moreover, because the FBI relies on the close cooperation of foreign authorities, it is clear that any such disclosure would result in disastrous, far-reaching consequences for the FBI's law enforcement endeavors. Id. Accordingly, it is clear that this foreign authority provided this information to the FBI under an express grant of confidentiality. Id. Exemption (b)(7)(D)-1 is invoked on the following pages: Hardy Ex. T, 26, 30 and 31. Id.

        ii. Exemption (b)(7)(D)-2: Information Provided by Cooperating Witnesses under an "Express" Assurance of Confidentiality

Exemption (b)(7)(D)-2 has been asserted to protect names and/or information provided by several CWs, both for investigative purposes and to protect the CWs from potential harm. Hardy Decl., ¶ 72. The maintenance of confidentiality surrounding CWs is essential to effective law enforcement and is reflected in official FBI policy. Id., ¶ 71. A CW is any individual who meets the definition of a CI and has agreed to testify in a proceeding as a defendant or potential witness. Id. While a CW's testimony is ultimately unnecessary in some cases, in other cases it can be limited to one proceeding with narrow issues, such that it will not reveal the CW's role in providing other information to the FBI on related or unrelated investigatory matters. Id., ¶ 72. CWs face the same or even greater risks from exposure as a CI, so it is FBI policy to protect a CW's true identity from unauthorized disclosure to the same degree as that of a CI. Id., ¶ 71.

Exemption (b)(7)(D)-2 is cited on the following pages: Hardy Ex. T, 27, 29, and 37-39.  Id., ¶ 72.

<div align="center">iii. <u>Exemption (b)(7)(D)-3</u>: Source Symbol Number</div>

Exemption (b)(7)(D)-3 has been asserted in conjunction with Exemption (b)(2)-2 to withhold one permanent source symbol number in the records responsive to plaintiff's request. Hardy Decl., ¶ 73.  Permanent Source Symbol numbers are used to administratively conceal an individual's identity by inserting this number in written documents in lieu of his/her true name. <u>Id.</u>  Source symbol numbers are assigned to confidential informants who report information to the FBI on a regular basis pursuant to an "express" grant of confidentiality.  <u>Id.</u>  A cooperating witness symbol number belonging to a third party is a unique identifier for him within a particular field office.  <u>Id.</u>  Once this number is assigned to this third party, it will always be synonymous with him.  <u>Id.</u>  Disclosure of this material would reveal information as to the strength, breadth and scope of the informant program.  <u>Id.</u>  If a particular symbol number is released to the public at repeated times and in various documents, the identity of the source could be determined.  <u>Id.</u>  Plaintiff has received all segregable information from the responsive files. <u>Id.</u>  A third party's cooperating witness symbol number does not shed light upon the FBI's performance of its statutory duties; therefore, there exists no public interest in the release of that number.  <u>Id.</u>  Exemption (b)(7(D)-3, in conjunction with (b)(2)-2, is invoked on the following page: Hardy Ex. T, 34.

**D.   <u>All Reasonably Segregable Material Has Been Released to Plaintiff.</u>**

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."

<div align="center">29</div>

5 U.S.C. § 552(b); <u>Mead Data Cent., Inc. v. United States Dept. of the Air Force</u>, 566 F.2d 242,

260 (D.C. Cir. 1977). The Court of Appeals for the District of Columbia Circuit has held that a

District Court considering a FOIA action has "an affirmative duty to consider the segregability

issue sua sponte." <u>Trans-Pacific Policing Agreement v. United States Customs Serv.</u>, 177 F.3d

1022, 1028 (D.C. Cir. 1999).

      In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements." <u>Mead Data</u>,

566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed. <u>Id</u>. All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

<u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content." <u>Mead Data</u>, 566 F.2d at 261, n.55.

      Given the nature of the FBI's withholdings, it is clear that Defendant FBI has properly

analyzed these documents and determined that no additional non-exempt material can be

segregated and released. Hardy Decl. ¶¶ 35, 44, 73, 74.

<div align="center"><u>CONCLUSION</u></div>

      The FBI has processed and released all segregable information from the responsive

documents pursuant to FOIA Exemptions 2, 6, 7(C), and 7(D); 5 U.S.C. § 552(b)(2), (b)(6),

(b)(7)(C), and (b)(7)(D). Hardy Decl., ¶ 74. Further, the FBI carefully examined the 40 pages of

responsive records and determined that the information withheld from plaintiff, if disclosed,

could reasonably be expected to reveal internal administrative information, cause a clearly

<div align="center">30</div>

unwarranted invasion of the personal privacy interests of third parties, and/or disclose the identities of confidential sources.  Id.  Accordingly, the FBI has released all reasonably segregable, nonexempt information to plaintiff in response to his FOIA/Privacy Act request to the FBI.  Id.  For all of the foregoing reasons, Defendants request entry of summary judgment in their favor.

Respectfully submitted,


_____/s/_____
JEFFREY TAYLOR, D.C. BAR # 498610
United States Attorney



_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney



_____/s/_____
BRANDON L. LOWY
Special Assistant United States Attorney
555 4th Street, N.W.   Rm. E-4405
Washington, D.C. 20530

Attorneys for Defendants

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 17th day of July, 2008, I caused the foregoing Defendants'

Motion for Summary Judgment and proposed Order to be filed via the Court's Electronic Case

Filing system, and served upon Plaintiff, <u>*pro se*</u>, by first-class mail, postage prepaid, addressed as

follows:

Eugene A. Fischer
Register No. 32904-004
FCI-2
Box 1500
Butner, NC 27509


        /s/   *Brandon L. Lowy*
BRANDON L. LOWY

32

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EUGENE ALBERT FISCHER,      )
                                                           )
Plaintiff,                    )
                                                           )
v.                                )     Civ. A. No. 07-2037 (ESH)
                                                           )
FEDERAL BUREAU OF INVESTIGATION,   )
                et al.,        )
                                                           )
Defendants.                  )
_____)

**<u>ORDER</u>**

Upon consideration of Defendants' Motion for Summary Judgment, and the entire record of this case, it is hereby

ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

Plaintiff's Complaint is DISMISSED.

Dated this _____ day of _____, 2008.


_____
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,      )
                            )
        Plaintiff,          )
                            )
        v.                  )        Civ. A. No. 07-2037 (ESH)
                            )
FEDERAL BUREAU OF INVESTIGATION,   )
        et al.,            )
                            )
        Defendants.        )
_____)

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 194 employees who staff a total of ten (10) FBIHQ units and a field operational service center unit whose collective mission is to effectively plan, develop, direct, and manage responses to requests

for access to the FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's treatment of the FOIA/Privacy Act requests made by plaintiff Eugene Albert Fischer, who seeks access to records concerning himself, as well as other third-party individuals connected to his conviction and sentence.

(4)     As of this date, the FBI has processed a total of 40 pages responsive to plaintiff's requests, and has released to plaintiff a total of 15 pages in full, and 22 pages in part. The remaining three pages have been withheld in their entireties. The purpose of this declaration is to provide the Court and plaintiff with an explanation of the procedures used to search for records responsive to plaintiff's requests and, in accordance with Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), provide a justification for the withholding of information pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552a(j)(2), and FOIA Exemptions 2, 6, 7(C), and 7(D), 5 U.S.C. §§ 552(b)(2), (b)(6), (b)(7)(C), and (b)(7)(D).

-2-

## CRIMINAL HISTORY OF EUGENE ALBERT FISCHER

(5)    During the period from 1983 through 1987, plaintiff and his associates imported

into the United States in excess of 600,000 pounds of marijuana, netting profits of more than

$180 million. Plaintiff was indicted in 1988 on a number of drug-related charges. Plaintiff was

convicted of continuing criminal enterprise charges and is currently serving a mandatory life

sentence at the United States Penitentiary ("USP"), Lewisburg, Pennsylvania.

(6)    In November 1993, plaintiff was investigated for conspiracy to escape a federal

penal institution. In March 1994, the Assistant United States Attorney for the Middle District of

Pennsylvania declined prosecution due to a lack of credible evidence of an escape plot.

### CORRESPONDENCE FOR FOIA/PRIVACY ACT REQUEST NUMBER 414039

(7)    By letter dated January 31, 1995, plaintiff submitted a FOIA/Privacy Act

("FOIPA") request to the FBI Springfield Field Office ("SIFO") for:

> [A]ll records and/or data contained in the files of your agency pertaining to the
> following matters which are related to a criminal case the US brought against me
> (U.S. v. Fischer, Criminal No 87-40070):
>
> 1) Any investigation by your agency or other law enforcement agencies of which
> you may have records of federal judge James Foreman in the last ten years,
> concerning any criminal matters either directly or indirectly involving him.
> Specifically, information is being sought concerning Archie Bob Henderson and/or
> Donald Medley and any investigation of them which might mention or tie in any
> form James Foreman to any criminal investigations or trials of them
>
> 2) Information as to the criminal charges levied, the indictment dates, the judicial
> outcome, and the dates of incarceration of Archie Bob Henderson and/or Donald
> Medley from the year 1985 to the present
>
> 3) Any information concerning investigations and findings (including judicial
> procedures) of the government's cooperating witnesses with reference to the
> Lanier, et al marijuana case tried in federal court during or after the trial

Specifically information is sought concerning any perjury allegations or verdicts concerning the witnesses Ronald Ball, Charles Podesta, Jeffrey Tuchband, David Tobias and Ronald Valentine

4) Copies of all indictments against Eugene A Fischer concerning the above mentioned case

5) Information as to the proceeds, methods of sale, and actions taken with regards to any property of Eugene A Fischer taken by the U S government as a result of this case

6) Copies of any 302 or other material concerning Ronald Valentine and his testimony as a cooperating witness in the above mentioned trial.[1]

(See Exhibit A.)[2]

---

1    When a requester seeks information about a third-party for which no Privacy Act -waiver form or proof of death is provided, the FBI will neither confirm nor deny the existence of responsive records, because to do so would affirm that an individual is mentioned in FBI records. Moreover, the mere mention of an individual's name in FBI records reflects that the person either came to the attention of or assisted the FBI during the course of the Bureau's law enforcement activities. Affirming that FBI records exist on a third-party would violate an individual's privacy, resulting in potential embarrassment and stigma. In addition, if a requester seeks information on a third-party whom the requester believes is an informant, affirming whether responsive records exist could expose the third-party to serious personal risk. Plaintiff's requests for records concerning these individuals cannot be addressed by the FBI without either a notarized Privacy Act waiver form or proof of death form for these third-party individuals. See 5 U.S.C. § 552a(b) and 28 C.F.R. § 16.3(a).

2    Plaintiff also made a request by letter dated August 20, 1996, to the SIFO for the following:

all records your agency is in possession of concerning the investigation, charging and bringing of the criminal cases described in the attachment to this letter, and any reference, mention or investigation of Judge James Foreman relating thereto[, and] a copy of all records with regards to these cases and any references to Judge James Foreman, from all retrievable sources, including computer records, electronic surveillance, etc.

(See Exhibit G.) Because this request was for the same type of information requested by plaintiff in his January 31, 1995 request--for information on himself--the FBI merged these two requests and assigned them the same FOIPA Request Number 414039. By letter dated December

(8)    By letter dated February 22, 1995, SIFO advised plaintiff that a search of the

Central Records System ("CRS") at SIFO disclosed potentially responsive cross-references,[3] but

that SIFO had not yet reviewed these records to determine if they were responsive to plaintiff's

request. SIFO also advised plaintiff that they were making an effort to expedite the research and

processing of documents responsive to plaintiff's January 31, 1995 request, but due to the volume

of requests being processed by the SIFO, a delay was possible. **(See Exhibit B.)**

(9)    By letter dated March 30, 1995, SIFO advised plaintiff that the CRS search had

been completed and a file responsive to his request had been located. After reviewing the file, it

had been determined that the file was exempt from disclosure pursuant to (j)(2) of the Privacy

Act, 5 U.S.C. § 552a(j)(2), and FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A). Plaintiff was

also advised that no review had been conducted for public source information within this

responsive file and if he desired this type of search he should advise SIFO. Plaintiff was also

informed that he could file an administrative appeal by writing to the Co-Director, Office of

Information and Privacy ("OIP"), United States Department of Justice ("DOJ"), within sixty days

from the date of this later. **(See Exhibit C.)**

---

22, 2006, FBIHQ acknowledged receipt of plaintiff's August 20, 1996 request for information on
himself. **(See Exhibit K.)** On February 6, 2007, the FBI's letter dated December 22, 2006 was
returned to the FBI as undeliverable. **(See Exhibit L.)** The FBI has searched the notes related to
this request in order to determine why an acknowledgment letter was sent more than ten (10)
years after the request was submitted to the FBI. The FBI was unable to locate an explanation for
this delay.

3      A cross-reference is defined as a mention of the subject of a request in a file on another
individual, organization, event, activity or the like.

(10)    By letter dated April 18, 1995, plaintiff advised SIFO that he wanted the FBI to review the responsive records for the existence of public source information. Plaintiff also agreed to pay appropriate fees. **(See Exhibit D.)**

(11)    By separate letter to OIP, dated April 18, 1995, plaintiff appealed the FBI's response to his January 31, 1995 request. **(See Exhibit E.)**

(12)    By letter dated April 28, 1995, OIP advised plaintiff that his appeal was received on April 24, 1995. Plaintiff was also informed of OIP's substantial backlog of pending appeals and that his appeal was assigned Appeal Number 95-0974. (See Exhibit F.)

(13)    By letter dated September 4, 1996, SIFO advised plaintiff that a review for public source information was being conducted and that this information would be released after a fee determination was made. **(See Exhibit H.)**

(14)    By letter dated December 30, 1996, OIP affirmed the FBI's handling of plaintiff's request. Plaintiff was also advised that his request for public source material was being handled separately and that he would be contacted directly by the FBI when the processing had been completed. Plaintiff was advised of his right to seek judicial review if he was dissatisfied with this response. **(See Exhibit I.)**

(15)    By letter dated December 18, 2006, OIP remanded plaintiff's FOIPA Request Number 414039 for further processing.[4] OIP stated that although the FBI properly invoked

---

4    OIP contacted the FBI at the beginning of June 2008 and provided the reason why OIP responded a second time to plaintiff's FOIA/Privacy Act appeal--first in a letter dated December 30, 1996, and then again in a letter dated December 18, 2006. OIP indicated that the original appeal was not closed out in their record-keeping system in 1996 when the first letter was sent to plaintiff. In an effort to handle old appeals, OIP again responded to plaintiff's appeal in 2006, since it had not been closed out in 1996.

Exemption 7(A) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(A), at the time your request was processed, that exemption, which pertains to records of information compiled for law enforcement purposes...is no longer applicable to withhold the records in their entireties." Plaintiff was advised of his right to seek judicial review if he was dissatisfied with this response.  **(See Exhibit J.)**

(16)    By letter dated March 22, 2007, plaintiff advised that he was pursuing his request since his appeal to OIP had been granted.  **(See Exhibit M.)**

(17)    By letter dated April 13, 2007, the FBI advised plaintiff that approximately 580 pages were potentially responsive to FOIPA Request Number 414039 and that the FBI needed to know whether plaintiff was willing to pay the anticipated duplication cost of $48.00.[5]  **(See Exhibit N.)**

(18)    By letter dated May 14, 2007, the FBI advised plaintiff of the status of FOIPA Request Number 414039.  Plaintiff was advised that his request was being reviewed by an analyst and that in the event that the records responsive to his request contained sensitive national security information the records would undergo a declassification review prior to application of FOIA exemptions.  **(See Exhibit O.)**

---

[5]    FBIHQ reviewed the file responsive to plaintiff's requests and determined that it is a file concerning multiple subjects.  When processing a multiple subject file, only those documents which pertain to the individual about whom the request has been made are processed; documents pertaining to non-requesting subject individuals are considered "out of scope" and would not be processed in any event in the absence of a Privacy Act waiver or proof of death.  When FBIHQ informed plaintiff by letter dated April 30, 2007, that there were approximately 580 potentially responsive pages, this was before the file was reviewed and non-responsive documents were eliminated.  Once FBIHQ excluded "out of scope" documents from the file, only 40 pages were identified as being responsive to the plaintiff's requests.

