## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**EUGENE A. FISCHER,**                  )
                                        )
        **Plaintiff,**  )
                                        )
**v.**                                  )    **Civil Action No. 07-2037 (ESH)**
                                        )
**U.S. DEPARTMENT OF JUSTICE,**         )
                                        )
        **Defendant.**  )
_____ )


## MEMORANDUM OPINION

Plaintiff, proceeding *pro se*, has brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, to compel disclosure by the Federal Bureau of Investigation ("FBI") of records regarding his criminal case.[1]  The FBI has produced some responsive documents, and defendant now moves for partial summary judgment with respect to those disclosures.  For the reasons set forth below, the Court will grant defendant's motion.

## BACKGROUND

This case originated with plaintiff's FOIA/Privacy Act request submitted to the FBI's Springfield, Illinois Field Office ("SIFO") in January 1995 for records concerning himself and third parties connected to his 1988 criminal case in the U.S. District Court for the Southern District of Illinois.  Plaintiff was convicted in that jurisdiction of engaging in a continuing criminal enterprise involving the importation of large amounts of marijuana into the United

---

[1] Plaintiff originally sued the Department of Justice ("DOJ"), the FBI, and the Office of Information and Privacy ("OIP").  Because the FBI and OIP are both components of DOJ, the Court substituted DOJ as the sole defendant. *See Fischer v. FBI*, No. 07-2037, 2008 U.S. Dist. LEXIS 41603, at *1 (D.D.C. May 29, 2008).

States.  (*See* Declaration of David M. Hardy, filed July 17, 2008 ["Second Hardy Decl."] ¶ 5.)[2]

Many of the facts surrounding plaintiff's prior attempts to obtain records are set forth in this

Court's earlier opinion denying defendant's motion to dismiss or, in the alternative, motion for

summary judgment.  *See Fischer v. FBI*, No. 07-2037, 2008 U.S. Dist. LEXIS 41603 (D.D.C.

May 29, 2008).  Those facts will not be repeated here.  Rather, for purposes of this opinion, the

Court notes only that after initially affirming the FBI's decision to withhold all records

responsive to plaintiff's request in December 1996, the Justice Department's Office of

Information and Privacy ("OIP") reversed itself in December 2006, thereby prompting the FBI's

most recent records search and plaintiff's appeal.

*Search of FBI Headquarters Records.*  Following OIP's remand of plaintiff's request for

further processing, the FBI conducted a search of FBI headquarters ("FBIHQ").  The search

yielded three FBI main files:  190-HQ-1200038, 281B-SI-45838, and 90A-PH-73768, from

which the FBI identified approximately 580 pages that were potentially responsive to plaintiff's

request.  (*See* Second Hardy Decl. ¶¶ 17, 32.)  After reviewing these records, however, the FBI

determined that only 40 pages actually pertained to plaintiff and of these pages, it released 37

pages, including 15 pages in full and 22 pages redacted pursuant to Privacy Act Exemption (j)(2)

and FOIA Exemptions 2, 6, 7(C), and 7(D).  (*Id.* ¶ 4; Third Declaration of David M. Hardy

["Third Hardy Decl."] ¶ 4 & n.1.)  The remaining three pages were withheld in full pursuant to

the same exemptions.  (*Id.*)  Of the 40 pages deemed responsive by the FBI, 11 were contained in

---

[2] David M. Hardy is Section Chief of the Record/Information Dissemination Section, Records
Management Division, at FBI Headquarters.  His initial Declaration was attached to defendant's
prior motion to dismiss or, in the alternative, motion for summary judgment; his Second
Declaration is attached to defendant's motion for summary judgment; and his Third Declaration
is attached to defendant's reply.  Defendant also filed a Fourth Declaration by Hardy as a
separate document in this proceeding and a Fifth Hardy Declaration as an attachment to its
motion to stay proceedings and for disclosure schedule.

file 281B-SI-45838 and the remaining 29 pages were contained in files 190-HQ-1200038 and

90A-PH-73768.  (Third Hardy Decl. ¶ 5.)  The remainder of the 580 pages initially identified by

the FBI as potentially responsive to plaintiff's request did not pertain to plaintiff and were

therefore deemed "out of scope" of plaintiff's request.[3]  (*Id.*; Second Hardy Decl. ¶ 17 n.5.)