(19)    By letter dated June 5, 2007, plaintiff requested that the FBI send him the referenced 580 pages and stated that he agreed to pay the estimated cost of duplication. Plaintiff also provided his correct address.[6] **(See Exhibit P.)**

(20)    By letter dated September 18, 2007, FBIHQ advised that it had reviewed 40 pages and was releasing 34 pages with redactions in response to FOIPA Request Number 414039.7 Certain information was being withheld pursuant to FOIA Exemptions (b)(2), (b)(6), (b)(7)(C) and (b)(7)(D).[8]  Plaintiff was also advised that he could file an administrative appeal by writing to OIP within sixty days from the date of this letter.  **(See Exhibit S.)**[9]

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(21)    The Central Records System ("CRS") enables the FBI to maintain all information it has acquired in the course of fulfilling its mandated law enforcement responsibilities.  The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes.  CRS is organized into a numerical sequence of files, called FBI "classifications," which are broken down according to subject matter.  The subject matter of a file may correspond to an individual, organization, company, publication, activity, or foreign intelligence matter (or program).  Certain records in the CRS are maintained at FBIHQ.

---

6    Plaintiff sent in the same type of correspondence to the FBI in letters dated June 1, 2007, and August 20, 2007. **(See Exhibits Q & R.)**

7    Both plaintiff's January 31, 2005 and August 20, 1996 requests were assigned FOIPA Request Number 414039.  Accordingly, this September 18, 2007 response was made to both of these requests, which were for the same records.

8    Due to administrative oversight, the letter did not include Privacy Act Exemption (j)(2) as a basis for withholding.

9    Pursuant to the Court's May 29, 2008 Memorandum Opinion and Order, the failure to exhaust argument presented by defendant has been denied.

Records that are pertinent to specific field offices of the FBI are maintained in those field offices. Although the CRS is primarily designed to serve as an investigative tool, the FBI utilizes the CRS to conduct searches that are likely to yield documents responsive to FOIA/Privacy Act requests. The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS").

(22)    The ACS was implemented for all Field Offices, Legal Attachés ("Legats"), and FBIHQ in order to consolidate portions of the CRS that were previously automated. ACS can be described as an internal computerized subsystem of the CRS. Because the CRS cannot electronically query the case files for data, such as an individual's name or social security number, the required information is duplicated and moved to the ACS so that it can be searched. More than 105 million records from the CRS were converted from automated systems previously utilized by the FBI. Automation did not change the CRS; instead, automation has facilitated more economic and expeditious access to records maintained in the CRS.

(23)    The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order.[10]  The entries in the General Indices fall into two categories:

> (a) A "main" entry -- A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.
>
> (b) A "reference" entry --"Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main"

---

10    The General Indices are not only automated but also include index cards which allow a manual search for records that pre-date the implementation of ACS on October 16, 1995.

(24)    Searches made in the General Indices to locate records concerning a particular subject, such as Eugene Albert Fischer, are made by searching the subject requested in the index.

(25)    The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

(a)    Investigative Case Management ("ICM") B ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs"). When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by all FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation. Using file number "281B-SI-45838" as an example, an explanation of the UCFN is as follows: "281" indicates the classification for the specific type of investigation, in this case Criminal Enterprise; "SI" is the abbreviated form used for the OO of the investigation, which in this case is Springfield; and "45838" denotes the individual case file number for the particular investigation.

(b)    Electronic Case File ("ECF") B ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept in that only the creator of a document serializes it into a file. This provides a single-source entry of serials into the computerized ECF system. All original serials are maintained in the OO case file.

(c)    Universal Index ("UNI") B UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 99.1 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

(26)    The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the investigative FBI Special Agent ("SA") assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., Eugene A. Fischer.

## SURVEILLANCE (ELSUR) INDICES

(27)    The Electronic Surveillance ("ELSUR") indices are used to maintain information on a subject whose electronic and/or voice communications have been intercepted as the result of

a consensual electronic surveillance or a court-ordered (and/or sought) electronic surveillance conducted by the FBI. The ELSUR indices date back to January 1, 1960. On or about October 9, 1991, the ELSUR indices were automated. Since that time, FBIHQ and all FBI field offices have electronically generated, maintained, modified and accessed all ELSUR records.

(28)    The ELSUR indices are a separate system of records from the CRS. Prior to automation, the ELSUR indices consisted of index cards on individuals who had been the subject of a microphone or telephone surveillance by the FBI from 1960. As stated above, the previous manual index card system was converted to an automated system on or about October 9, 1991. These indices include individuals who were the (a) targets of direct surveillance, (b) participants in monitored conversations, and (c) owners, leasers, or licensors of the premises where the FBI conducted electronic surveillance. In addition to the names of individuals in the above categories, the cards in the ELSUR index contain the date the voice was monitored, a source number to identify the individual on whom the surveillance was installed, and the location of the FBI field office that conducted the monitoring.

(29)    The ELSUR indices are published as a separate records system in the Federal Register because not all names contained in the ELSUR index can be retrieved through the General Index and CRS. See 52 Fed. Reg. 8482 (1992).

(30)    The FBI field offices that have conducted electronic surveillance at any time from 1960 to the present also maintain ELSUR indices. Since January 1, 1960, the field offices have been including in their ELSUR indices B and reporting to FBIHQ for inclusion in its index B the names of all persons whose voices have been monitored through a FBI microphone installation or

-12-

a telephone surveillance. The names of monitored subjects are retrievable through the FBIHQ or local field office ELSUR indices.

(31)    Until 1969, FBI field offices were also required to forward the names of all persons mentioned during monitored conversations to FBIHQ for inclusion in the FBIHQ ELSUR index. Although FBIHQ discontinued this requirement in 1969, some field offices still include the names of individuals mentioned in monitored conversations in the field office's ELSUR index. However, the names of such persons cannot be retrieved through the FBIHQ ELSUR index.

### SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF's REQUEST

(32)    In response to OIP's remand of plaintiff's request, the FBI reprocessed the following three main files: 190-HQ-1200038, 281B-SI-45838 and 90A-PH-73768. These files were reprocessed and released to plaintiff in a letter dated September 18, 2007, and consisted of 40 pages being reviewed and 34 pages being released with redactions taken pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions 2, 6, 7(C), and 7(D), 5 U.S.C. § 552(b)(2), (b)(6), (b)(7)(C) and (b)(7)(D).

(33)    FBIHQ reviewed file 281B-SI-45838 and determined that it is a file concerning multiple subjects. When processing a multiple subject file, only the documents deemed responsive to the FOIA/Privacy Act request received are processed. When FBIHQ informed plaintiff by letter dated April 30, 2007, that there were approximately 580 pages of potentially responsive records, this was before the file was reviewed and non-responsive documents were excluded. Once FBIHQ excluded all of the documents out of the scope of plaintiff's request, 40 pages were identified as being actually responsive to the request.

-13-

(34)    Upon receipt of the complaint in this litigation, the FBI decided to conduct a second search. In the absence of a specific request for a search of cross-references at the administrative level, the FBI's current policy is to search for and identify only "main" files responsive to FOIA/Privacy Act requests. In this case, at the administrative level, plaintiff did not specifically request that a search be conducted for cross-references. In spite of this, the FBI decided to search its HQ indices to the CRS for cross-references. This second search failed to locate any responsive cross-references at SIFO. The FBI has searched all locations likely to yield documents responsive to plaintiff's FOIA/Privacy Act request to SIFO. A search of the ELSUR indices also located no responsive records at either HQ or at SIFO.

## EXPLANATION OF CODED FORMAT USED FOR THE JUSTIFICATION OF DELETED MATERIAL

(35)    All documents were processed to achieve maximum disclosure consistent with the access provisions of the Privacy Act and the FOIA. Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. No reasonably segregable, nonexempt portions were withheld from plaintiff. To further describe the information withheld could identify the very material that the FBI seeks to protect. Copies of pages released in part and in full are attached hereto as **Exhibit T** to this declaration. Each page of **Exhibit T** is consecutively numbered 1- 40 in the lower right-hand corner of the page. The exemptions asserted by the FBI as grounds for non-disclosure of portions of documents are Exemption (j)(2) of the Privacy Act and FOIA Exemptions 2, 6, 7(C), and 7(D).

(36)    Copies of the designated documents contain, on their face, coded categories of exemptions which detail the nature of the information withheld pursuant to the provisions of the

FOIA.  The coded categories are provided to aid in the Court and plaintiff's review of the FBI's explanations of FOIA exemptions used to withhold the protected material.  Accordingly, a review of this information will reveal that all material withheld is exempt from disclosure pursuant to FOIA Exemptions, or it is so intertwined with protected material that segregation is not possible without revealing the underlying protected material.

(37)    Each withholding of information is accompanied by a code that corresponds to the categories listed below.  For example, if "(b)(7)(C)-1" appears on the page, the "(b)(7)(C)" designation refers to "Exemption (b)(7)(C)" of the FOIA concerning "Unwarranted Invasion of Personal Privacy."  The subcategory "1" narrows the main category into the more specific subcategory "Names and/or Identifying Information of FBI Special Agents ("SAs") and Support Personnel."  The coded categories of exemptions used in the processing of plaintiff's requests are set forth as follows:

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(2)** | **INTERNAL AGENCY RULES AND PRACTICES** |
| **(b)(2)-1** | Telephone Numbers of FBI Personnel |
| **(b)(2)-2** | Source Symbol Number (Cited in conjunction with (b)(7)(D)-3.) |
| **Category (b)(6)** | **CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY** |

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **(b)(6)-1** | Names and/or Identifying Information of FBI SAs and Support Personnel (Cited in conjunction with (b)(7)(C)-1.) |
| **(b)(6)-2** | Names and/or Identifying Information of Third Parties Merely Mentioned (Cited in conjunction with (b)(7)(C)-2.) |
| **(b)(6)-3** | Names and/or Identifying Information of Third Parties of Investigative Interest (Cited in conjunction with (b)(7)(C)-3.) |
| **(b)(6)-4** | Names and/or Identifying Information of Cooperating Witnesses (Cited in conjunction with (b)(7)(C)-4.) |
| **Category (b)(7)(C)** | **UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| **(b)(7)(C)-1** | Names and/or Identifying Information of FBI SAs and Support Personnel (Cited in conjunction with (b)(6)-1.) |
| **(b)(7)(C)-2** | Names and/or Identifying Information of Third Parties Merely Mentioned (Cited in conjunction with (b)(6)-2.) |
| **(b)(7)(C)-3** | Names and/or Identifying Information of Third Parties of Investigative Interest (Cited in conjunction with (b)(6)-3.) |
| **(b)(7)(C)-4** | Names and/or Identifying Information of Cooperating Witnesses (Cited in conjunction with (b)(6)-4.) |
| **Category (b)(7)(D)** | **CONFIDENTIAL SOURCE MATERIAL** |
| **(b)(7)(D)-1** | Identity of Foreign Authority Providing Information in the Course of a Criminal Investigation |
| **(b)(7)(D)-2** | Information Provided by Cooperating Witnesses under an "Express" Assurance of Confidentiality |
| **(b)(7)(D)-3** | Source Symbol Number (Cited in conjunction with (b)(2)-2.) |

## JUSTIFICATION FOR REDACTIONS

(38)    The paragraphs that follow explain the FBI's rationale for withholding each particular category of information under the specific exemption categories described above.

## PRIVACY ACT EXEMPTION (j)(2)

(39)    Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . ."

(40)    The investigatory records at issue in this matter are part of the FBI's CRS and concern criminal investigations concerning plaintiff. These files concern two instances where the FBI investigated plaintiff's plot to escape from a federal prison in violation of 18 U.S.C. ' 751a and the FBI participated in a multi-agency task force investigation of narcotics charges in violation of 21 U.S.C. ' 841(a)(1). Accordingly, these files are exempt from disclosure pursuant to 5 U.S.C. ' 552a(j)(2), in conjunction with 28 C.F.R. ' 16.96. Although access to these records was denied under the Privacy Act, they have been processed under the access provisions of the FOIA. Exemption (j)(2) is cited on the following pages: Fischer 22-40.[11]

## FOIA EXEMPTION (b)(2)
## INTERNAL AGENCY RULES AND PRACTICES

(41)    5 U.S.C. § 552(b)(2) exempts from disclosure "information related solely to the internal personnel rules and practices of an agency." This exemption protects routine internal administrative matters and functions of the FBI which have no effect on the public at large.

---

11    The remaining records responsive to plaintiff's request--Fischer 1 through Fischer 21--are not subject to a Privacy Act exemption. Certain items of information--in this case the names and/or identifying information of FBI SAs and support personnel--have been redacted. Although this information appears in a file or document retrieved by an individual's name, this information is not about plaintiff and, therefore, does not qualify as records about that individual. Consequently, these records are out of scope of plaintiff's Privacy Act request.

-17-

Disclosure of this information could impede the effectiveness of the FBI's internal law enforcement procedures.

### (b)(2)-1        Telephone Numbers of FBI Personnel

(42)    Exemption (b)(2)-1 has been asserted to protect two telephone numbers of FBI SAs.  The telephone numbers clearly relate to the internal practices of the FBI in that this tool is used by FBI personnel during the performance of their duties.  Disclosure of the business telephone numbers could subject these individuals to harassing telephone calls which could disrupt official business (including impeding ability to conduct and conclude law enforcement investigations in a timely manner).

(43)    Accordingly, because these internal telephone numbers are related solely to the FBI's internal practices, because disclosure would not serve any public interest, and because disclosure would impede the FBI's effectiveness, the FBI properly withheld this information pursuant to Exemption (b)(2)-1 on the following pages: Fischer 1 and 19.

### (b)(2)-2        Source Symbol Number

(44)    Exemption (b)(2)-2 has been asserted in conjunction with Exemption (b)(7)(D)-3 to withhold one permanent source symbol number in the records responsive to plaintiff's request. Permanent Source Symbol numbers are used to administratively conceal an individual's identity by inserting this number in written documents in lieu of his/her true name.  A source symbol number is comprised of a two or three letter abbreviation which identifies the particular FBI field office where the symbol numbered source is operating or has operated, followed by a sequentially assigned number.  Using a fictitious symbol number, "NY 1234" the two letter abbreviation "NY"

-18-

reveals that this is a source of the FBI's New York Field Office and the source is the 1,234th symbol numbered source of that office. Source symbol numbers are assigned to confidential informants who report information to the FBI on a regular basis pursuant to an "express" grant of confidentiality. A cooperating witness symbol number belonging to a third party is a unique identifier for him within a particular field office. Once this number is assigned to this third party, it will always be synonymous with him. Disclosure of this material would reveal information as to the strength, breadth and scope of the informant program. If a particular symbol number such as "NY 1234" is released to the public at repeated times and in various documents, the identity of the source could be determined. Plaintiff has received all segregable information from files. A third party's cooperating witness symbol number does not shed light upon the FBI's performance of its statutory duties; therefore, there exists no public interest in the release of that number. Exemption (b)(2)-2 is cited in conjunction with Exemption (b)(7)(D)-3 on the following page: Fischer 34.