    *Search of SIFO Records.*  Although plaintiff had submitted his FOIA/Privacy Act request

to SIFO, that office's records were not searched following the remand by OIP because, due to an

administrative coding error, the office of origin for plaintiff's request previously had been

designated as FBIHQ and not SIFO.[4]  (*See* Fourth Declaration of David M. Hardy ["Fourth

Hardy Decl."] ¶ 5.)  Therefore, FBI personnel performing the search were unaware that the

original request had been made to SIFO.  (*Id.* ¶ 6.)  Upon discovery of this error, FBI personnel

searched for potentially responsive SIFO files and determined that FBI main file 281B-SI-45838

contained many records in the SIFO portion of the file that had not previously been reviewed or

processed.[5]  (*See id.* ¶¶ 7-8.)  Upon review, the FBI identified approximately 1,804 pages in the

SIFO portion of the file that were responsive to plaintiff's request.  (*See* Fifth Declaration of

---

[3] The bulk of the documents identified as potentially responsive were contained in file 281B-SI-45838, a file concerning multiple subjects that consisted of approximately 541 pages.  (Third Hardy Decl. ¶ 5.)  When processing a multiple subject file, only those documents that pertain to the person about whom the request has been made are processed; the FBI considers documents pertaining to non-requesting subjects "out of scope" and will not process such documents in any event absent a Privacy Act waiver or proof of death.  (Second Hardy Decl. ¶ 17 n.5.)  When the FBI informed plaintiff that there were approximately 580 responsive pages, it had yet to review the file and eliminate documents that were non-responsive to plaintiff's request.  (*Id.* ¶¶ 17 n.5, 33; Third Hardy Decl. ¶ 5.)  Although the other two files were not multi-subject files, 10 pages from these files were also deemed non-responsive.  (*See* Third Hardy Decl. ¶ 5.)

[4] While plaintiff filed his first FOIA/Privacy Act request in January 1995, he filed a substantially duplicative request in August 1996. The FBI merged both requests into a single FOIPA Request Number 414039.  When doing so, however, the office of origin for the request was inadvertently designated as FBIHQ instead of SIFO.  (Fourth Hardy Decl. ¶ 5.)

[5] The unreviewed portion of the file consisted of 58 main volumes, 77 1A volumes, and two subfiles - - 281B-SI-45838-CCC and 281B-SI45838-ZZZ.  (*See* Fourth Hardy Decl. ¶ 9.)

David M. Hardy ["Fifth Hardy Decl."] ¶ 7.)  In order to give the FBI time to review and process

these records, defendant has requested a stay of these proceedings until March 2, 2009.[6]

  *Search of Public Source Records in SIFO Files.*  Pursuant to plaintiff's request, SIFO

also conducted a search for public source information.[7]  This search yielded approximately 300

pages of public source material contained in a sub-file of the 281B-SI-45838 file.  (Third Hardy

Decl. ¶ 6 and Ex. A thereto.)  The FBI released 81 pages of this material to plaintiff in January

1997, with the names and identifying information of FBI Special Agents and FBI support

employees redacted pursuant to FOIA Exemptions 6 and 7(C), but declined to release any

additional pages on the basis that other subjects of the investigation remained at large.[8]  (*Id.* and

Exs. B-C.)  During the pendency of this litigation, SIFO conducted a new search for public

source material.  (*Id.* at ¶ 7 and Ex. D.)  This time, SIFO located approximately 278 pages in the

281B-SI-45838 sub-file.  (*Id.*)  Of these pages, 154 pages did not pertain to plaintiff, and 40

pages were duplicates of the 81 pages previously released.  (*Id.*)  Therefore, on October 24,

2008, the FBI released an additional 84 pages of public source material that it had withheld in

1997 due to the then-pending investigation, once again withholding pursuant to FOIA

Exemptions 6 and 7(C) the names and identifying information of FBI Special Agents and FBI

support employees as well as those of third parties merely mentioned in the records.  (*Id.*)  It

appears that the newspaper articles and other public source documents were not redacted; rather,

names and identifying information of FBI personnel and third parties were removed from

---

[6] By separate Order, the Court will grant this motion.

[7] Public source material comprises information that is publicly available, such as newspaper
clippings, press releases, and indictments.  (Def.'s Reply at 4 n.7.)