## FOIA EXEMPTION (b)(6)
## CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

(45)    5 U.S.C. ' 552(b)(6) exempts from disclosure:

> personnel and medical files and similar files disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

(46)    When withholding information pursuant to this exemption, the FBI is required to balance the privacy interests of the individuals mentioned in the documents against any public interest in disclosure. In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or

-19-

identifying information appears in the documents at issue. The public interest in disclosure of the information is determined by whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes, and/or how the FBI actually conducts its internal operations and investigations. As explained below, there is no legitimate public interest in the release of the information that has been withheld pursuant to Exemption (b)(6).

### (b)(6)-1    Names and/or Identifying Information of FBI SAs and Support Personnel

(47)    Exemption (b)(6)-1 has been asserted, in conjunction with Exemption (b)(7)(C)-1, to protect the names and identifying information of FBI SAs who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the files responsive to plaintiff's request. Identifying information includes Social Security Numbers, telephone numbers, and telephone extensions of FBI SAs. The assignment of SAs to any particular investigation is not by choice. Publicity (adverse or otherwise) regarding any particular investigation they have been assigned to may seriously prejudice their effectiveness in conducting other investigations. There are also privacy considerations in protecting FBI SAs, as individuals, from unnecessary, unofficial questioning regarding this and/or other investigations, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into various criminal and national security cases. They come into contact with all strata of society. They conduct searches and make arrests, both of which constitute reasonable, but nonetheless serious intrusions into peoples= lives. Many of these people carry grudges which last for years and they may seek any excuse to harass the SA they deem responsible for these intrusions. The publicity associated

-20-

with the release of an SA's identity in connection with a particular law enforcement investigation could rekindle animosity toward that SA. Accordingly, SAs maintain substantial privacy interests in not having their identities disclosed.

(48)    Next the FBI examined the records at issue to determine whether there was any public interest in disclosure that out-weighed the substantial privacy interests of the FBI SAs and support employees. There is no public interest to be served by disclosing the identities of the SAs or support personnel to the public, as disclosure would not shed light on the FBI's performance of its statutory duties. Thus, disclosure of this information would constitute a clearly unwarranted invasion of FBI SA's personal privacy.

(49)    The names of FBI support employees are also withheld pursuant to FOIA Exemption (b)(7)(C)-1. These employees were assigned to handle tasks relating to the official investigation into the activities of plaintiff and others in the files responsive to plaintiff's request. They were, and possibly are, in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. These individuals maintain substantial privacy interests in not having their identities disclosed. The FBI balanced the substantial privacy interests of these individuals against public interests in disclosure. The FBI determined that there is no public interest in disclosure as release would not shed light on the FBI's performance of its statutory duties. Because there is no public interest to be served by releasing the identities of these individuals, any such disclosure could constitute a clearly unwarranted invasion of their personal privacy. Thus, disclosure of this information would

-21-

constitute a clearly unwarranted invasion of their personal privacy on the following pages: Fischer 1-3, 10, 16-19, 23, 25, 28 and 33.

### (b)(6)-2     Names and/or Identifying Information of Third Parties Merely Mentioned

(50)     Exemption (b)(6)-2 has been asserted, in conjunction with Exemption (b)(7)(C)-2, to withhold the names and identifying information of third parties merely mentioned in documents concerning the criminal investigation of plaintiff. Identifying information includes addresses, license plates numbers and registration information, dates of birth, aliases, as well as career and job titles. The FBI obtained information concerning third parties who came into contact with plaintiff during the course of his activities. These individuals were not of investigative interest to the FBI. These third parties maintain legitimate privacy interests in not having this information disclosed. If the FBI disclosed their names and other personal information, the disclosure would reveal that these third parties were connected with the FBI's investigation of plaintiff in some way. Disclosure of these third parties names and identifying information in connection with the FBI's investigation of plaintiff's activities carries an extremely negative connotation. Disclosure of their identities could subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them. Accordingly, the FBI determined that these third parties maintained a substantial privacy interest in not having information about them disclosed. After identifying the substantial privacy interests these individuals maintain, the FBI balanced their right to privacy against the public interest in the disclosure. The FBI has determined that there is no public interest as release would not help determine how the FBI is conducting its statutory

-22-

duties. Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy. Exemption (b)(6)-2 is cited on the following pages: Fischer 3, 32, and 39.

### (b)(6)-3     Names and/or Identifying Information of Third Parties of Investigative Interest

(51)     Exemption (b)(6)-3 has been asserted, in conjunction with Exemption (b)(7)(C)-3, to protect the names and identifying information of third parties of investigative interest to the FBI and/or other law enforcement agencies. Identifying information withheld concerning these third parties includes addresses, dates of birth, Social Security Numbers, aliases, telephone numbers, FBI arrest numbers, license plate numbers, police department numbers, fingerprint classifications, and personal characteristics. Numerous individuals were mentioned as individuals who were of investigative interest to the FBI or other law enforcement agencies due to their association with the subjects of this investigation. Therefore, to release the identities of these third parties as subjects of FBI interest resulting from its investigation of illegal narcotics trafficking could subject these individuals to harassment and embarrassment and could further result in undue public attention. Disclosure of such information could be a clearly unwarranted invasion of their personal privacy. Furthermore, plaintiff has not provided the FBI with any written notarized authorizations from these third parties waiving their rights to personal privacy. Therefore, continued protection of their identities is warranted.

(52)     After identifying the substantial privacy interests of these third parties, the FBI balanced their privacy interests against the public interest in disclosure. The FBI determined that the disclosure of the names of these third parties would shed no light on the FBI's performance of its statutory duties. Accordingly, the FBI could not identify any discernible public interest in the

-23-

disclosure. In balancing the substantial privacy interest that these individuals have in this information against no legitimate public interest in its disclosure, the FBI properly withheld this information pursuant to Exemption (b)(6)-3 on the following pages: Fischer 23-33 and 36-39.

**(b)(6)-4      Names and/or Identifying Information of a Cooperating Witnesses**

(53)    Exemption (b)(6)-4 has been asserted, in conjunction with Exemption (b)(7)(C)-4, to protect the identities of and information provided by several Cooperative Witnesses ("CWs"). The maintenance of confidentiality surrounding CWs is essential to effective law enforcement and is reflected in official FBI policy. A CW is any individual who meets the definition of a Confidential Informant ("CI") who has agreed to testify in a proceeding as a defendant or potential witness. As a result, it is FBI policy to protect a CW's true identity from unauthorized disclosure to the same degree as the true identity of a Confidential Informant. Because a CW will face the same, or even greater risks from exposure as a CI, -it is FBI policy that CWs be provided the same degree of protection. Any information that could possibly identify a CW, including dates and places where they have been, are protected from disclosure. Next the FBI balanced the substantial privacy interests of these individuals against public interests in disclosure. The FBI determined that there is no public interest in disclosure as release would not shed light on the FBI's performance of its statutory duties. Exemption (b)(6)-4 has been asserted in conjunction with Exemption (b)(7)(C)-4 and (b)(7)(D)-2 to protect the identities of CWs who provided information to the FBI on the following pages: Fischer 27, 37, 38, and 40.

-24-

## FOIA EXEMPTION 7
## EXEMPTION 7 THRESHOLD

(54)    Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. See 5 U.S.C. ' 552(b)(7). In this case, the harm that could reasonably be expected to result from disclosure concerns invasion of personal privacy and revealing the identity of confidential sources.

(55)    Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency. Files 281B-SI-45838 and 90A-PH-73768 relate to a criminal investigation of plaintiff's involvement in the importation of narcotics and plaintiff's alleged escape conspiracy from the USP, Lewisburg, Pennsylvania, respectively. The FBI has jurisdiction over these two types of law enforcement investigations. Thus, there is no doubt that these two investigations fall within the law enforcement duties of the FBI. Accordingly, the information in these two files readily meets the threshold requirement of Exemption 7.

(56)    Because the two files clearly meet the Exemption 7 threshold, the remaining inquiry is whether their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," or "disclose the identity of confidential sources."

-25-

## EXEMPTION (b)(7)(C)
## UNWARRANTED INVASION OF PERSONAL PRIVACY

(57)    5 U.S.C. ' 552(b)(7)(C) exempts from disclosure:

records or information compiled for law enforcement purposes, but
only to the extent that the production of such law enforcement records or
information . . . could reasonably be expected to constitute an unwarranted
invasion of personal privacy.

(58)    When withholding information pursuant to this exemption, the FBI is required to

balance the privacy interests of the individuals mentioned in the documents against any public

interest in disclosure. In asserting this exemption, each piece of information was examined to

determine the degree and nature of the privacy interest of any individual whose name and/or

identifying data appears in the documents at issue. The public interest in disclosure of the

information is determined by whether the information in question would inform plaintiff or the

general public about the FBI's performance of its mission to enforce federal criminal and national

security statutes and/or how the FBI actually conducts its internal operations and investigations.

As explained below, there is no legitimate public interest in the information withheld pursuant to

FOIA Exemption (b)(7)(C).

### (b)(7)(C)-1    Names and/or Identifying Information of FBI SAs and
### Support Personnel

(59)    Exemption (b)(7)(C)-1 has been asserted, in conjunction with Exemption (b)(6)-1,

to protect the names and identifying information of FBI SAs who were responsible for

conducting, supervising, and/or maintaining the investigative activities reported in the files

responsive to plaintiff's request. Identifying information includes Social Security Numbers,

-26-

telephone numbers, and telephone extensions of FBI SAs. The assignment of SAs to any

particular investigation is not by choice. Publicity (adverse or otherwise) regarding any particular

investigation they have been assigned to may seriously prejudice their effectiveness in conducting

other investigations. There are also privacy considerations in protecting FBI SAs, as individuals,

from unnecessary, unofficial questioning regarding this and/or other investigations, whether or not

they are currently employed by the FBI. FBI SAs conduct official inquiries into various criminal

and national security cases. They come into contact with all strata of society. They conduct

searches and make arrests, both of which constitute reasonable, but nonetheless serious intrusions

into peoples= lives. Many of these people carry grudges which last for years and they may seek

any excuse to harass the SA they deem responsible for these intrusions. The publicity associated

with the release of an SA's identity in connection with a particular law enforcement investigation

could rekindle animosity toward that SA. Accordingly, SAs maintain substantial privacy interests

in not having their identities disclosed.

    (60)    Next the FBI examined the records at issue to determine whether there was any

public interest in disclosure that out weighed the substantial privacy interests of the FBI SAs and

support employees. There is no public interest to be served by disclosing the identities of the SAs

or support personnel to the public as disclosure would not shed light on the FBI's performance of

its statutory duties. Thus, disclosure of this information would constitute an unwarranted invasion

of their personal privacy.

    (61)    The names of FBI support employees are also withheld pursuant to FOIA

Exemption (b)(7)(C)-1. These employees were assigned to handle tasks relating to the official

investigation into the activities of plaintiff and others in the files responsive to plaintiff's request. They were, and possibly are, in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. These individuals maintain substantial privacy interests in not having their identities disclosed. The FBI balanced the substantial privacy interests of these individuals against public interests in disclosure. The FBI determined that there is no public interest in disclosure as release would not shed light on the FBI's performance of its statutory duties. Because there is no public interest to be served by releasing the identities of these individuals, any such disclosure could constitute an unwarranted invasion of their personal privacy. Thus, the FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(C)-1 on the following pages: Fischer 3, 23, 25, 28, and 33.

### (b)(7)(C)-2    Names and/or Identifying Information of Third Parties Merely Mentioned

(62)    Exemption (b)(7)(C)-2 has been asserted, in conjunction with Exemption (b)(6)-2, to withhold the names and identifying information of third parties merely mentioned in the law enforcement investigatory records responsive to plaintiff's request. Identifying information concerning these individuals includes addresses, license plate numbers and registration information, dates of birth, aliases, as well as career and job titles. During the course of the FBI's law enforcement investigations, the FBI obtained information pertaining to individuals who interacted with plaintiff or other individuals mentioned in these files. These individuals were not of investigative interest to the FBI. To release this type of information about private citizens without notarized authorizations permitting such release violates the individual's legitimate

-28-

privacy interests. If the FBI disclosed their names and other personal information, the disclosure would reveal that these third parties were connected with the FBI's investigation of plaintiff and others. Disclosure of their identities could subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion upon them. Accordingly, the FBI determined that these third parties maintained a substantial privacy interest in not having information about them disclosed. After identifying the substantial privacy interests of these third party individuals, the FBI balanced their right to privacy against the public interest in the disclosure. The FBI determined that there is no such public interest as disclosure would not shed light on how the FBI conducts its statutory duties. Thus, disclosure of this information could constitute an unwarranted invasion of their personal privacy, and the FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(C)-2. Exemption (b)(7)(C)-2 is cited on the following pages: Fischer 3, 32, and 39.

### (b)(7)(C)-3    Names and/or Identifying Information of Third Parties of Investigative Interest

(63)    Exemption (b)(7)(C)-3 has been asserted, in conjunction with Exemption (b)(6)-3, to protect the names and identifying information of third parties of investigative interest to the FBI and/or other law enforcement agencies. Identifying information withheld concerning these third parties includes addresses, dates of birth, Social Security Numbers, aliases, telephone numbers, FBI arrest numbers, license plate numbers, police department numbers, fingerprint classifications, and personal characteristics. Numerous individuals were mentioned as individuals who were of investigative interest to the FBI or other law enforcement agencies due to their association with the subjects of this investigation. Therefore, to release the identities of these third parties as

subjects of FBI interest resulting from its investigation of illegal narcotics trafficking could subject these individuals to harassment and embarrassment and could further result in undue public attention. Disclosure of such information could be an unwarranted invasion of their personal privacy. Furthermore, plaintiff has not provided the FBI with any written notarized authorizations from these third parties waiving their rights to personal privacy. Therefore, continued protection of their identities is warranted.

(64)    After identifying the substantial privacy interests of these third parties, the FBI balanced their privacy interests against the public interest in disclosure. The FBI determined that the disclosure of the names of these third parties would shed no light on the FBI's performance of its statutory duties. Accordingly, the FBI could not identify any discernible public interest in the disclosure. Thus, the FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(C)-3 on the following pages: Fischer 23-33 and 36-39.

### (b)(7)(C)-4    Names and/or Identifying Information of Cooperative Witnesses

(65)    Exemption (b)(7)(C)-4 has been asserted, in conjunction with Exemption (b)(6)-4 to protect the identity and information provided by several Cooperative Witnesses ("CWs"). The maintenance of confidentiality surrounding CWs is essential to effective law enforcement and is reflected in official FBI policy. A CW is any individual who meets the definition of a Confidential Informant ("CI") who has agreed to testify in a proceeding as a defendant or potential witness. As a result, it is FBI policy to protect a CW's true identity from unauthorized disclosure to the same degree as the true identity of a Confidential Informant. Because a CW will face the same, or even greater risks from exposure as a CI, it is FBI policy that CWs be provided the same

-30-

degree of protection. Any information that could possibly identify a cooperating witness,

including dates and places where they have been, are protected from disclosure. Exemption

(b)(7)(C)-4 has been asserted, in conjunction with Exemption (b)(6)-4 and (b)(7)(D)-2, to protect

the identity of a CW who provided information to the FBI on the following pages: Fischer 27, 37,

38, and 40.

## EXEMPTION  (b)(7)(D)
## CONFIDENTIAL SOURCE MATERIAL

(66)    5 U.S.C. ' 552 (b)(7)(D) provides protection for:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement records
> or information . . . could reasonably be expected to disclose the identity
> of a confidential source, including a State, local or foreign agency or
> authority or any private institution which furnished information on a
> confidential basis, and, in the case of a record or information compiled
> by a criminal law enforcement authority in the course of a criminal -
> investigation or by an agency conducting lawful national security
> intelligence investigation, information furnished by a confidential
> source.

(67)    Numerous informants report to the FBI on a regular basis and are informants in the

common meaning of the term. Some of the sources provide information under an express

assurance of confidentiality. Other individuals are interviewed under circumstances from which

an assurance of confidentiality can reasonably be inferred. These individuals are considered to be

confidential informants or sources since they furnish information only with the understanding that

their identities and the information provided will not be divulged outside the FBI. Information

provided by these individuals is singular in nature, and if released, could reveal their identities.