[8] These 81 pages were in addition to the 580 pages initially identified as potentially responsive to
plaintiff's request.  (Third Hardy Decl. ¶ 6.)  While the FBI initially relied only on Exemption
7(C), it now also relies on Exemption 6.

notations made by agency personnel in the margins around the public source material.  (*See id.*

Ex. D.)

Because additional SIFO records remain to be processed, the only issues before the Court

at this time are whether, as defendant claims, it has disclosed all responsive, non-exempt records

located in FBIHQ's files and all responsive, non-exempt public source records in SIFO's files.

## ANALYSIS

### I.      Summary Judgment Standard

In a FOIA case, summary judgment may be granted to the government if "the agency

proves that it has fully discharged its obligations under the FOIA, after the underlying facts and

the inferences to be drawn from them are construed in the light most favorable to the FOIA

requester." *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998); *see* Fed.

R. Civ. P. 56(c).  The Court may award summary judgment based solely on the information

provided in affidavits or declarations when the affidavits or declarations describe "the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey,*

656 F.2d 724, 738 (D.C. Cir. 1981).  An agency must prove that "each document that falls within

the class requested either has been produced, is unidentifiable, or is wholly exempt from the

Act's inspection requirements."  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal

citation and quotation omitted).  Review of the agency's denial of a FOIA request is *de novo*, and

the agency "bears the burden of establishing the applicability of the claimed exemption."

*Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003).

II.     **Adequacy of the Search**

Plaintiff challenges the adequacy of the FBI's search in light of the agency's failure to locate more records.  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  The agency must demonstrate that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  To meet this burden, the agency may submit nonconclusory affidavits or declarations that explain in reasonable detail the scope and method of the agency's search.  *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Defendant submits the Second Declaration of David Hardy to demonstrate the adequacy of the FBI's search.  Hardy's declaration is sufficiently detailed to enable the Court to conclude that the agency's search of FBIHQ's records was adequate.  As Hardy explains, in processing FOIA/Privacy Act requests, the agency begins by searching its Central Records System ("CRS"), a system that includes records of "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes."  (Second Hardy Decl. ¶ 21.)  This search located three responsive FBI main files, but no responsive cross-references.  (*Id.* ¶¶ 32, 34.).  The FBI also searched its Electronic Surveillance ("ELSUR") indices, a separate system of records that

includes the names of individuals whose electronic and/or voice communications have been intercepted.  (*Id.* ¶¶ 27-28.) The FBI's search of the ELSUR indices failed to locate any responsive records.  (*Id.* ¶ 34.)

Plaintiff raises no specific challenge to the FBI's search methodology, but rather he questions the adequacy of the FBI's search based on the agency's failure to locate additional records that he believes the agency should have in its possession.  However, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search. . . .  After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  Moreover, although an agency may not limit its search to one or more places if there are additional sources that are likely to turn up the information requested, *Valencia-Lucena*, 180 F.3d at 326, the FBI in this case has conceded that additional responsive records exist in SIFO's files and is currently processing them in order to produce all nonexempt material.  SIFO is the only field office that plaintiff requested be searched, and it is the location where responsive documents were reasonably likely to exist since this office is the office of origin for the FBI's investigation of plaintiff.[9]

---

[9] A FOIA request must generally be made in accordance with an agency's "published rules stating the time, place, fees (if any), and procedures to be followed . . . ." 5 U.S.C. § 552(a)(3)(A).  A request for records maintained by a particular FBI field office must be submitted directly to that field office.  28 C.F.R. §§ 16.3(a), 16.41(a).  Accordingly, the FBI is not obligated to undertake a search of its field offices' records when a requester does not submit his request there.  *See Ray v. FBI*, 441 F. Supp. 2d 27, 32 (D.D.C. 2006).