(68)     During the course of the FBI's investigation, FBI SAs sought the assistance of numerous individuals in obtaining information to aid its investigation. Information was provided by certain third parties under an implied grant of confidentiality and by other third parties who provided information under an express assurance of confidentiality.

(69)     These individuals were placed directly in positions that could subject them to acts of reprisal, harassment, or an unnecessary amount of public attention if the FBI disclosed their cooperation. The FBI has learned through experience that individuals who provide information about subjects under investigation must be free to do so without fear of reprisal should their identities or information they provided be disclosed outside their confidential relationships with the FBI. Individuals who provide investigative information must be free to furnish that information with complete candor and without the understandable tendency to hedge or withhold information out of fear that their names or their cooperation with the FBI will later be made public. Those who provide information in these investigations must be secure in the knowledge that their assistance and their identities will be held in confidence.

### (b)(7)(D-)-1    Identity of a Foreign Authority Providing Information in the Course of a Criminal Investigation

(70)     Exemption (b)(7)(D)-1 has been asserted to withhold the identity of a foreign authority that provided information to the FBI. To breach the anonymity this foreign authority was promised when it provided the information could sever the relationship the FBI has with this foreign authority in other investigations. If the FBI were to disclose this information, other foreign authorities could refuse to cooperate and provide the FBI with essential information during future investigations. Moreover, because the FBI relies on the close cooperation of foreign

authorities, it is clear that any such disclosure would result in disastrous, far-reaching consequences for the FBI's law enforcement endeavors. Accordingly, it is clear that this foreign authority provided this information to the FBI under an express grant of confidentiality. Exemption (b)(7)(D)-1 is invoked on the following pages: Fischer 26, 30 and 31.

### (b)(7)(D)-2    Information Provided by Cooperating Witnesses under an Express Assurance of Confidentiality

(71)    Exemption (b)(7)(D)-2 has been asserted to protect names and/or information provided by several CWs. The maintenance of confidentiality surrounding CWs is essential to effective law enforcement and is reflected in official FBI policy. A CW is any individual who meets the definition of a CI who has agreed to testify in a proceeding as a defendant or potential witness. As a result, it is FBI policy to protect a CW's true identity from unauthorized disclosure to the same degree as the true identity of a Confidential Informant. Because a CW will face the same, or even greater risks from exposure as a CI, it is FBI policy that CWs be provided the same degree of protection.

(72)    While a CW will agree to provide his or her testimony in a proceeding if that testimony is required, the testimony ultimately may not be required and the CW may not have to testify. Even if a CW does testify in one proceeding, that testimony may be limited to certain issues such that it will not reveal the CW's role in providing other information to the FBI on related or unrelated investigatory matters. It therefore is essential to protect the confidentiality of CWs, both for investigative purposes and to protect the CW from potential harm. Exemption (b)(7)(D)-2 is cited on the following pages: Fischer 27, 29, and 37-39.

-33-

### (b)(7)(D)-3    Source Symbol Number

(73)    Exemption (b)(7)(D)-3 is asserted, in conjunction with (b)(2)-2, to withhold one

permanent source symbol number in the records responsive to plaintiff's request.  Permanent

Source Symbol numbers are used to administratively conceal an individual's identity by inserting

this number in written documents in lieu of his/her true name.  A source symbol number is

comprised of a two or three letter abbreviation which identifies the particular FBI field office

where the symbol numbered source is operating or has operated, followed by a sequentially

assigned number.  Using a fictitious symbol number, "NY 1234" the two letter abbreviation "NY"

reveals that this is a source of the FBI's New York Field Office and the source is the 1,234th

symbol numbered source of that office.  Source symbol numbers are assigned to confidential

informants who report information to the FBI on a regular basis pursuant to an "express" grant of

confidentiality.  A cooperating witness symbol number belonging to a third party is a unique

identifier for him within a particular field office.  Once this number was assigned to this third

party, it will always be synonymous with him.  Disclosure of this material would reveal

information as to the strength, breadth and scope of the informant program.  If a particular symbol

number such as "NY 1234" is released to the public at repeated times and in various documents,

the identity of the source could be determined.  Plaintiff has received all segregable information

from files.  A third party's cooperating witness symbol number does not shed light upon the FBI's

performance of its statutory duties; therefore, there exists no public interest in the release of that

number.  Exemption (b)(7(D)-3, in conjunction with (b)(2)-2, is invoked on the following page:

Fischer 34.

-34-

## CONCLUSION

(74)    The FBI has processed and released all segregable information from the responsive documents pursuant to FOIA Exemptions 2, 6, 7(C), and 7(D); 5 U.S.C. § 552(b)(2), (b)(6), (b)(7)(C), and (b)(7)(D). Further, the FBI carefully examined the 40 pages of responsive records and determined that the information withheld from plaintiff, if disclosed, could reasonably be expected to reveal internal administrative information, cause a clearly unwarranted invasion of the personal privacy interests of third parties, and/or disclose the identities of confidential sources. Accordingly, the FBI has released all reasonably segregable, nonexempt information to plaintiff in response to his FOIA/Privacy Act request to the FBI.

Executed this _14th_ day of July, 2008.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EUGENE ALBERT FISCHER, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-CV-2037(ESH) |
| v. | ) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

# EXHIBIT A

Eugene A  Fischer        — *US penitentiary*
32904-004
Box PMB
Atlanta, Ga    30315                          *Let sent to Corbondale*

January 31, 1995

Robert Dueker and Lawrence Davis
F B I  offices
250 W . Cherry St
Suite 308
Carbondale, Il    62901

Dear Mssrs  Dueker and Davis

This letter will serve as my request pursuant to the provisions of the Freedom
of Information Act (5 U S C  552) and the Privacy Act (5 U S C  52a (d)(1),
for full disclosure and release of all records and/or data contained in the
files of your agency pertaining to the following matters which are related to a
criminal case the U S  brought against me (U S  v  Fischer, Criminal No
87-40070)

   1) Any investigation by your agency or other law enforcement agencies
      of which you may have records of federal judge James Foreman in the
      last ten years, concerning any criminal matters either directly or
      indirectly involving him   Specifically, information is being sought
      concerning Archie Bob Henderson and/or Donald Medley and any
      investigation of them which might mention or tie in any form
      James Foreman to any criminal investigations or trials of them

   2) Information as to the criminal charges levied, the indictment dates,
      the judicial outcome, and the dates of incerceration of Archie
      Bob Henderson and/or Donald Medley from the year 1985 to the present

   3) Any information concerning investigations and findings (including
      judicial procedures) of the government's cooperating witnesses with
      reference to the Lanier, et al  marijuana case tried in federal court
      in the 7th district in 1988, such data being for the period before,
      during or after the trial   Specifically information is sought
      concerning any perjury allegations or verdicts concerning the witnesses
      Ronald Ball, Charles Podesta, Jeffrey Tuchband, David Tobias and
      Ronald Valentine

   4) Copies of all indictments against Eugene A  Fischer concerning the
      above mentioned case

   5) Information as to the proceeds, methods of sale, and actions taken
      with regards to any property of Eugene A  Fischer taken by the
      U S  government as a result of this case

   6) Copies of any 302 or other material concerning Ronald Valentine and
      his testimony as a cooperating witness in the above mentioned trial

It is further requested that your agency provide me with a copy of specific
regulations as provided by statute (5 U S C  552), so that compliance with
such regulations is adherred to except as otehrwise provided by law
(5 U S C  701 et seq )

O

SEARCHED_____ INDEXED____
SERIALIZED____ FILED____
  FEB    1995
FBI - SPRINGFIELD

This request is made under the Freedom of Information Act (5 U S C 552) and
the Privacy Act (5 U S C 552a) (together with the "alternate means of access"),
to permit access to records on file with your agency  If, for any reason, it
is determined that portions of the material and records sought is exempt by
statute (5 U S C (6)(c)(b)(7), 552a (j)(2) or by any regulation (Menard v
Mitchell, 430 F 2d  486, 139 U S  App  D C  113 (1970), Nemetz v  Department
of Treasury, 446 F Supp  102), I request specific citation to authority for
such deletion   If it should be determined that any material is CONFIDENTIAL
due to identification of source, the permission is granted to the agency to
delete source identification ONLY from the material released   Paton v  LaParde,
524 F 2d  862 (CA3 1975), Chastain v  Kelly, 510 F 2d  1233
I further agree to pay any reasonable costs, or file IN FORMA PAUPERS if I am
indigent, provided by statute or regulation by your agency, for search and
copying of the material requested

Pursuant to Title 5 U S C  552 (6)(1)(1), it is noted that your agency has
ten (10) working days following receipt of this request to provide the
information and material sought   Should any delay occur, it is requested
that your agency inform me of this delay as provided for by agency regulations
and the date when you will be able to act on this request

Sincerely yours,

Eugene A  Fischer

Date Feb 1, 1995

IDENTIFICATION OF REQUESTER:

**Name:** Eugene A  Fischer
**Date of Birth:** October 11, 1940
**Place of Birth:** New York, N Y , U S A
**Social Security No.:** 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
**Federal Bureau of Prisons No.:** 32904-004

| Right Thumb | Right Index | |
|---|---|---|
| I | I | I |
| I | I | I |
| I | I | I |
| I | I | I |
| I | I | I |
| I | I | I |
| I | I | I |
| I | I | I |
| I  RT | I  RI | I |

Page 3

# VERIFICATION

### STATE OF GEORGIA

### COUNTY OF FULTON

### CITY OF ATLANTA

_Eugene A. Fischer_ ,First being sworn, deposes and says
That he/is the affiant herein, that he has read the foregoing request for
information release submitted to _F.B.I offices Carbondale, IL._ and knows
the contents thereof, That the personal identification submitted for this request
is true and accurate upon the personal knowledge of the affiant, and the
fingerprint identification submitted

Requester

SUBSCRIBED and SWORN to
before me this _____ day
of _____ 1995

Notary Public ~ DeKalb County Georgia
My Commission Exp. 25 August 24 1997

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,                    )
                                          )
           Plaintiff,                     )
                                          )
                                          )  Civil Action No. 07-CV-2037(ESH)
           v.                             )
                                          )
FEDERAL BUREAU OF INVESTIGATION,          )
           et al.,                        )
                                          )
                                          )
           Defendants.                    )
                                          )

# EXHIBIT B



U S Department of Justice

Federal Bureau of Investigation

In Reply, Please Refer    to
File No

Suite 400, 400 West Monroe Street
Springfield, IL    62704
February 22, 1995

U.S. Penitentiary
Eugene A. Fischer
32904-004
Box PMB
Atlanta, GA    30315

Dear Mr. Fischer:

        This is in response to your Freedom of Information Act-
Privacy Act request, dated January 31, 1995, and received by our
office on February 7, 1995.

        A search of our indices to the Central Records System
as maintained by the Springfield office disclosed references to
names similar to yours.

        However, since we have not yet had time to retrieve and
review these records, we do not know at this point whether or not
the indicated records are identifiable with you.

        Please be advised that we are making every effort to
expedite the research, processing, and release of documents to
each requester.  However, due to the volume of requests being
processed by our office, you may anticipate some delay.  I can
assure you that your request is being handled as equitably as
possible and any releasable records will be made available at the
earliest possible date.

        Your patience and cooperation will be appreciated.

                        Sincerely,


                        Donald E. Stukey II
                        Special Agent in Charge


1 - Addressee
(1) - Springfield (190-        )

DMM/kss/
(2)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,                    )
                                          )
        Plaintiff,                        )
                                          )  Civil Action No. 07-CV-2037(ESH)
        v.                                )
                                          )
FEDERAL BUREAU OF INVESTIGATION,          )
        et al.,                           )
                                          )
                                          )
        Defendants.                       )
                                          )

# EXHIBIT C



U S  Department of Justice

Federal Bureau of Investigation

In Reply, Please Refer  to
File No

Suite 400, 400 West Monroe Street
Springfield, IL    62704
March 30, 1995

U.S. Penitentiary
Eugene A. Fischer
32904-004
Box PMB
Atlanta, GA    30315

Dear Mr  Fischer·

In reference to your letter that was received by this
office on January 31, 1995, the indices search through our
central records system has been completed, and the file
responsive to your request has been located.  However, our review
of this information has determined the file to be entirely exempt
from disclosure by the following subsections of Title 5, United
States Code, Section 552 and 552a:

(b)(7)    records or information compiled for law
          enforcement purposes, but only to the extent
          that the production of such law enforcement
          records or information

          (A)    could reasonably be expected to interfere
                 with enforcement proceedings;

(j)(2)    Material reporting investigative efforts
          pertaining to the enforcement of criminal law
          including efforts to prevent, control, or
          reduce crime or apprehend criminals, except
          records of arrest.

No review has been conducted for public source
information (i e. newspaper clippings and court documents).  If
you desire this type of information, please advise us and a
search will be conducted.

Appropriate fees will be charged, if applicable, for
public source information documents.

To.  Mr. Fischer

        If you desire, you may submit an administrative appeal
from any denial contained herein.  Appeals should be directed in
writing to the Co-Director, Office of Information and Privacy,
Room 7238 MAIN, United States Department of Justice, Washington,
D.C.  20530, within 30 days from receipt of this letter.  The
envelope and the letter should be clearly marked "Freedom of
Information Appeal" or "Information Appeal."  Please cite the
name of the office to which your original request was directed.

                        Sincerely,


                        Donald E. Stukey II
                        Special Agent in Charge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,           )
                                 )
        Plaintiff,               )
                                 )
        v.                       )  Civil Action No. 07-CV-2037(ESH)
                                 )
FEDERAL BUREAU OF INVESTIGATION, )
        et al.,                  )
                                 )
                                 )
        Defendants.              )
                                 )

# EXHIBIT D

Eugene A Fischer
32904-004
Box PMB
Atlanta, Ga   30315

April 18, 1995                                          **FOIA Material**

Mr  Donald E  Stukey II
Special Agent in Charge
Federal Bureau of Investigation
U S  Department of Justice
Suite 400
400 West Monroe Street
Springfield, Il   62704

Dear Mr  Stukey

With reference to your letter of March 30, 1995, which I received on April 11,1995,
I would like you to conduct a review of public source information (i e  newspaper
and media documents and court documents), as you suggested in your letter

I agree to pay appropriate fees, if applicable

Thank you

Sincerely yours,

Eugene A  Fischer

190·51·47508·6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,                )
                                      )
                                      )
        Plaintiff,                    )
                                      )  Civil Action No. 07-CV-2037(ESH)
        v.                            )
                                      )
FEDERAL BUREAU OF INVESTIGATION,      )
        et al.,                       )
                                      )
                                      )
        Defendants.                   )
                                      )

# EXHIBIT E

Eugene A  Fischer
32904-004
Box PMB
Atlanta, Ga   30315

95-0974   (4)
FBI
SIFO

April 18, 1995                                    FOIA Appeal

Co-Director
Office of Information and Privacy
Room 7238 MAIN
United States Department of Justice
Washington, D C   20530

Dear Sir/Madam

I am writing in regard to a letter from Mr  Donald E  Stukey II of the F B.I
office in Springfield Il  dated March 30th and received on April 11, 1995
in which certain F O I A  material I requested was refused

I hereby appeal this decision, based on the following

You quote the following subsections of Title 5, United States Code, Section 552
and 552a   (b)(7) and (j)(2)

In reviewing Exemption 7 , as amended, I find that the FOIA did not apply to
material which is   Investigatory records in general, but only if they would
(A) interfere with enforcement proceedings, (B) deprive a person of a fair
trial, (C) constitute an unwarranted invasion of personal privacy, (D) disclose
the identity of a confidential source, (E)  disclose investigative procedures,
(F) endanger the life of law enforcement personnel

I maintain that because of the time period involved that there can not be any
active investigations going on at this time   I further maintain that the material
requested does not  fall into any other of the categories listed above under
Exemption 7 , as amended

In general I do not believe that the exemption was to apply to all investigatory
information, but rather it was meant to be narrowed as outlined above

I therefore, request that the file or files found with regards to my request
be made available to me

This material is pertinent to my case   It should not jeopardize any current
investigations for it is all old information   It will not implicate any
informant not already known, nor disclose investigative methods, nor endanger
the life of any enforcement agent, nor deprive a person of a fair trial, nor
constitute an unwarranted invasion of personal privacy   All information
requested is information already known from other sources   The information
will however be relevant in allowing me to a fair trial outcome

I await your answer

Sincerely yours

Eugene A  Fischer

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,

    Plaintiff,

    v.