Plaintiff has failed to rebut the FBI's showing of a good faith search.  Accordingly, the Court finds that the FBI has demonstrated that FBIHQ conducted an adequate search.[10]

## III.    Need for a Vaughn Index

Plaintiff also contends that defendant failed to comply with the Court's Order to provide a *Vaughn* index.  In this case, defendant filed two declarations of David M. Hardy, which include redacted copies of the 37 pages of FBIHQ records and the 165 pages of SIFO public source records released to plaintiff.  (*See* Second Hardy Decl. and Third Hardy Decl.)  Listed next to each deletion are codes that indicate the FOIA exemptions being claimed and the nature of the information withheld.[11]  (*See* Second Hardy Decl. ¶¶ 36-37.)  Moreover, in the case of the three pages of FBIHQ records withheld in their entirety, the codes are included within the text of the Second Hardy Declaration.  The Hardy declarations include indices that explain the meanings of each code.  (*See id.* ¶ 37; Third Hardy Decl. ¶10.)  The D.C. Circuit has approved the use of such coded indices.  *See Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349-50 (D.C. Cir. 1987).  The Hardy declarations also discuss in detail the types of information that were redacted pursuant to each exemption.  These declarations and the coded indices and associated redacted pages of disclosed records are adequate to inform plaintiff of the nature of the information withheld and the reasons therefore and to permit the Court to determine the applicability of each exemption

---

[10] Because defendant has only recently discovered that additional SIFO records remain to be processed, the Court cannot at this time rule on the adequacy of SIFO's search for records. Accordingly, it is expected that defendant will provide in its summary judgment motion regarding the SIFO documents an affidavit that details the scope and method of SIFO's search for records, including its search for public source information.

[11] These codes were not included on approximately half of the public source records because only the names and identifying information of FBI Special Agents and support employees were redacted pursuant to FOIA Exemptions 6 and 7(C).  (*See* Third Hardy Decl. ¶ 10 n.3.)

claimed.[12]  Any more specificity would result in disclosure of the very information withheld.

*Keys*, 830 F.2d at 350.  Accordingly, defendant's index is sufficient.

## IV.        Segregability

Plaintiff also challenges the FBI's compliance with the requirement that all "reasonably

segregable" portions of records be disclosed.  *See* 5 U.S.C. § 552(b).  FOIA requires that "even if

some materials from the requested record are exempt from disclosure, any 'reasonably

segregable' information from those documents must be disclosed after redaction of the exempt

information unless the [non-]exempt portions are 'inextricably intertwined with exempt

portions.'"  *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002)

(quoting 5 U.S.C. § 552(b) and *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242,

260 (D.C. Cir. 1977)).

As stated above, defendant has released 37 of 40 pages of responsive FBIHQ records and

all 165 pages of responsive SIFO records, including an explanation for each redaction in most

cases on the face of each page.  Moreover, the context, along with the claimed exemptions,

adequately describes the content of the three withheld pages.  With respect to the FBIHQ

records, Hardy avers that

> [a]ll documents were processed to achieve maximum disclosure consistent with
> the access provisions of the Privacy Act and the FOIA.  Every effort was made to
> provide plaintiff with all material in the public domain and with all reasonably
> segregable portions of releasable material.  No reasonably segregable, nonexempt
> portions were withheld from plaintiff.  To further describe the information
> withheld could identify the very material that the FBI seeks to protect.

---

[12] Moreover, additional information about the content of the withheld pages can be discerned
from their location within the disclosed material.  For example, pages 29 and 30 are clearly the
second and third pages of a teletype regarding the FBI's criminal investigation into narcotics
trafficking by plaintiff and others, while page 39 is clearly the third page of a March 2, 1994
memorandum regarding plaintiff's alleged escape attempt from a federal institution.

(Second Hardy Decl. ¶ 35.)  With respect to the public source records, Hardy similarly states that "[t]he FBI has processed and released all segregable information . . . ."  (Third Hardy Decl. ¶ 22.)  Having reviewed the Hardy declarations and the redacted copies of the records, the Court concludes that the FBI has met its burden to disclose all reasonably segregable material.

## V.   Exemptions

Plaintiff offers an unspecified challenge to "the sufficiency of the justifications for withholding materials" (Pl.'s Opp'n at 2), and he raises specific challenges with respect to certain exemptions, each of which will be addressed below.

### A.   Privacy Act Exemption (j)(2)

Section (j)(2) of the Privacy Act permits an agency to exempt from disclosure criminal investigative records systems, provided that the principal function of the agency is the "enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . . ."  5 U.S.C. § 552a(j)(2).  The Department of Justice, of which the FBI is a component, has exempted the FBI's CRS from disclosure under 28 C.F.R. § 16.96.