FEDERAL BUREAU OF INVESTIGATION,
    et al.,

    Defendants.

) Civil Action No. 07-CV-2037(ESH)

# EXHIBIT F



**U S Department of Justice**

Office of Information and Privacy

---

*Telephone   (202) 514-3642*                    *Washington D C 20530*

April 28, 1995

Mr  Eugene A  Fischer
Register #32904-004
Box PMB
Atlanta, GA  30315

     Re   Springfield Field Office

Dear Mr  Fischer

     This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation on your request for information from the files of the Department of Justice was received by this Office on April 24, 1995

     The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours   In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt   Your appeal has been assigned number **95-0974**   Please mention this number in any future correspondence to this Office regarding this matter

     We will notify you of the decision on your appeal as soon as we can   The necessity of this delay is regretted and your continuing courtesy is appreciated

               Sincerely,

               Drema A  Hanshaw
               Paralegal Specialist

*190-HQ-1200038*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,                    )
                                          )
                                          )
        Plaintiff,                        )
                                          )  Civil Action No. 07-CV-2037(ESH)
        v.                                )
                                          )
FEDERAL BUREAU OF INVESTIGATION,          )
        et al.,                           )
                                          )
                                          )
        Defendants.                       )
                                          )

# EXHIBIT G

Eugene A. Fischer
32904-004
Box PMB
Atlanta, Ga   30315

August 20, 1996

Freedom of Information Officer
Federal Bureau of Investigation
Box 3333
250 W. Cherry Street
Suite 308
Carbondale, IL.   62901


Dear Sir/Madam

This is a personal, non-commercial request pursuant to the Freedom of Information Act, 5 USC §552, as amended, and the Privacy Act of 1974, 5 USC §552(a), for all records your agency is in possession of concerning the investigation, charging and bringing of the criminal cases described in the attachment to this letter, and any reference, mention or investigation of Judge James Foreman relating thereto

This is related to a criminal case against me and concerns a public official and records relating to him. I request a copy of all records with regards to these cases and any reference to Judge James Foreman, from all retrievable sources, including computer records, electronic surveillance, etc.

If there are any delections or excisions, I request a legal justification be made of each one and an index of all such excised or withheld records be given me. Under the Acts I expect, as is my right, to receive all non-exempt records.

I will pay reasonable copying fees for these records. This request should be processed pursuant to the Privacy Act which provides that no fees shall be charged for locating and retrieving records, 5 USC §552(f)(5).

As provided in the Acts, I will expect a response to this request within 10 working days of receipt of this letter.

Thank you for your attention to this matter.

Sincerely yours

Eugene A. Fischer



Enclosures    Certificate of Identity,  Attachment

# C E R T I F I C A T E   O F   I D E N T I T Y

I, Eugene A. Fischer, hereby declare, under 28 USC 1746, and under peanlty of perjury, that the following information and signature are correct and true.

**Full Name**    Eugene Albert Fischer

**Current Address**    U.S. Penitentiary
                        601 McDonough Blvd.
                        Atlanta, Ga.  30315

**Date of Birth**    October 11, 1940

**Place of Birth**    New York, N.Y.

**Prison Identification Number**    32904-004

**S.S. Identification Number**    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

I certify that I am the person above named and that any falsifdication of this statement is punishable under the provisions of 18 USC Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 USC 552a(1)(3) by a fine of not more than $5,000.

Signature _____    Date _August 20, 1996_

# A T T A C H M E N T

## CRIMINAL CASE #1

Defendant    Donald M. Medley

Criminal Charges
- *Money Laundering - 31 USC Secs. 5313 & 5322
- *Falsifying Bank Records - 18 USC Sec. 1005
- *Concealing Money for Laundering Scheme -
  18 USC Sec. 1014
- *Criminal Conspiracy
- *Illegally concealing from the U.S. Treasury of
  Money Transfer - 31 USC Secs. 5313 and 5322

Bank Involved    First Bank and Trust of Harrisburg,
                 Harrisburg, Il.

Date of Sentencing    Nov. 21, 1988

Jurisdiction    Southern District of Illinois

Time span involved    1987 and 1988

==============================================================

## CRIMINAL CASE #2

Defendant    Archie Bob Henderson

Criminal Charges
        Mail Fraud, Wire Fraud, False Loan Application,
        Conspiracy, Fradulent Transportation of Federal

Date of Indictment    March 24, 1987

Date of Sentencing    March 18, 1988

Jurisdiction    Southern District of Illinois

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,     )
                                     )
                                     )
        Plaintiff,              )
                                     )  Civil Action No. 07-CV-2037(ESH)
        v.                   )
                                   )
FEDERAL BUREAU OF INVESTIGATION, )
     et al.,                     )
                                   )
                                   )
        Defendants.         )
                                   )

# EXHIBIT H



**U S Department of Justice**

Federal Bureau of Investigation

In Reply Please Refer   to
File No

Suite 400, 400 West Monroe Street
Springfield, IL   62704
September 4, 1996

U S  Penitentiary
Eugene A  Fischer
32904-004
Box PMB
Atlanta, GA  30315

Dear Mr  Fischer

        This is in reference to your Freedom of Information-
Privacy Acts request, dated August 20, 1996, which requested
information substantially duplicative in your request, dated
January 31, 1995

        You were previously advised that the material you
requested was determined to be entirely exempt from disclosure

        We are currently reviewing material for public source
information and it will be released to you after a fee
determination has been made

                        Sincerely,


                        Robert S  Conforti
                        Special Agent in Charge

1 - Addressee
1 - SI (190-SI-47508)
DMM/kss            (2)



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,          )
                                )
        Plaintiff,              )
                                )
                                ) Civil Action No. 07-CV-2037(ESH)
    v.                          )
                                )
FEDERAL BUREAU OF INVESTIGATION,)
        et al.,                 )
                                )
                                )
        Defendants.             )

# EXHIBIT I



U S Department of Justice

Office of Information and Privacy

---

*Telephone   (202) 514-3642*                    *Washington D C 20530*

DEC 30 1996

Mr Eugene A Fischer
Register No   32904-004
Box PMB                                    Re    Appeal No   95-0974
Atlanta, GA   30315                              RLH SAH PNC

Dear Mr Fischer

     You appealed from the action of the Springfield Field Office
of the Federal Bureau of Investigation on your request for access
to records pertaining to yourself

     After careful consideration of your appeal, I have decided
to affirm the initial action in this case   The documents
responsive to your request are exempt from the access provision
of the Privacy Act of 1974 pursuant to 5 U S C  § 552a(j)(2)
See 28 C F R  § 16 96(a) (1996)   Accordingly, your access rights
are limited to those provided by the Freedom of Information Act
You are the subject of one Springfield Field Office main file
entitled "Organized Crime Drug Investigation "  This informa-
tion was properly withheld from you pursuant to 5 U S C
§ 552(b)(7)(A), which pertains to records or information com-
piled for law enforcement purposes, the release of which could
reasonably be expected to interfere with enforcement proceedings
This material is not appropriate for discretionary release
Finally, please be advised that a search of the ELSUR index
of the Springfield Field Office was conducted and no records
responsive to your request could be located

     Your request for public source material is being handled
separately   You will be contacted directly by the FBI when it
has completed processing that information

     Judicial review of my action on this appeal is available to
you in the United States District Court for the judicial district
in which you reside, or in the District of Columbia, or in the
Central District of Illinois, which is where the records you seek
are located

                              Sincerely,


                              Richard L Huff
                              Co-Director


190-HQ-1200038

FBII M~~~~

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,                       )
                                             )
              Plaintiff,                     )
                                             )
                                             )  Civil Action No. 07-CV-2037(ESH)
       v.                                    )
                                             )
FEDERAL BUREAU OF INVESTIGATION,             )
       et al.,                               )
                                             )
                                             )
              Defendants.                    )

# EXHIBIT J



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

DEC 1 8 2006

Mr. Eugene Albert Fischer
Register No. 32904-004
Federal Correctional Institution          Re:    Appeal No. 99-0865
Post Office Box 1032                               Request No. 414039
Coleman, FL 33521                                  ADW:JTR

Dear Mr. Fischer:

    You appealed from the action of the Headquarters Office of the Federal Bureau of
Investigation on your request for access to records pertaining to yourself. I sincerely regret the
substantial delay in responding to your appeal.

    After carefully considering your appeal, and as a result of discussions between FBI
personnel and a member of my staff, I am ████████ your request for further processing.
Although the FBI properly invoked Exemption 7(A) of the Freedom of Information Act, 5 U.S.C.
§ 552(b)(7)(A), at the time your request was processed, that exemption, which pertains to records
or information compiled for law enforcement purposes, the release of which could reasonably be
expected to interfere with enforcement proceedings, ██████████ to withhold the
records in their entireties. Consequently, the FBI will send any and all releasable portions of
them to you directly, subject to any applicable fees. You may appeal any future adverse
determination made by the FBI.

    If you are dissatisfied with my action on your appeal, you may seek judicial review in
accordance with 5 U.S.C. § 552(a)(4)(B).

                                        Sincerely,

                                        Daniel J. Metcalfe
                                        Director

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EUGENE ALBERT FISCHER, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-CV-2037(ESH) |
| v. | ) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

# EXHIBIT K



U.S. Department of Justice

Federal Bureau of Investigation

Washington, D.C. 20535

December 22, 2006

MR EUGENE ALBERT FISCHER
**32904-004
BOX PMB
ATLANTA, GA 30315

Request No.: 0414039- 001
Subject: FISCHER, EUGENE ALBERT

Dear Requester:

☒ This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request.

☐ For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐ To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐ If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒ We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐ Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,       )
                              )
                              )
        Plaintiff,        )
                              )  Civil Action No. 07-CV-2037(ESH)
        v.             )
                              )
FEDERAL BUREAU OF INVESTIGATION,  )
     et al.,          )
                              )
                              )
        Defendants.     )
                              )

# EXHIBIT L

**U.S. Department of Justice**
Federal Bureau of Investigation

*Washington, DC 20535-0001*

Official Business
Penalty for Private Use $300

COM



MR EUGENE ALBERT FISCHER
**32904-004
BOX PMB
ATLANTA, GA 30315



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

December 22, 2006

MR EUGENE ALBERT FISCHER
**32904-004
BOX PMB
ATLANTA, GA 30315



Request No.  0414039- 001
Subject:  FISCHER, EUGENE ALBERT

Dear Requester:

☒    This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request
to the FBI. The FOIPA number listed above has been assigned to your request.

☐    For an accurate search of our records, please provide the complete name, alias, date and
place of birth for the subject of your request. Any other specific data you could provide
such as prior addresses, or employment information would also be helpful. If your
subject is deceased, please include date and proof of death.

☐    To make sure information about you is not released to someone else, we require your
notarized signature or, in place of a notarized signature, a declaration pursuant to Title
28, United States Code 1746. For your convenience, the reverse side of this letter
contains a form which may be used for this purpose.

☐    If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for
your arrest record, please follow the enclosed instructions in Attorney General Order
556-73. You must submit fingerprint impressions so a comparison can be made with the
records kept by CJIS. This is to make sure your information is not released to an
unauthorized person.

☒    We are searching the indices to our central records system at FBI Headquarters for the
information you requested, and will inform you of the results as soon as possible.

☐    Processing delays have been caused by the large number of requests received by the
FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all
correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EUGENE ALBERT FISCHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-CV-2037(ESH) |
| v. | ) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

# EXHIBIT M

Eugene A. Fischer
32904-004
Federal Correctional Complex - Medium
Box 1032
Coleman, FL 33521-1032

March 22, 2007

Mr. David M. Hardy, Chief
Records/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Avenue, NW
Washington, DC  20535-0001

Dear Mr. Hardy:

I am writing in regards to a Freedom of Information request I
made in 1999 which was denied by your agency due to a claim of
an ongoing investigation.  I have been informed by the Office of
Information and Privacy, Department of Justice that my appeal of
this denial has been granted. See enclosed letter of Director
Daniel J. Metcalfe, December 18, 2006.

I wish to puruse my request now that my appeal has been granted.

Ms. Janice Gali McLeod, Associate Director, Office of Information
and Privacy has advised me that you were the party to contact with
regards to such processing.

I would apprecaite your assistance in getting such requested
information. I understand that there is no charge for the first
100 pages of such a request. Kindly notify me as to any charge
for any copies beyond this.

I would appreciate an answer to this matter as soon as possible.

Thank you.

Sincerely yours,

Eugene A. Fischer

Encl(1)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,                        )
                                              )
                                              )
        Plaintiff,                            )
                                              )  Civil Action No. 07-CV-2037(ESH)
        v.                                    )
                                              )
FEDERAL BUREAU OF INVESTIGATION,              )
        et al.,                               )
                                              )
                                              )
        Defendants.                           )
                                              )

# EXHIBIT N



U.S. **Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

April 13, 2007

MR EUGENE ALBERT FISCHER
**32904-004
BOX PMB
ATLANTA, GA 30315



Request No.: 0414039- 001
Subject: FISCHER, EUGENE ALBERT

Dear Requester:

This is in reference to your Freedom of Information-Privacy Acts (FOIPA) request.

We have located approximately ___580___ pages which are potentially responsive to your request. Pursuant to Title 28, Code of Federal Regulations (CFR), Sections 16.11 and 16.49, there is a duplication fee of ten cents per page. The first 100 pages will be provided to you free of charge. Regulations require us to notify requesters when anticipated charges exceed $25, and if all of the pages are released, you will owe __$ 48.00__ in duplication fees. Please remember this is only an estimate, and if some of the pages are withheld or are not identifiable with your subject, the actual charges could be less.

You may want to consider reducing the scope of your request. This would allow you to lower your costs and hasten the receipt of your information. To streamline our operation, we divide our requests into three tracks based on the amount of material to be processed: small (1-500 pages); medium (501-2500 pages) and large (2501 or more pages), with the small track having the fastest rate of processing. To accelerate the processing of your request, you must reduce the pages to be processed to 500 pages or less. Please let us know in writing if you are interested in discussing the possibility of reducing the scope of your request or if you are willing to pay the estimated duplication cost indicated in the above paragraph. Your written response should provide a telephone number where you can be reached between the hours of 8:00 a.m. and 5:00 p.m., EST. You may also fax your response to the following number: 540-868-4996, Attention: Work Processing Unit. You must include the FOIPA request number in any communication regarding this matter.