Defendant asserts that 19 of the 40 FBIHQ pages found to be responsive to plaintiff's FOIA/Privacy Act request are exempt from disclosure pursuant to Exemption (j)(2).  These records are part of the FBI's CRS and concern three criminal investigations of plaintiff, including two instances where the FBI investigated plaintiff's alleged plot to escape from a federal prison, in violation of 18 U.S.C. § 751(a), and one in which the FBI participated in a multi-agency task force investigation of narcotics charges, in violation of 21 U.S.C. § 841(a)(1).[13]  (Second Hardy Decl. ¶ 40.)  Accordingly, these records clearly qualify as investigative records filed for law enforcement purposes and are therefore exempt from

---

[13] Defendant has also withheld an investigative file number pursuant to Exemption (j)(2).  (*See* Second Hardy Decl. Ex. T at 3; Def.'s Mot. for Summ. J. at 10 n.7.)

disclosure under the Privacy Act.[14]  Moreover, with exceptions not relevant here, the Privacy Act

only allows individuals to access records or information that pertain to the requestor.  *See* 5

U.S.C. § 552a(b).  Since plaintiff's request seeks information that does not relate to himself, this

information has been properly withheld under the Act.

Notwithstanding the exemption of some of the requested records from the disclosure

provisions of the Privacy Act, plaintiff may still obtain disclosure if the records are not exempt

from FOIA.  *See* 5 U.S.C. § 552a(b)(2), (t)(2); *Greentree v. U.S. Customs Serv.*, 674 F.2d 74

(D.C. Cir. 1982).  Accordingly, the Court will examine each of those claimed exemptions.

### B.       FOIA Exemption 2

FOIA Exemption 2 exempts from disclosure records "related solely to the internal

personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  It applies to information

"used for predominantly internal purposes."  *Crooker v. Bureau of Alcohol, Tobacco, and

Firearms*, 670 F.2d 1051, 1074 (D.C. Cir. 1981).  Once this "predominantly internal" test is met,

the agency may withhold the material if it demonstrates that (1) "the material relates to trivial

administrative matters of no genuine public interest" (so called "low 2" materials) or (2) the

"disclosure may risk circumvention of agency regulation" (so called "high 2" materials).

*Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).

The FBI invoked Exemption 2 to protect from disclosure two telephone numbers of FBI

Special Agents and one permanent source symbol number that was assigned to a cooperating

---

[14] While plaintiff disputes the FBI's claim that he plotted to escape from prison, he does not
dispute the fact that the agency conducted an investigation of this plot.  Thus, regardless of the
truth of the matter, this exemption applies.

witness in order to administratively conceal his or her identity.[15]  (Second Hardy Decl. ¶ 44.)

Clearly, these telephone numbers relate solely to the FBI's internal practices and are of no

genuine public interest.  *See, e.g., Ray v. FBI*, 441 F. Supp. 2d 27, 33 (D.D.C. 2006) (upholding

the withholding of an FBI telephone number pursuant to Exemption 2).  Moreover, according to

Hardy, disclosure of the source symbol number "would reveal information as to the strength,

breadth and scope of the informant program" and if repeatedly released to the public in various

documents, could be used to determine the identity of the source.  (Second Hardy Decl. ¶ 44.)

Plaintiff has offered no argument to dispute these assertions.  In fact, the D.C. Circuit has

specifically found such informant codes to fall within the ambit of Exemption 2.  *See Lesar v.*

*U.S. Dep't of Justice*, 636 F.2d 472, 485-86 (D.C. Cir. 1980).  Accordingly, because disclosure

of source symbol numbers could compromise the FBI's use of informants and because the public

has no legitimate interest in gaining such information, the Court finds that defendant has

properly withheld this information under Exemption 2.

**C.      Exemption 7(C)**

FOIA Exemption 7(C) protects from disclosure "records or information compiled for law

enforcement purposes" to the extent that disclosure "could reasonably be expected to constitute

an unwarranted invasion of personal privacy."[16]  5 U.S.C. § 552(b)(7)(C).  To determine whether

---

[15] The FBI also invoked FOIA Exemption 7(D) to protect the source symbol number.  However, because the Court concludes that the information was properly withheld under Exemption 2, it need not address defendant's claim that the information was also properly withheld under Exemption 7(D).