As stated previously, the cost indicated is only an estimate, therefore, no payment should be made at this time.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,                )
                                      )
                                      )
            Plaintiff,                )
                                      )  Civil Action No. 07-CV-2037(ESH)
        v.                            )
                                      )
FEDERAL BUREAU OF INVESTIGATION,      )
        et al.,                       )
                                      )
                                      )
            Defendants.               )
                                      )

# EXHIBIT O



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

May 14, 2007



MR EUGENE ALBERT FISCHER
**32904-004
BOX PMB 1032
ATLANTA, GA 39315

Request No:  414039-001
Subject:  FISCHER, EUGENE ALBERT

Dear Requester:

The purpose of this letter is to advise you of the status of your pending Freedom of Information/Privacy Acts (FOIPA) request at the Federal Bureau of Investigation (FBI). Currently your request is being reviewed by an analyst. The analyst will confirm that all records are responsive to your request and apply exemptions allowed under FOIPA. If your request is for sensitive national security information, then the records must undergo a systematic declassification review prior to application of FOIPA exemptions. Large requests take the longest time to be processed by an analyst.

You may inquire as to the status of your request by calling the FBI's FOIPA Public Information Center at 540-868-4593.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,                    )
                                          )
                                          )
          Plaintiff,                      )
                                          )  Civil Action No. 07-CV-2037(ESH)
     v.                                   )
                                          )
FEDERAL BUREAU OF INVESTIGATION,          )
          et al.,                         )
                                          )
                                          )
          Defendants.                     )
                                          )

# EXHIBIT P

Eugene A. Fischer
32904-004
FCI-2
Box 1500
Butner, NC 27509

June 5, 2007

Mr. David M. Hardy
Section Chief
Record/Information                    Ref: Req. No. 0414039-001
Dissemination Section                       Subject:
Federal Bureau of Investigation             FISCHER, EUGENE ALBERT
U.S. Department of Justice
935 Pennsylvania Avenue, N.W.
Washington, DC   20535-0001

Dear Mr. Hardy:

Please send me the 580 pages referenced in the attached two letters.

I agree to pay the overage over 100 pages, i.e. the estimated $48.00.

I await your remittance of the materials and the bill.

Please note the above is my correct address not the one on your letters.

Thank you.

Sincerely yours,

Eugene A. Fischer

Encl(2)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,

    Plaintiff,

    v.

FEDERAL BUREAU OF INVESTIGATION,
    et al.,

    Defendants.

Civil Action No. 07-CV-2037(ESH)

# EXHIBIT Q

Eugene Fischer
32904-004
FCI-2
Box 1500
Butner, FL 27509

June 1, 2007

David Hardy
Section Chief
Records/Info. Dissemination
U.S. Dept. of Justice
FBI
935 Pennsylvania Ave. N.W.
Washington, DC 20535-0001

Req. No. 0414039-001
Subj. : Eugene Albert Fischer

Dear Mr. Hardy,

Please proceed to copy the 580 pages indicated and bill me and send the information to the address indicated above.

Thank you,

Eugene A. Fischer

Eugene A. Fischer

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,       )
                             )
       Plaintiff,       )
                             )  Civil Action No. 07-CV-2037(ESH)
       v.       )
                             )
FEDERAL BUREAU OF INVESTIGATION,     )
      et al.,       )
                             )
                             )
      Defendants.       )
                             )

# EXHIBIT R

Eugene A. Fischer
32904-004
FCI-2
Box 1500
Butner, NC  27509

August 20, 2007

Mr. David M. Hardy                          Ref: Req. No. 0414039-001
Section Chief                               Subject: FISCHER, EUGENE ALBERT
Record/Information
Dissemination Section
Federal Bureau of Investigation
U.S. Department of Justice
935 Pennsylvania Avenue, N.W.
Washington, DC  20535-0001

Dear Mr. Hardy:

I am writing concerning a matter of great importance to me and of, what appears to be, of neglect or indifference on your part. It concerns a FOIA request which I originally made in 1999 for information concerning documents which you (the FBI) have with reference to a criminal investigation and case in which I was involved.

In Dec. 18, 2006 I was notified by Mr. Daniel Metcalfe, Director of the Justice Department's Office of Information and Privacy, that he regretted the substantial delay in responding but that my appeal from 1999 had been granted. He told me that the FBI would send me such releaasable information as I had requested. I answered that I would pay for any such records over 100 pages and to please process my request ASAP.

On April 13, 2007, after an exchange of another six letters, I received the enclosed letter from you stating that you had located 580 pages of responsive material to my request. You told me of the charges and asked if I wished to modify my request so that it might contain fewer pages. I answered, as soon as I got your letter, on June 5, 2007 saying I didn't want to change anything and that I would pay any charges at $0.10 per page over 100 pages.

Since this letter from you I haven't heard anything further.

Please process my request.

1

I believe it isn't improper to say that I have waited a long enough time; since 1999 on the original request and now since December 2006 on the revised granting of my request. 

When can I expect to receive the documents?

An answer would be appreciated.

Sincerely yours,

Eugene A. Fischer

Encl(1)

Note: Please send any communication or information to my new address as on the top of this letter.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,                     )
                                           )
                                           )
            Plaintiff,                     )
                                           )  Civil Action No. 07-CV-2037(ESH)
       v.                                  )
                                           )
FEDERAL BUREAU OF INVESTIGATION,           )
       et al.,                             )
                                           )
                                           )
            Defendants.                    )
                                           )

# EXHIBIT S



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

MR EUGENE ALBERT FISCHER
**32904-004
FEDERAL CORRECTIONAL INSTITUTION 2
POST OFFICE BOX 1500
BUTNER, NC 27509

September 18, 2007

Subject: FISCHER, EUGENE ALBERT

FOIPA No. 0414039- 001

Dear Mr. Fischer:

　　　　The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☒(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☒(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

40 **page(s)** were reviewed and 34 **page(s)** are being released.

☐　Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

　　☐　referred to the OGA for review and direct response to you.

　　☐　referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

☒ You have the right to appeal any denials in this release. Appeals should be directed in writing to the Director, Office of Information and Privacy, U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☒ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

Please be advised that the enclosed documents are maintained in a multiple subject investigation of which you were indexed as one of the subjects. In processing such a case pursuant to a FOIPA request, it is the practice of the FBI to address only that portion which specifically pertains to you rather than information pertaining to other subjects.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE ALBERT FISCHER,                    )
                                          )
          Plaintiff,                      )
                                          )  Civil Action No. 07-CV-2037(ESH)
          v.                              )
                                          )
FEDERAL BUREAU OF INVESTIGATION,          )
          et al.,                         )
                                          )
                                          )
          Defendants.                     )
                                          )

# EXHIBIT T

(03/31/95)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                                   **Date:** 09/19/1996

**To:** IRD                          **Attn:** Freedom of Information-Privacy
                                              Acts Section, Training and
                                              Research Unit, Attn

**From:** Springfield
          **Contact:**

**Approved By:**

**Drafted By:**                                                         b6 -1
                                                                        b2 -1
**File Number(s):** 190-SI-47508 (Pending)

**Title:** EUGENE A. FISCHER,
           FOIPA REQUEST
           ADMINISTRATIVE APPEAL NUMBER 95-0974

**Synopsis:** Enclosures for IRD

**Administrative:** Re FBIHQ routing slip to SI, 06/05/1995

**Enclosures:** Enclosed for IRD are the following

          1    All correspondence pertaining to the above
               request

          2    All records released to requester

          3    Two copies of all documents processed in
               original form

          4    Copy of FD-503 Inventory Worksheet

          5    Copy of field office search slip

**Details:** Exemption (b)(7)(a) asserted

          1    Is case still pending? Yes   Why?          fugitives
still at large in ongoing investigation

          2    Is there any public source material in the file?
Yes   Approximately 300 pages of public source material in file

1

190-HQ-1291-58-1

FISCHER-1                                                   6280

Sealed Encl Copies

To   IRD From  Springfield
Re   190-SI-47508, 09/19/1996

          3    Is there any requester supplied information in
file?  No   Can it be released?  N/A

          4    Can the case classification be released?  Yes

                                                                              b6 -1

          Case Agent [                              ] advised that no
material should be released to requester  9/19/96

          It should be noted that this case is very voluminous
with numerous 1As and sub-files


◆◆


                                        2


                              FISCHER-2

b6 -1

FDIPA

| | |
|---|---|
| (7-28-89) | **Date** 2/13/95 |

**Requested by**

Ext. | Squad SSU2 | File No 190

**To** Office Services Manager

**Subject**
EUGENE A. FISCHER

**Social Security Account #**
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

**Aliases**

**Address** BOX PMB   ATLANTA, GA. | **Birth Date** 10/11/40 | **Birth Place** NEW YORK, N.Y. | Race | **Sex** ☐ Male ☐ Female

☐ Exact Spelling
☒ All References
☐ Main Security Case Files Only
☐ Security References Only

☐ Main Criminal Case Files Only
☐ Criminal References Only
☐ Main Security (If no Main, list all Security References)
☐ Main Criminal (If no Main, list all Criminal References)

☐ Restrict Locality of

| ☒ General Indices | ☐ NEG ☒ POS | 2 -- | | ☒ ISIS | SN | ☒ NEG ☐ POS | 2/16/9u |
|---|---|---|---|---|---|---|---|
| Searched by | | Date | | Searched by | | | |
| ☒ Confidential Indices | ☒ NEG ☐ POS | 2/14/95 | | ☒ OCIS | SN (SEE ATTACHED PRINTOUT) | ☐ NEG ☒ POS | 2/14/95 |
| Searched by | | Date | | Searched by | | | |
| ☐ ELSUR Indices | ☐ NEG ☐ POS | | | ☒ IIS | nl | ☒ NEG ☐ POS | 2/15/95 |
| Searched by | | Date | | Searched by | | | |
| ☒ FOIMS | | ☒ NEG ☐ POS | 2/14/95 | ☒ MICRO | | ☐ NEG ☒ POS | 2/16/95 |
| Searched by | | Date | | Searched by | | | |
| ☐ GLOBAL | ☐ NEG ☐ POS | | | ☐ REGIONAL | | ☐ NEG ☐ POS | |
| Searched by | | Date | | Searched by | | | Date |

Place an "X" by the Field Office(s) to Query for Regional Searches

| **Northeast** | **Mid-Atlantic** | | **Central** | | **Western** |
|---|---|---|---|---|---|
| ☐ Albany | ☐ Atlanta | ☐ New Orleans | ☐ Buffalo | ☐ Little Rock | ☐ Albuquerque |
| ☐ Bern Switzerland | ☐ Baltimore | ☐ Norfolk | ☐ Chicago | ☐ Louisville | ☐ Anchorage |
| ☐ Bonn Germany | ☐ Birmingham | ☐ Quantico | ☐ Cincinnati | ☐ Milwaukee | ☐ Butte |
| ☐ Boston | ☐ Charlotte | ☐ Richmond | ☐ Cleveland | ☐ Minneapolis | ☐ Honolulu |
| ☐ London England | ☐ Jackson | ☐ San Juan | ☐ Dallas | ☐ Oklahoma City | ☐ Las Vegas |
| ☐ Mexico City Mexico | ☐ Jacksonville | ☐ Savannah | ☐ Denver | ☐ Omaha | ☐ Los Angeles |
| ☐ New York City | ☐ Knoxville | ☐ Tampa | ☐ Detroit | ☐ Pittsburgh | ☐ Phoenix |
| ☐ Newark | ☐ Memphis | ☐ Washington Field | ☐ El Paso | ☐ San Antonio | ☐ Portland |
| ☐ Paris France | ☐ Miami | ☐ All above | ☐ Houston | ☐ Springfield | ☐ Sacramento |
| ☐ Philadelphia | ☐ Mobile | | ☐ Indianapolis | ☐ St. Louis | ☐ Salt Lake City |
| ☐ Rome Italy | | | ☐ Kansas City | ☐ All above | ☐ San Diego |
| ☐ All above | | | | | ☐ San Francisco |
| | | | | | ☐ Seattle |
| | | | | | ☐ All above |

| **File & Serial Number** | **Remarks** | **File & Serial Number** | **Remarks** |
|---|---|---|---|
| 31 33-23 =934 | Eugen | | |
| " =1185 | E | | b6 -2 |
| =1773 | E  filbri | | b7c -2 |
| NI | | | j2 |
| 281-51-45838-LLLL | Eugene Fische | | |

charges to

**Consolidated by** | **Date**

Re | **Date** 3/21/95 | b6 -1

I - Identical
NI - Not identical

File Review Symbols

? - Not identifiable
U - Unavailable reference

FISCHER-3

ALL CORRESPONDENCE PERTAINING TO REQUEST

FISCHER-4

Eugene A Fischer
32904-004                    — US Penitentiary
Box PMB
Atlanta, Ga    30315                    Let sent to Carbondale

January 31, 1995

Robert Dueker and Lawrence Davis
F B I  offices
250 W  Cherry St
Suite 308
Carbondale, Il    62901


Dear Mssrs  Dueker and Davis

This letter will serve as my request pursuant to the provisions of the Freedom
of Information Act (5 U S C  552) and the Privacy Act (5 U S C  52a (d)(1),
for full disclosure and release of all records and/or data contained in the
files of your agency pertaining to the following matters which are related to a
criminal case the U S  brought against me (U S  v  Fischer, Criminal No
87-40070)

    1)  Any investigation by your agency or other law enforcement agencies
       of which you may have records of federal judge James Foreman in the
       last ten years, concerning any criminal matters either directly or
       indirectly involving him   Specifically, information is being sought
       concerning Archie Bob Henderson and/or Donald Medley and any
       investigation of them which might mention or tie in any form
       James Foreman to any criminal investigations or trials of them

    2)  Information as to the criminal charges levied, the indictment dates,
       the judicial outcome, and the dates of incerceration of Archie
       Bob Henderson and/or Donald Medley from the year 1985 to the present

    3)  Any information concerning investigations and findings (including
       judicial procedures) of the government's cooperating witnesses with
       reference to the Lanier, et al  marijuana case tried in federal court
       in the 7th district in 1988, such data being for the period before,
       during or after the trial   Specifically information is sought
       concerning any perjury allegations or verdicts concerning the witnesses
       Ronald Ball, Charles Podesta, Jeffrey Tuchband, David Tobias and
       Ronald Valentine

    4)  Copies of all indictments against Eugene A  Fischer concerning the
       above mentioned case

    5)  Information as to the proceeds, methods of sale, and actions taken
       with regards to any property of Eugene A  Fischer taken by the
       U S  government as a result of this case

    6)  Copies of any 302 or other material concerning Ronald Valentine and
       his testimony as a cooperating witness in the above mentioned trial


It is further requested that your agency provide me with a copy of specific
regulations as provided by statute (5 U S C  552), so that compliance with
such regulations is adherred to except as otehrwise provided by law
(5 U S C  701 et seq )

SEARCHED_____ INDEXED_____
SERIALIZED____ ___ FILLD_____
FEB    1995
FBI - SPRINGFIELD

FISCHER-5

Page 2

This request is made under the Freedom of Information Act (5 U S C 552) and
the Privacy Act (5 U S C 552a) (together with the "alternate means of access"),
to permit access to records on file with your agency  If, for any reason, it
is determined that portions of the material and records sought is exempt by
statute (5 U S C  (6)(c)(b)(7), 552a (j)(2) or by any regulation (Menard v
Mitchell, 430 F 2d  486, 139 U S  App  D C  113 (1970), Nemetz v  Department
of Treasury, 446 F Supp  102), I request specific citation to authority for
such deletion   If it should be determined that any material is CONFIDENTIAL
due to identification of source, the permission is granted to the agency to
delete source identification ONLY from the material released   Paton v  LaParde,
524 F 2d  862 (CA3 1975), Chastain v  Kelly, 510 F 2d  1233
I further agree to pay any reasonable costs, or file IN FORMA PAUPERS if I am
indigent, provided by statute or regulation by your agency, for search and
copying of the material requested

Pursuant to Title 5 U S C  552 (6)(1)(1), it is noted that your agency has
ten (10) working days following receipt of this request to provide the
information and material sought   Should any delay occur, it is requested
that your agency inform me of this delay as provided for by agency regulations
and the date when you will be able to act on this request


Sincerely yours,

Eugene A  Fischer                    Date  Feb 1, 1995



IDENTIFICATION OF REQUESTER:

Name: Eugene A  Fischer
Date of Birth:  October 11, 1940
Place of Birth:  New York, N Y , U S A
Social Security No.:  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
Federal Bureau of Prisons No.: 32904-004


| Right Thumb | Right Index | |
|---|---|---|
| I | I | I |
| I | I | I |
| I | I | I |
| I | I | I |
| I | I | I |
| I | I | I |
| I | I | I |
| I | I | I |
| I   RT | I   RI | I |


FISCHER-6

.age 3

## VERIFICATION

S T A T E   O F   G E O R G I A

C O U N T Y   O F   F U L T O N

C I T Y   O F   A T L A N T A

_Eugene A. Fischer_____ ,First being sworn, deposes and says
That he/is the affiant herein, that he has read the foregoing request for
information release submitted to __F.B.I offices Carbondale, IL,___ and knows
the contents thereof, That the personal identification submitted for this request
is true and accurate upon the personal knowledge of the affiant, and the
fingerprint identification submitted

_____
Requester

SUBSCRIBED and SWORN to
before me this _____ day
of _____ 1995

Notary Public - DeKalb County Georgia
My Commission Exp. os/August 24 1997

FISCHER-7



U S  Department of Justice

Federal Bureau of Investigation

In Reply, Please Refer   to
File No

Suite 400, 400 West Monroe Street
Springfield, IL   62704
February 22, 1995

U.S. Penitentiary
Eugene A. Fischer
32904-004
Box PMB
Atlanta, GA   30315

Dear Mr. Fischer:

     This is in response to your Freedom of Information Act-
Privacy Act request, dated January 31, 1995, and received by our
office on February 7, 1995.