[16] The FBI clearly has satisfied Exemption 7(C)'s threshold requirement that the information withheld has been compiled for law enforcement purposes.  The Hardy declarations make clear that the information that was withheld is related to criminal investigations of plaintiff's involvement in the importation of narcotics and of his alleged attempt to escape from a federal prison, both of which are types of law enforcement investigations over which the FBI has jurisdiction.  (*See* Second Hardy Decl. ¶ 55.)  *See also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) (Where an agency specializes in law enforcement, its declarations

Exemption 7(C) applies, the Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). Where a legitimate privacy interest exists, the requester must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." *Boyd v. Criminal Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)) (internal quotation marks omitted). Moreover, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989) (internal quotation marks omitted).

The FBI invoked Exemption 7(C) to protect the following information pertaining to the criminal investigations of plaintiff: (1) the names and identifying information of FBI Special Agents and support personnel; (2) the names and identifying information of third parties merely mentioned, as well as of third parties of investigative interest to the FBI or other law enforcement agencies; and (3) the identities of and information provided by Cooperative Witnesses.[17] (Second Hardy Decl. ¶¶ 47, 49-51, 53, 59, 61-63, 65; Third Hardy Decl. ¶¶ 10 n.3, 17, 20.)

---

"must establish a rational nexus between the investigation and one of the agency's law enforcement duties, and a connection between an individual or incident and possible security risk or violation of federal law." (citation and internal quotation marks omitted).)

[17] This information includes such data as social security numbers, telephone numbers and extensions, addresses, license plate numbers and registration information, dates of birth, aliases, career and job titles, FBI arrest numbers, police department numbers, fingerprint classifications, and personal characteristics. (Second Hardy Decl. ¶¶ 47, 50-51, 59, 62-63; Third Hardy Decl. ¶¶ 17, 20.) Any information that could identify Cooperative Witnesses, including dates and places where they had been, was also withheld. (Second Hardy Decl. ¶¶ 53, 65.) Moreover, with

The D.C. Circuit has consistently held that Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses, and informants. *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (citing cases). Accordingly, the Court has adopted a "categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Id.* (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991)).

In this case, plaintiff claims a public interest in proving his innocence, which he claims weighs in favor of disclosure. However, "it is well established that an individual's personal interest in challenging his criminal conviction is not a public interest under FOIA because it 'reveals little or nothing about an agency's own conduct.'" *Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008) (quoting *Reporters Comm.*, 489 U.S. at 773). Moreover, plaintiff has not provided any evidence that the FBI engaged in any illegal activity.[18] Although the D.C. Circuit has held that "the privacy interest in nondisclosure of identifying information may be diminished where the individual is deceased," *Schrecker*, 349 F.3d at 661 (quoting *SafeCard*, 926 F.2d at 1206), this factor is irrelevant where, as here, plaintiff has not identified any public interest in disclosure. "[S]omething, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

respect to newspaper articles released as public source material, similar information contained in notations surrounding the articles was redacted. (*See* Third Hardy Decl. Ex. D.) Because the Court concludes that the information was properly withheld under Exemption 7(C), it need not address defendant's claim that the information was also properly withheld under Exemption 6.

[18] Plaintiff's speculative allegations regarding agency mistakes and bad faith do not constitute evidence of illegal activity nor do they raise an inference that the government is improperly withholding information.

Therefore, the Court finds that the privacy interests in withholding the identifying information outweigh the public interest in disclosure and that disclosure of this information would constitute an unwarranted invasion of personal privacy within the meaning of Exemption 7(C).