     A search of our indices to the Central Records System
as maintained by the Springfield office disclosed references to
names similar to yours.

     However, since we have not yet had time to retrieve and
review these records, we do not know at this point whether or not
the indicated records are identifiable with you.

     Please be advised that we are making every effort to
expedite the research, processing, and release of documents to
each requester.  However, due to the volume of requests being
processed by our office, you may anticipate some delay.  I can
assure you that your request is being handled as equitably as
possible and any releasable records will be made available at the
earliest possible date.

     Your patience and cooperation will be appreciated.

                Sincerely,

                Donald E. Stukey II
                Special Agent in Charge

1 - Addressee
(1) - Springfield (190-          )

DMM/kss
(2)

FISCHER-8



**U S Department of Justice**

Federal Bureau of Investigation

In Reply, Please Refer to
File No

Suite 400, 400 West Monroe Street
Springfield, IL    62704
March 30, 1995

U.S. Penitentiary
Eugene A. Fischer
32904-004
Box PMB
Atlanta, GA   30315

Dear Mr Fischer·

In reference to your letter that was received by this office on January 31, 1995, the indices search through our central records system has been completed, and the file responsive to your request has been located. However, our review of this information has determined the file to be entirely exempt from disclosure by the following subsections of Title 5, United States Code, Section 552 and 552a:

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information

(A)   could reasonably be expected to interfere with enforcement proceedings;

(j)(2)   Material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals, except records of arrest.

No review has been conducted for public source information (1 e. newspaper clippings and court documents). If you desire this type of information, please advise us and a search will be conducted.

Appropriate fees will be charged, if applicable, for public source information documents.

FISCHER-9

To.  Mr. Fischer

        If you desire, you may submit an administrative appeal
from any denial contained herein.  Appeals should be directed in
writing to the Co-Director, Office of Information and Privacy,
Room 7238 MAIN, United States Department of Justice, Washington,
D.C.  20530, within 30 days from receipt of this letter.  The
envelope and the letter should be clearly marked "Freedom of
Information Appeal" or "Information Appeal."  Please cite the
name of the office to which your original request was directed.

                              Sincerely,


                              Donald E. Stukey II
                              Special Agent in Charge

FISCHER-10

Eugene A  Fischer
32904-004
Box PMB
Atlanta, Ga   30315

April 18, 1995                              **FOIA Material**

Mr  Donald E  Stukey II
Special Agent in Charge
Federal Bureau of Investigation
U S  Department of Justice
Suite 400
400 West Monroe Street
Springfield, Il   62704

Dear Mr  Stukey

With reference to your letter of March 30, 1995, which I received on April 11,1995,
I would like you to conduct a review of public source information (i e  newspaper
and media documents and court documents), as you suggested in your letter

I agree to pay appropriate fees, if applicable

Thank you

Sincerely yours,

Eugene A  Fischer

190-51-47508-6

b6 -1



FISCHER-11



**U S  Department of Justice**

Federal Bureau of Investigation

In Reply  Please Refer    to
File No

Suite 400, 400 West Monroe Street
Springfield, IL   62704
September 4, 1996

U S  Penitentiary
Eugene A  Fischer
32904-004
Box PMB
Atlanta, GA  30315

Dear Mr  Fischer

　　　This is in reference to your Freedom of Information-
Privacy Acts request, dated August 20, 1996, which requested
information substantially duplicative in your request, dated
January 31, 1995

　　　You were previously advised that the material you
requested was determined to be entirely exempt from disclosure

　　　We are currently reviewing material for public source
information and it will be released to you after a fee
determination has been made

　　　　　　　　　Sincerely,


　　　　　　　　　Robert S  Conforti
　　　　　　　　　Special Agent in Charge

1 - Addressee
1 - SI (190-SI-47508)

DMM/kss        (2)


FISCHER-12

Eugene A. Fischer
32904-004
Box PMB
Atlanta, Ga   30315

August 20, 1996

Freedom of Information Officer
Federal Bureau of Investigation
Box 3333
250 W. Cherry Street
Suite 308
Carbondale, IL.   62901


Dear Sir/Madam

This is a personal, non-commercial request pursuant to the Freedom of Information Act, 5 USC §552, as amended, and the Privacy Act of 1974, 5 USC §552(a), for all records your agency is in possession of concerning the investigation, charging and bringing of the criminal cases described in the attachment to this letter, and any reference, mention or investigation of Judge James Foreman relating thereto

This is related to a criminal case against me and concerns a public official and records relating to him. I request a copy of all records with regards to these cases and any reference to Judge James Foreman, from all retrievable sources, including computer records, electronic surveillance, etc.

If there are any delections or excisions, I request a legal justification be made of each one and an index of all such excised or withheld records be given me. Under the Acts I expect, as is my right, to receive all non-exempt records.

I will pay reasonable copying fees for these records. This request should be processed pursuant to the Privacy Act which provides that no fees shall be charged for locating and retrieving records, 5 USC §552(f)(5).

As provided in the Acts, I will expect a response to this request within 10 working days of receipt of this letter.

Thank you for your attention to this matter.

Sincerely yours,

Eugene A. Fischer

Enclosures   Certificate  of  Identity,  Attachment

FISCHER-13

## C E R T I F I C A T E   O F   I D E N T I T Y

I, Eugene A. Fischer, hereby declare, under 28 USC 1746, and under peanlty of perjury, that the following information and signature are correct and true.

**Full Name**  Eugene Albert Fischer

**Current Address**  U.S. Penitentiary
                     601 McDonough Blvd.
                     Atlanta, Ga. 30315

**Date of Birth**  October 11, 1940

**Place of Birth**  New York, N.Y.

**Prison Identification Number**  32904-004

**S.S. Identification Number**  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

I certify that I am the person above named and that any falsifdication of this statement is punishable under the provisions of 18 USC Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 USC 552a(1)(3) by a fine of not more than $5,000.

Signature _____  Date _August 20, 1996_

FISCHER-14

**A T T A C H M E N T**

CRIMINAL CASE #1

Defendant  Donald M. Medley

Criminal Charges
        *Money Laundering - 31 USC Secs. 5313 & 5322
        *Falsifying Bank Records - 18 USC Sec. 1005
        *Concealing Money for Laundering Scheme -
           18 USC Sec. 1014
        *Criminal Conspiracy
        *Illegally concealing from the U.S. Treasury of
           Money Transfer - 31 USC Secs. 5313 and 5322

Bank Involved  First Bank and Trust of Harrisburg,
           Harrisburg, Il.

Date of Sentencing  Nov. 21, 1988

Jurisdiction  Southern District of Illinois

Time span involved  1987 and 1988

==========================================================

CRIMINAL CASE #2

Defendant  Archie Bob Henderson

Criminal Charges
        Mail Fraud, Wire Fraud, False Loan Application,
        Conspiracy, Fradulent Transportation of Federal

Date of Indictment  March 24, 1987

Date of Sentencing  March 18, 1988

Jurisdiction  Southern District of Illinois

FISCHER-15



**U S Department of Justice**

Office of Information and Privacy

---

Telephone   (202) 514-3642                    *Washington D C 20530*

DEC 30 1996

Mr  Eugene A  Fischer
Register No  32904-004
Box PMB                                Re    Appeal No· 95-0974
Atlanta, GA  30315                            RLH SAH PNC

Dear Mr  Fischer

    You appealed from the action of the Springfield Field Office
of the Federal Bureau of Investigation on your request for access
to records pertaining to yourself

    After careful consideration of your appeal, I have decided
to affirm the initial action in this case   The documents
responsive to your request are exempt from the access provision
of the Privacy Act of 1974 pursuant to 5 U S C  § 552a(j)(2)
See 28 C F R  § 16 96(a) (1996)   Accordingly, your access rights
are limited to those provided by the Freedom of Information Act
You are the subject of one Springfield Field Office main file
entitled "Organized Crime Drug Investigation "  This informa-
tion was properly withheld from you pursuant to 5 U S C
§ 552(b)(7)(A), which pertains to records or information com-
piled for law enforcement purposes, the release of which could
reasonably be expected to interfere with enforcement proceedings
This material is not appropriate for discretionary release
Finally, please be advised that a search of the ELSUR index
of the Springfield Field Office was conducted and no records
responsive to your request could be located

    Your request for public source material is being handled
separately   You will be contacted directly by the FBI when it
has completed processing that information

    Judicial review of my action on this appeal is available to
you in the United States District Court for the judicial district
in which you reside, or in the District of Columbia, or in the
Central District of Illinois, which is where the records you seek
are located

                        Sincerely,



                        Richard L  Huff
                        Co-Director


                                    *190-HQ-1200038*

                    b6 -1                 FISCHER-16

FBI

b6 -1

## FIELD OFFICE APPEAL WORKSHEET

APPEAL NUMBER _85-0974_    FIELD OFFICE _SI_

PREPARED B[_____]

REQUESTER _Eugene A. Fischer_    TYPE OF REQ ✓ PRIVACY
                                              ___ FOIA

SUBJECT _Self_

Notary Rec'd? (YES) / NO / NOT REQ.    Elsur Req (NO) / YES    NEG/POS

DATE REQ REC IN FIELD _2-7-95_    DATE OF RELEASE LETTER _3-30-95_

### FILES CONSIDERED FOR RELEASE

MAIN FILES
_12B-351 changed to_ Classification _Drug Demand Reduction Program_
_28H-SI-45838_ Classification _OCDI-Drugs-Fug_

Cross References

_____    _____
_____    _____
_____    _____
_____    _____

### EXEMPTIONS USED*

FOIA - b1  b2  b3  b4  b5  b6 (b7A)  b7B  b7C  b7D  b7E  b7F

PRIVACY- d5 (j2)  k1  k2  k3  k4  k5  k6  k7  other_____

*A brief explanation of the usage of each exemption cited is
noted on page two

FOR YOUR INFORMATION _The Springfield office offered public_
_source info in their 3-30-95 letter by letter 4-18-95 the_
_requester requested the public source_
_by letter 8-20-96 requester renewed his request and_
_requested an ELSUR. This has not been done as yet._
_Springfield's latest response is dated 9-4-96._

DOJ ATTORNEY _PNC_    DATE REVIEWED _10-2-96_

AFFIRMED _X_    MODIFIED_____ REMANDED_____
                        (As of 10-1-96)
COMMENTS _It's still 7A. Public source was offered_
_and is being provided by the Bu, separately._

DATE DOJ LTR REC _____    TO BE FILED IN 190-    FISCHER-17

b1

DCU review of classified material for presentation to the DRC
_____ will be done after appeal review
_____ has been completed

## b7A

_____ b7A previously cited IS NO LONGER APPLICABLE

__✓__ Case agent was recontacted and advised of appeal and stated
that the release of any material from this file COULD REASONABLY
BE EXPECTED TO INTERFERE WITH (HARM) LAW ENFORCEMENT PROCEEDINGS

b6 -1

Name of Agent [                    ]     Date contacted _9-19-96_

                                          as of 10-1-96 - still pending

Public source material in file? (YES)/ NO
approx 300 pp.

Requester supplied information in file?  YES (NO)

Would advising requester of case classification harm proceedings?
YES ✓(NO)

## b7D

_____ Cited to protect the identity of and/or information
provided by a source under an EXPRESSED ASSURANCE OF
CONFIDENTIALITY

_____ Cited to protect the identity of and/or information
provided by a source under an IMPLIED ASSURANCE OF
CONFIDENTIALITY

Other  (explain)_____

### Other exemptions cited

Give a brief explanation of the usage of all other exemptions
cited

_____

_____
_____
_____
_____
_____
_____
_____

Regional Coordinator's comments

An ELSUR search should be done.

FISCHER-18

NOV-12-1996  10:54  FROM  FBI 21 APPLICANT UNIT    TO    12022549525    P.02

FD-160 (Rev 9 28-92)

| | Date Requested | 11/12/96 | b6 -1 |
| | | | b2 -1 |

To  Administrative Officer

| Ext. | Squad | File No |
| | SSU2 | 190- |

Subject    EUGENE ALBERT FISCHER
           EUGENE A  FISCHER, C

Social Security Account #

Aliases

| Address  U.S PENITENTIARY ATLANTA, GA | Birth Date 10/11/40 | Birth Place N.Y | Race | Sex □ Male □ Female |

- □ Exact Spelling
- ☒ All References
- □ Main Security Case Files Only
- □ Security References Only
- □ Main Criminal Case Files Only
- □ Criminal References Only
- □ Main Security (if no Main list all Security References)
- □ Main Criminal (if no Main, list all Criminal References)
- □ Restrict Locality of

| □ General Indices | □ NEG □ POS | | □ ISIS | □ NEG □ POS | |
| Searched by | | Date | Searched by | | Date |
| □ Confidential Indices | □ NEG □ POS | | □ OCIS | □ NEG □ POS | |
| Searched by | | Date | Searched by | | Date |
| ☒ ELSUR Indices | ☒ NEG □ POS | 11/12/96 | □ IIS | □ NEG □ POS | |
| Searched by | | Date | Searched by | | Date |
| □ FOIMS | □ NEG □ POS | | □ MICRO | □ NEG □ POS | |
| Searched by | | Date | Searched by | | Date |
| □ GLOBAL | □ NEG □ POS | | □ REGIONAL | □ NEG □ POS | |
| Searched by | | Date | Searched by | | Date |