For this same reason, the FBI was justified in refusing to address plaintiff's request for third-party information.  In addition to information about himself, plaintiff requested information regarding various third parties involved in his criminal trial, including individuals who were cooperating witnesses.  (*See* Second Hardy Decl. ¶ 7.)  If a third party is the target of a FOIA request, the agency to which the request is submitted may provide a "Glomar" response, refusing to confirm or deny the existence of records or information responsive to the request on the ground that even acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy.  *Phillippi v. CIA*, 546 F.2d 1009, 1014-15 (D.C. Cir. 1976) (CIA refused to confirm or deny existence of secret vessel, the "Hughes Glomar Explorer"); *see Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995).  Citing such concerns, the FBI neither confirmed nor denied the existence of records pertaining to individuals about whom plaintiff had requested information.  (*See* Second Hardy Decl. ¶ 7 n.1.)  Given the nature of the information plaintiff sought, there can be no doubt that this information constitutes law enforcement records.  Thus, the FBI's Glomar response was proper.  *See, e.g., Martin v. Dep't of Justice*, 488 F.3d 446 (D.C. Cir. 2007) (upholding under Exemption 7(C) FBI's Glomar response to plaintiff's request for records that would show that a private citizen had previously been suspected of crime for which plaintiff had been convicted); *Barbosa v. Drug Enforcement Admin.*, 541 F. Supp. 2d 108 (D.D.C. 2008) (upholding under Exemption 7(C) DEA's Glomar response to plaintiff's request for records about an alleged informant).

Finally, plaintiff argues that the identities of FBI agents who participated in his prosecution are in the public domain because their names have been disclosed in newspaper articles, and, in any event, he knows who they are because "there were only two principle agents involved in [his] case." (Pl.'s Amendment to Surreply at 2.) However, the fact that plaintiff may have deduced the identities of individuals whose names and identifying information have been withheld or that their identities have previously been disclosed does not diminish their privacy interests. *See Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990); *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1491 (D.C. Cir. 1984). Plaintiff has the burden of "pointing to specific information in the public domain that appears to duplicate that being withheld." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983). Because plaintiff does not allege that the information withheld is identical to information available in the public domain, the FBI's withholding of the identities of FBI agents and others was proper.

**D.       Exemption 7(D)**

FOIA Exemption 7(D) protects from mandatory disclosure records or information compiled for law enforcement purposes (1) where disclosure "could reasonably be expected to disclose the identify of a confidential source, including a . . . foreign agency or authority . . . which furnished information on a confidential basis," and (2) "in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). When invoking this exemption, an agency must show that an informant provided the information under an express or implied promise of confidentiality. *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993). An agency demonstrates an express assurance by providing "probative

evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998) (citation omitted). Such evidence may take a number of forms, including "notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Id.* (citations omitted). An implied assurance may be inferred from evidence showing the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target. *Computer Professionals for Social Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 905-06 (D.C. Cir. 1996).

The FBI has invoked Exemption 7(D) to withhold the identity of a foreign authority that provided information to the FBI under an express grant of confidentiality and to withhold the names of and information provided by several Cooperative Witnesses under either an express or implied assurance of confidentiality.[19] (*See* Second Hardy Decl. ¶¶ 68, 70-71.) In this case, Hardy provides nothing beyond a bare assertion that a foreign authority provided information to the FBI under an express assurance of confidentiality. While such a claim is insufficient to carry the FBI's burden of presenting probative evidence that the source received an express grant, the Court nevertheless concludes that a promise of confidentiality may be inferred. The FBI withheld the identity of a foreign authority that provided information in connection with the FBI's investigation of illegal, large scale narcotics trafficking. Given the necessarily close cooperation between the FBI and foreign law enforcement authorities, the Court concludes that an implied confidential relationship was established.

---

[19] While there appears to be some overlap in the information regarding Cooperative Witnesses that was withheld pursuant to Exemptions 7(C) and 7(D), this overlap does not appear to be complete. Accordingly, the Court addresses defendant's assertion of both exemptions to protect Cooperative Witness information.

Similarly, the Court finds a reasonable inference that information provided by Cooperative Witnesses was supplied under an implied promise of confidentiality.  A Cooperative Witness is an "individual who meets the definition of a [Confidential Informant] who has agreed to testify in a proceeding as a defendant or potential witness."  (Second Hardy Decl. ¶ 71.) Accordingly, the FBI's policy is to "protect the Cooperative Witness's true identity from unauthorized disclosure to the same degree as that of a Confidential Informant."  (*Id.*)  Such an individual may not be required to testify and, even if he or she does testify, that testimony may be limited to certain issues so that their role in providing other information to the FBI may not be publicly known.  (*Id.* ¶ 72.)  Because of the inherent risk of harm to such an individual, it is reasonable to infer that he or she would not agree to such an arrangement absent a promise of confidentiality.

## CONCLUSION

For the foregoing reasons, the Court will grant [16] defendant's motion for summary judgment in part.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: January 26, 2009