### Place an  "X"  by the Field Office(s) to Query for Regional Searches

| Northeast | Legats | Mid-Atlantic | | Central | | Western |
|---|---|---|---|---|---|---|
| □ Albany | □ Athens | □ Atlanta | □ Mobile | □ Buffalo | □ Little Rock | □ Albuquerque |
| □ Boston | □ Bangkok | □ Baltimore | □ New Orleans | □ Chicago | □ Louisville | □ Anchorage |
| □ New Haven | □ Bern | □ Birmingham | □ Norfolk | □ Cincinnati | □ Milwaukee | □ Honolulu |
| □ New York City | □ Bogota | □ Charlotte | □ Quantico | □ Cleveland | □ Minneapolis | □ Las Vegas |
| □ Newark | □ Bonn | □ Columbia | □ Richmond | □ Dallas | □ Oklahoma City | □ Los Angeles |
| □ Philadelphia | □ Bridgetown | □ Jackson | □ San Juan | □ Denver | □ Omaha | □ Phoenix |
| □ All above | □ Brussels | □ Jacksonville | □ Tampa | □ Detroit | □ Pittsburgh | □ Portland |
| | □ Canberra | □ Knoxville | □ Washington | □ El Paso | □ San Antonio | □ Sacramento |
| | □ Caracas | □ Memphis | Field | □ Houston | □ Springfield | □ Salt Lake City |
| | □ Hong Kong | □ Miami | □ All above | □ Indianapolis | □ St Louis | □ San Diego |
| | □ London | | | □ Kansas City | □ All above | □ San Francisco |
| □ Madrid | | | | | | □ Seattle |
| □ Manila | | | | | | □ All above |
| □ Mexico City | | | | | | |
| □ Montevideo | | | | | | |
| □ Ottawa | | | | | | |
| □ Panama City | | | | | | |
| □ Paris | | | | | | |
| □ Rome | | | | | | |
| □ Tokyo | | | | | | |
| □ Vienna | | | | | | |

| File & Serial Number | Remarks | File & Serial Number | Remarks |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Consolidated by | | Date |
| Reviewed by | | Date |

| | File Review Symbols | |
| I - Identical | ? Not identifiable | |
| NI  Not identical | U  Unavailable reference | |

FISCHER-19

FBI/DOJ



**U S Department of Justice**

Office of Information and Privacy

_Telephone (202) 514-3642_                    _Washington D C 20530_

April 28, 1995

Mr Eugene A Fischer
Register #32904-004
Box PMB
Atlanta, GA  30315

    Re    Springfield Field Office

Dear Mr Fischer

    This is to advise you that your administrative appeal from
the action of the Federal Bureau of Investigation on your request
for information from the files of the Department of Justice was
received by this Office on April 24, 1995

    The Office of Information and Privacy, which has the
responsibility of adjudicating such appeals, has a substantial
backlog of pending appeals received prior to yours  In an
attempt to afford each appellant equal and impartial treatment,
we have adopted a general practice of assigning appeals in the
approximate order of receipt  Your appeal has been assigned
number 95-0974  Please mention this number in any future
correspondence to this Office regarding this matter

    We will notify you of the decision on your appeal as soon as
we can  The necessity of this delay is regretted and your
continuing courtesy is appreciated

                     Sincerely,

                     Drema A  Hanshaw
                     Paralegal Specialist

190-HQ-1200038

FISCHER-20

Eugene A Fischer
32904-004
Box PMB
Atlanta, Ga   30315

95-0974    (4)
FOI
SIPO

April 18, 1995                                    FOIA Appeal

Co-Director
Office of Information and Privacy
Room 7238 MAIN
United States Department of Justice
Washington, D C    20530

Dear Sir/Madam

I am writing in regard to a letter from Mr  Donald E  Stukey II of the F B.I
office in Springfield Il  dated March 30th and received on April 11, 1995
in which certain F O I A  material I requested was refused

I hereby appeal this decision, based on the following

You quote the following subsections of Title 5, United States Code, Section 552
and 552a    (b)(7) and (j)(2)

In reviewing Exemption 7 , as amended, I find that the FOIA did not apply to
material which is   Investigatory records in general, but only if they would
(A) interfere with enforcement proceedings, (B) deprive a person of a fair
trial, (C) constitute an unwarranted invasion of personal privacy, (D) disclose
the identity of a confidential source, (E)  disclose investigative procedures,
(F) endanger the life of law enforcement personnel

I maintain that because of the time period involved that there can not be any
active investigations going on at this time   I further maintain that the material
requested does not  fall into any other of the categories listed above under
Exemption 7 , as amended

In general I do not believe that the exemption was to apply to all investigatory
information, but rather it was meant to be narrowed as outlined above

I therefore, request that the file or files found with regards to my request
be made available to me

This material is pertinent to my case   It should not jeopardize any current
investigations for it is all old information   It will not implicate any
informant not already known, nor disclose investigative methods, nor endanger
the life of any enforcement agent, nor deprive a person of a fair trial, nor
constitute an unwarranted invasion of personal privacy   All information
requested is information already known from other sources   The information
will however be relevant in allowing me to a fair trial outcome

I await your answer

Sincerely yours

Eugene A Fischer    app

FISCHER-21

# IMPORTANT AND URGENT

FBI/DOJ

FISCHER-22

SPRINGFIELD
TELETYPE UNIT
25 JUL 94  07 16z
FEDERAL BUREAU
OF INVESTIGATION

0430  MRI 02037

RR RUCNFB FBITP

DE FBISI #0004 2092255

ZNR UUUUU

R 282253Z JUL 94

FM FBI SPRINGFIELD (281B-SI-45838) (P)

TO DIRECTOR FBI /ROUTINE/

FBI INDIANAPOLIS /ROUTINE/

BT

UNCLAS

CITE: //3660:1725//

PASS: HQ FOR SSA _____ ASSISTANT UNIT CHIEF,

LABORATORY DIVISION, DOCUMENT SECTION, QUESTIONED DOCUMENT

UNIT.

SUBJECT: _____ ET AL; NARCOTICS MATTER;

OO: SI.

RE TELCAL OF SA _____ CARBONDALE, ILLINOIS RA,

SI, TO SSA _____

FOR INFORMATION, DURING THE PERIOD 1983-1987, _____

_____ IMPORTED INTO THE UNITED STATES IN EXCESS OF

281B-SI-45838-28

CC-3075

PAGE TWO DE FBISI 0004 UNCLAS

600,000 POUNDS OF MARIJUANA NETTING PROFITS IN EXCESS OF

$180,000,000 TO [ ] [ ] PARTNERS, [ ]

[ ] AND EUGENE ALBERT FISCHER, [ ]

HAS CONVICTED IN [ ] , AT [ ] AND

RECEIVED A [ ] SENTENCE FOR ENGAGING IN A

CONTINUING CRIMINAL ENTERPRISE (T21, USC, S848(B).). THE

GOVERNMENT OBTAINED A CRIMINAL FORFEITURE JUDGEMENT OF

[ ] AGAINST [ ]

[ ] THIS

INVESTIGATION HAS RESULTED IN TOTAL DRUG SEIZURES OF

APPROXIMATELY $45,000,000.

FISCHER-24

RECEIVED
TELETYPE UN
1 7 SEP 94
FEDERAL 4
OF INVES

410

Dep. Dir. _____
ADD Adm. _____
ADD Inv. _____
Asst. Dir.: _____
Adm. Servs. _____
Crim. Inv. _____
Ident. _____
Info. Mgnt. _____
Insp. _____
Intell. _____
Lab. _____
Legal Coun. _____
Tech. Servs. _____
Training _____
Cong. Affs. Off. _____
Off. of CEO _____
Off. Liaison &
Int. Affs. _____
Off. of Public Affs. _____
Telephone Rm. _____
Director's Office _____

0275  MRI 01642

RR RUCNFB FBISI BER BRU

DE FBIMM #0010 2592018

ZNR UUUUU

R 160013Z SEP 94

FM FBI MIAMI (281B-SI-45838) (D-8) (P)

TO DIRECTOR FBI/ROUTINE/

FBI SPRINGFIELD/ROUTINE/

LEGAT BERN/ROUTINE/

LEGAT BRUSSELS/ROUTINE/

BT

UNCLAS

SECTION ONE OF THREE SECTIONS

CITE:  //3460//

PASS:  FBIHQ - CIO: LIAS/FLU-1, OC/DOS#1; LEGAT BERN - ALAT    b7C -1, 3
b6 -1, 3

_____ - CARBONDALE RA.

SUBJECT: _____ ET AL; DRUG MATTER; OO:
SPRINGFIELD.

RE MIAMI TELS TO DIRECTOR ON 3/14/94 AND 5/13/94.

THE PURPOSE OF THIS TEL IS TO PROVIDE LEGAT BRUSSELS, DUE

281B-SI-45838-36

C-7458

FISCHER-25

PAGE TWO DE FBIMM 0010 UNCLAS

b7D -1

SYNOPSIS:

EUGENE ALBERT FISCHER (FUGITIVE) AND OTHERS WERE INDICTED IN 1988 BY THE SPRINGFIELD DIVISION FOR A NUMBER OF DRUG RELATED CHARGES.

ARE SERVING              EACH FOR

b7C -2
b6 -3

THEIR ROLES IN THE TRANSPORTATION AND DISTRIBUTION OF TONS OF MARIJUANA AND COCAINE              BASED ON INFORMATION PROVIDED BY THE SPRINGFIELD DIVISION,

MILLIONS OF U.S. DOLLARS DERIVED FROM

FISCHER-26

PAGE THREE DE FBIMM 0010 UNCLAS

THEIR DRUG DISTRIBUTION IN EUROPEAN BANK ACCOUNTS.   IT IS

FURTHER BELIEVED BY FBI SPRINGFIELD THAT EUGENE ALBERT FISCHER

(FUGITIVE) IS RESIDING UNDER A FICTITIOUS IDENTITY IN

SWITZERLAND.

b7C -3, 5
b7D -2
b6 -3, 5

FISCHER-27

0289  MRI 01832

PP RUCNFB BER FBINY FBIMM FBIKC

DE FBISI #0002 0252347

ZNR UUUUU

P 252343Z JAN 96

FM FBI SPRINGFIELD (281B-SI-45838) (P)

TO DIRECTOR FBI/PRIORITY/

LEGAT BERN/PRIORITY/

FBI NEW YORK (196-NY-239513)/PRIORITY/

FBI MIAMI/PRIORITY/

INFO FBI KANSAS CITY/PRIORITY/

BT

UNCLAS

SECTION ONE OF SIX SECTIONS

CITE:  //3860:1725//

PASS:  HQ FOR CRIMINAL INVESTIGATIVE DIVISION, FCS/ECU; BERN

FOR

SUBJECT:

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative of _____

_____ Page(s) withheld for the following reason(s): _____

_____

☑ The following number is to be used for reference regarding these pages:
### FISCHER - 29

XXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
### DELETED PAGE INFORMATION SHEET

_____ / ___ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☑ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☑ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Pages were not considered for release as they are duplicative of _____

_____ Page(s) withheld for the following reason(s): _____
_____
_____

☑ The following number is to be used for reference regarding these pages:
 _F.I.S.C.H.E.R. - 30_____

XXXXXXXXXXXXXXXX
X     Deleted Page(s)     X
X  No Duplication Fee   X
X     for this page        X
XXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

FBI/DOJ

PAGE FOUR DE FBISI 0002 UNCLAS

b7C -2
b7D -1
b6 -3

FOR INFORMATION, DURING THE PERIOD 1983-1987,

ENGAGED IN A CONTINUING CRIMINAL ENTERPRISE

WITH                    EUGENE A. FISCHER,

DEVELOPED SOURCES FOR MARIJUANA IN

WAS ABLE TO ACQUIRE LARGE

AMOUNTS OF          MARIJUANA          FISCHER HAD ACCESS

TO OCEAN-GOING TUGBOATS AND BARGES AND WERE ABLE TO FURNISH

TRANSPORTATION FOR LARGE AMOUNTS OF MARIJUANA FROM COLOMBIA TO

THE U.S..

FISCHER-31

PAGE FIVE DE FBISI 0002 UNCLAS

DURING 1993 AND 1984, [        ] INDIVIDUALS INVESTED A
TOTAL OF [        ] WITH [                    ]
[            ] THIS MONEY WAS UTILIZED, ALONG WITH OTHER MONIES,
TO CONSTRUCT AND BEGIN OPERATIONS OF A CARD CASINO IN
CALIFORNIA [                    ] THIS CLUB WAS LATER
SEIZED BY THE GOVERNMENT AND CURRENTLY HAS A VALUE OF
APPROXIMATELY $155,000,000. THE U.S. GOVERNMENT IS CURRENTLY
IN THE PROCESS OF DISPOSING OF THIS ASSET. [                ]
[   ] FISCHER WERE CONVICTED OF CONTINUING CRIMINAL ENTERPRISE
CHARGES AND ARE CURRENTLY SERVING MANDATORY LIFE SENTENCES.
[                                    ]
[                        ] $30,000,000 WAS
ORDERED FORFEITED AGAINST FISCHER. [                    ]
[                                        ]

b7C -2, 3
b6 -2, 3

FISCHER-32

FD-36 (Rev. 11-17-88)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☒ AIRTEL

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☒ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS

Date  3/2/94

TO      : DIRECTOR, FBI

FROM    : SAC, PHILADELPHIA  (90A-PH-73768) (WRA) (C)

SUBJECT : UNSUBS (2);

          EUGENE FISHER;

                                              b7C -1, 3
                                              b6 -1, 3

          IFPI-ESCAPE, CONSPIRACY
          OO:PH

          Enclosed for the Bureau are the original and three
copies of a Letterhead Memo (LHM) suitable for dissemination.

          On March 7, 1994, the facts contained in the enclosed
LHM were discussed with Assistant United States Attorney
_____ of Pennsylvania,
Lewisburg, Pennsylvania, who declined prosecution due to a
lack of credible evidence of an escape plot.

                              90A-PH-73768-1

②-Bureau (Encs. 4)✓
1-Atlanta (Info.)
1-Philadelphia (90A-PH-73768) (WRA)

MPH:sac
(4)

                                        3/17/94
                                        1-HT + enc.
                                        to Rm. 5C 94
                                        RDP/SK

Approved: _____  Transmitted _____  Per _____
                                   (Number)  (Time)

FISCHER-33

90A-PH-73768

## ADMINISTRATIVE

The Cooperating Witness mentioned in referenced LHM is

b2 -2
b7D -3

2*

Columbian - 90 Clasp (9 x 12)

FISCHER-35

90A-PH-13768-1

ENCLOSURE *Four (4)* FROM PHILADELPHIA

UNSUB(s) (2);
ET AL; IFPI - ESCAPE, Conspiracy;
OO : P.H

~~Four (4) Letterhead Memos~~

90A - PH - 73718

*Airtel* 3/2/94

b6 -3
b7C -3

U.S. Department of Justice

Federal Bureau of Investigation

In Reply, Please Refer to
File No.

Philadelphia, Pennsylvania

March 2, 1994

UNSUBS (2);

EUGENE FISHER;

U.S. PENITENTIARY,
LEWISBURG, PENNSYLVANIA;

b7C -3, 5
b7D -2
b6 -3, 5

IRREGULARITY IN A FEDERAL PENAL INSTITUTION-ESCAPE
CONSPIRACY

captioned subjects were planning a helicopter escape attempt from
the U.S. PENITENTIARY (USP), Lewisburg, Pennsylvania.

purportedly in contact with members
of the EUGENE FISHER family

FISCHER-37

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to
your agency; it and its contents are not to be distributed outside your agency.

90A-PH-73768

A review of the central file of inmate EUGENE FISHER,
Registry Number 32904-004, determined that he is serving a           b7C -3, 5
mandatory life sentence for the importation of 600,000 pounds of     b7D -2
marijuana.  He was transferred from the FEDERAL CORRECTIONAL         b6 -3, 5
INSTITUTE, Ashland, Kentucky, to the USP, Lewisburg,
Pennsylvania, in April, 1991, based upon information
by the BUREAU OF PRISONS, that FISHER,

2

FISCHER-38

90A-PH-73768

On March 7, 1994, the above facts were presented to Assistant United States Attorney ☐ ☐ of Pennsylvania, Lewisburg, Pennsylvania, who declined prosecution, based on lack of credible evidence involving an escape.

b7C -5
b6 -5

Additionally, EUGENE FISHER was recently transferred to the USP, Atlanta.

4*

FISCHER-40