UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EUGENE A. FISCHER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 07-2037 (ESH) |
| U.S. DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiff, proceeding *pro se*, has brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, to compel disclosure by the Federal Bureau of Investigation ("FBI") of records regarding his criminal case.[1] Defendant produced some responsive documents from its search of FBI Headquarters ("FBIHQ"), and the Court granted summary judgment for defendant with respect to those records. *Fischer v. Dep't of Justice*, 596 F. Supp. 2d 34, 39-40 (D.D.C. 2009) ("*Fischer II*"). Since then, defendant has searched the FBI's Springfield, Illinois Field Office ("SIFO") for responsive documents and has produced additional records to plaintiff. Defendant now moves for summary judgment with respect to those disclosures. For the reasons set forth below, the Court will grant defendant's motion.

---

[1] Plaintiff originally sued the Department of Justice ("DOJ"), the FBI, and the Office of Information and Privacy ("OIP"). Because the FBI and OIP are both components of DOJ, the Court substituted DOJ as the sole defendant. *See Fischer v. FBI*, No. 07-CV-2037, 2008 WL 2248711, at *1 n.1 (D.D.C. May 29, 2008).

**BACKGROUND**

This case arises out of plaintiff's requests under FOIA and the Privacy Act for FBI records concerning his 1988 criminal conviction in the United States District Court for the Southern District of Illinois. He submitted successive requests to SIFO in 1995 and 1996, seeking to acquire information that "could help him to prove his actual innocence." (Compl. ¶¶ 6-7; *Fischer II*, 596 F. Supp. 2d at 40.) The details of plaintiff's prior attempts to obtain information and defendant's responses are set out in this Court's prior opinions in *Fischer v. FBI*, No. 07-CV-2037, 2008 WL 2248711, at *1 n.1 (D.D.C. May 29, 2008) ("*Fischer I*"), and *Fischer II*, 592 F. Supp. 2d at 40-42, so only those facts essential to the Court's ruling on the instant motion will be recounted here.

After affirming the FBI's decision to withhold all records responsive to plaintiff's request in 1996, OIP reversed itself in 2006, prompting the FBI to renew its search for responsive records. *Fischer II*, 596 F. Supp. 2d at 40. The FBI subsequently released some records to plaintiff and withheld others. (Compl. ¶¶ 13-14.) Disputing both the adequacy of the search and the decision to withhold certain records under FOIA and Privacy Act exemptions, plaintiff sued to compel disclosure. (*Id.* ¶ 18.)

Because the FBI discovered that it had mistakenly limited its renewed search to the records in FBIHQ, even though plaintiff had directed his original request to SIFO, defendant moved for a three-month stay of these proceedings with regard to responsive nonpublic SIFO records. (*See* Def.'s Mot. to Stay Proceedings and for Discl. Sched. [Dkt. 31].) On January 26, 2009, the Court granted the motion "to allow the [FBI] to complete its processing under [FOIA] of the recently-discovered records located at its Springfield, Illinois Field Office." (*See* Minute Order, Jan. 26, 2009.) That same day, the Court issued its ruling in *Fischer II*, which was

limited to all responsive, nonexempt public records in SIFO's files, but it did not address responsive non-public files, which the FBI was still processing. 592 F. Supp. 2d at 42.

Since then, defendant has finished processing SIFO's responsive nonpublic records, yielding 1,904 pages of relevant documents of which it has released 1,615 pages to plaintiff. (Def.'s Mot., Sixth Decl. of David M. Hardy ["Sixth Hardy Decl."] ¶ 4.)[2] The non-disclosed portion comprises 248 pages withheld as duplicates and 41 pages withheld pursuant to statutory exemptions. (*Id.*) The disclosed records are made up of 1,108 partially redacted pages and 597 fully released pages. (*Id.*) The parties have agreed, for the purpose of this litigation, to a 464-page representative sample[3] that includes, *inter alia*, memoranda, fax cover sheets, copies of checks, handwritten interview notes, photo lineup notes, maps, telephone records, and investigative reports. (Sixth Hardy Decl. ¶ 5.) Defendant argues that because "the FBI has

---

[2] David M. Hardy is Section Chief of the Record/Information Dissemination Section, Records Management Division, at FBIHQ. His initial Declaration was attached to defendant's February 14, 2008 Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Defendant has submitted several other declarations by Hardy throughout this litigation, attaching his sixth and most recent declaration to the instant motion.

Defendant includes codes with each withholding to indicate which FOIA exemptions are claimed and the nature of the information withheld, and the Sixth Hardy Declaration includes an index that explains those codes. (*See* Sixth Hardy Decl. ¶ 25.) The D.C. Circuit has approved the use of such coded indices. *See Keys v. Dep't of Justice,* 830 F.2d 337, 349-50 (D.C. Cir. 1987). Hardy's sixth declaration also discusses in detail the types of information that were redacted pursuant to each exemption. The declarations and the coded indices are adequate to inform plaintiff of the nature of the information withheld and the reasons therefor and to permit the Court to determine the applicability of each exemption claimed. Accordingly, the Sixth Hardy Declaration meets defendant's index requirements under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

[3] "Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved," *Bonner v. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991), because it "allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index or an *in camera* inspection. If the sample is well-chosen, a court can, with some confidence, 'extrapolate its conclusions from the representative sample to the larger group of withheld materials.'" *Id.* (quoting *Fensterwald v. CIA*, 443 F. Supp. 667, 669 (D.D.C. 1977)); *see also Meeropol v. Meese,* 790 F.2d 942, 958 (D.C. Cir. 1986).

conducted a reasonable search of agency records, has disclosed all non-exempt responsive records, and has not improperly withheld any responsive records from plaintiff," no genuine issue remains as to any material fact, and it is therefore entitled to summary judgment. (Def.'s Mot. for Summary J. in Part ["Def.'s Mot."] at 2; *see* Fed. R. Civ. P. 56(c)(2).)[4]

## ANALYSIS

I.     **STANDARD OF REVIEW**

The Court may grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol* 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citations omitted). "In a FOIA case, summary judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA

---

[4] Because plaintiff is proceeding *pro se*, the Court issued a *Fox/Neal* Order on December 14, 2009 to alert plaintiff that "the Court will accept as true any factual assertions contained in affidavits, declarations or attachments submitted by the defendant in support of a motion for summary judgment unless the plaintiff submits affidavits, declarations or documentary evidence showing that the defendant's assertions are untrue." (*See* Order of Dec. 14, 2009 (citing *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992)) [Dkt. 51]; *see infra* note 6.)

requester.'" *Fischer II*, 596 F. Supp. 2d at 42 (quoting *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). The requester may challenge such a showing by "set[ting] out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e), that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). However, agency affidavits "are afforded a presumption of good faith," and an adequate affidavit "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001)). In other words, a requester cannot rebut the good faith presumption through "'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). But "if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Weisberg v. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980) (internal quotation marks omitted).

## II. PRESUMPTION OF GOOD FAITH

Plaintiff argues that defendant's past lapses in producing requested information demonstrate a track record of bad faith that rebuts the presumption of good faith that would ordinarily attach to the government's affidavits. Plaintiff points to delays in document production as evidence of bad faith, especially defendant's failure to abide by the statutory deadlines for timely action and the ten years that passed between his original FOIA request and defendant's change of its disclosure policies that enabled the FBI to release responsive records. (Pl.'s Response to Def.'s Mot. ["Pl.'s Opp'n"] at 3-4.)

The Court rejects plaintiff's arguments that defendant's failure to produce documents

until after it changed its disclosure policies, or until after litigation commenced, evinces bad faith or an inadequate search. "[I]n view of the well-publicized problems created by the . . . time limits for processing FOIA requests and appeals, the [agency's] delay alone cannot be said to indicate an absence of good faith." *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978) (footnote omitted).

Plaintiff also urges a finding of bad faith because of inconsistent reports by the FBI of how many responsive files had been found. (*See* Pl.'s Opp'n at 4.) Notwithstanding plaintiff's point that "Hardy admitted that there was a mistake made . . . as to the number of [responsive] files" (*id.*), mistakes do not imply bad faith. In fact, the agency's cooperative behavior of notifying the Court and plaintiff that it had discovered a mistake, if anything, shows good faith.

To be sure, defendant has not performed its duties under FOIA perfectly, but error-free performance is not required. The particular lapses in defendant's search for and production of plaintiff's requested records do not rise to the level of rebutting the presumption of good faith that attaches to statements made by agency officials under penalty of perjury.

### III. ADEQUACY OF SEARCH

Plaintiff contends that the FBI failed to conduct a reasonable and good faith search for responsive documents. Given the lack of any specific showing of bad faith, the Court is not persuaded.

An agency from which information has been requested must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). The

Court applies a "'reasonableness' test to determine the 'adequacy' of search methodology," *Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), and requires a "reasonable and systematic approach to locating the requested documents." *Ctr. for Pub. Integrity v. FCC*, 505 F. Supp. 2d 106, 116 (D.D.C. 2007). "The agency must demonstrate that it 'made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Fischer II*, 596 F. Supp. 2d at 42 (quoting *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

Defendant properly relies upon a relatively detailed, non-conclusory declaration that demonstrates the adequacy of the search. *See Weisberg*, 705 F.2d at 1351. As Hardy explains, in processing FOIA and Privacy Act requests, the agency begins by searching its Central Records System ("CRS"), a system that includes records of "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes." (Sixth Hardy Decl. ¶ 8.) The FBI also searched its Electronic Surveillance ("ELSUR") indices, a separate system of records that includes the names of individuals whose electronic and/or voice communications have been intercepted. (*Id.* ¶¶ 14-15.) Hardy even explains the procedure agency employees used to determine whether individuals with protected identities can be presumed dead in order to disclose as much information as possible to a FOIA requester. (*Id.* ¶ 55 n.20.) Using these systems, FBI employees located one file in SIFO, labeled 281B-SI-45838, that included 1,904 pages of documents related to plaintiff. (*Id.* ¶ 19; *see also* Fourth Decl. of David M. Hardy ¶¶ 5-9.)

Plaintiff attacks the good faith of defendant's search by identifying individual documents that are allegedly responsive to his requests but which were not produced. (Pl.'s Opp'n at 3-5.) However, whether the agency located all copies of the records sought is not dispositive, for an

agency's search is not presumed unreasonable if it fails to find every possibly responsive document. *See Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (explaining that relevant question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."). Even plaintiff's showing of specific responsive documents that exist and were not produced does not rebut the presumption of good faith accorded to agency affidavits. *See id.* at 892 n.7. As the Court concluded in *Fischer II*, when confronting a similar argument by plaintiff, "Plaintiff raises no specific challenge to the FBI's search methodology, but rather he questions the adequacy of the FBI's search based on the agency's failure to locate additional records that he believes the agency should have in its possession . . . . Plaintiff has failed to rebut the FBI's showing of a good faith search." 596 F. Supp. 2d at 43.

Plaintiff now suggests that two unproduced documents, related to a seized property called "the Bicycle Club," represent more than an isolated omission by the FBI, and instead, they indicate "that the process was defective." (Pl.'s Opp'n at 6.) Plaintiff's assertion of bad faith based on the omission of the Bicycle Club documents relies on speculation that SIFO ever had possession of these documents. *See Accuracy in Media, Inc. v. NTSB*, No. 03-CV-024, 2006 WL 826070, at *8 (D.D.C. March 29, 2006) (plaintiff's showing of omitted documents "does not mean that they exist now or that the agency has possession of them"). The assertion also assumes that additional responsive documents, beyond those discovered by plaintiff, were not produced. However, "speculation as to the existence of additional records . . . does not render the searches inadequate." *Concepcion v. FBI*, 606 F. Supp. 2d 14, 30 (D.D.C. 2009); *see also SafeCard Servs.*, 926 F.2d at 1201 (rejecting "mere speculation"); *Oglesby*, 920 F.2d at 67 n.13 (D.C. Cir. 1990) (rejecting "hypothetical assertions").

Plaintiff's arguments against the adequacy of the search fail to put "the sufficiency of the agency's identification or retrieval procedure . . . genuinely in issue." *Weisberg*, 627 F.2d at 370. Accordingly, the Court concludes that defendant's search was adequate.

## IV. EXEMPTIONS

Defendant bases its withholdings on allowances for non-disclosure memorialized in Privacy Act Exemption (j)(2), and FOIA Exemptions 1, 2, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F). *See* 5 U.S.C. § 552a(j)(2); *id.* § 552(b)(1)-(3), (5)-(6), (7)(C)-(7)(F). As explained below, either plaintiff has conceded or defendant has sufficiently justified each of those exemptions.

### A. Conceded Exemptions

Plaintiff's opposition to the instant motion fails to address several of the asserted exemptions. Specifically, he does not challenge the FBI's redactions for which it asserts Privacy Act Exemption (j)(2) and FOIA Exemptions 2, 3, 6, 7(C), and 7(E). Plaintiff also does not address two of defendant's three categories of withholdings under Exemption 7(D).[5] "It is therefore proper to treat defendant's argument as conceded," with regard to the exemptions and categories not challenged by plaintiff.[6] *See Franklin v. Potter*, 600 F. Supp. 2d 38, 60 (D.D.C. 2009) (citing cases).

Accepting the unchallenged exemptions as conceded, the Court need not address their

---

[5] Defendant's *Vaughn* index includes three categories of Exemption 7(D) withholdings. (Sixth Hardy Decl. ¶ 25.) Category (b)(7)(D)-7, which plaintiff contests, applies to "Foreign Government Agency Information." (*Id.*) Categories (b)(7)(D)-4 and (b)(7)(D)-5, which plaintiff does not contest, are titled "Names, Identifying Data and/or Information Provided by Individual(s) Under an 'Implied' Assurance of Confidentiality" and "Persons Interviewed by the FBI under an 'Express' Assurance of Confidentiality," respectively. (*Id.*)

[6] Notwithstanding the principle that "'a document filed *pro se* is to be liberally construed,'" *Brown v. Dist. of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), the Court will accept the unchallenged exemptions asserted by the agency, because plaintiff was informed of the requirements of Fed. R. Civ. P. 56 in the Court's *Fox*/*Neal* Order of December 14, 2009. *See supra* note 4.

9

applicability and will grant summary judgment for defendant with respect to all records withheld or redacted under those exemptions.

**B.      FOIA Exemption 7(D)**

Plaintiff only challenges one of defendant's categories of Exemption 7(D) withholdings: "(b)(7)(D)-7 Foreign Government Agency Information (Implied Confidentiality)." (Def.'s Mot. at 35; Pl.'s Opp'n at 11; *see supra* note 5.) Plaintiff does not challenge the propriety of invoking Exemption 7(D), but instead suggests that defendant could partially release documents that it has wholly withheld in this category. Since the Court will analyze segregability separately (*see infra*), there is no substantive challenge to the assertion of Exemption 7(D) for the Court to address.

**C.      FOIA Exemption 7(F)**

Plaintiff challenges the assertion of Exemption 7(F), which protects law enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F), *amended by* OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524 (1997). He argues that because he does not personally pose a threat to any individual, no individual's life or physical safety can be put at risk by releasing the records as to which defendant asserts Exemption 7(F). Deferring to the agency's assessment of the potential dangers involved in disclosure, the Court finds plaintiff's assurances insufficient to compel disclosure of the Exemption 7(F) withholdings.

This exemption "affords broad protection to the identities of individuals mentioned in law enforcement files," *Jimenez v. FBI*, 938 F. Supp. 21, 30 (D.D.C. 1996), including any individual "reasonably at risk of harm." *Miller v. Dep't of Justice*, 562 F. Supp. 2d 82, 124 (D.D.C. 2008) (quoting *Long v. Dep't of Justice*, 450 F. Supp. 2d 42, 79 (D.D.C. 2006)). Courts

reviewing assertions of Exemption 7(F) "may inquire 'whether there is some nexus between disclosure and possible harm,'" but they defer, within limits, "to the agency's assessment of danger." *Id.* (quoting *Linn v. Dep't of Justice*, No. 92-CV-1406, 1995 WL 631847, at *8 (D.D.C. Aug. 22, 1995)).

Hardy's declaration describes with sufficient particularity the government's serious concern that disclosure of certain information would "readily reveal the identities" of FBI sources, in turn "plac[ing] them at great risk." (Sixth Hardy Decl. ¶ 79.) He supports this concern, in part, by citing reports of death threats. (*Id.*) Allegedly, these threats have come both from plaintiff and from other individuals. (*Id.*) Plaintiff vehemently denies having ever made any threats of violence to any person, and declares as much under penalty of perjury. (*See* Pl.'s Opp'n, Decl. of Eugene A. Fischer ¶¶ 2-3.) However, even if plaintiff is correct, he does not challenge Hardy's assertion that other individuals have threatened the confidential sources in question. Thus, the FBI's assessment that public disclosure would put its sources' safety at risk suffices to justify the invocation of Exemption 7(F).

### D. FOIA Exemption 1

The FBI has invoked FOIA Exemption 1, *see* 5 U.S.C. § 552(b)(1), to withhold material pursuant to an executive order concerning classified national security information. (Def.'s Mot. at 16.) *See* Exec. Order No. 12,958, 60 Fed. Reg. 19,825, Apr. 17, 1995 ("E.O. 12958"). Plaintiff attacks the use of Exemption 1 on the ground that he "has no idea why information concerning himself and this case are so classified."[7] (Pl.'s Opp'n at 9.) Based on defendant's explanation of how the materials are properly withheld under E.O. 12958 and what national security interests defendant seeks to protect by withholding them, the Court concludes that

---

[7] Plaintiff also claims that the withheld documents under Exemption 1 could have been partially redacted. For analysis of defendant's obligation with respect to reasonably segregable information, see *infra* Part IV.F.

Exemption 1 was properly asserted.

Exemption 1 permits the withholding of records "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). While an agency's declarations setting forth the reasons that information falls within this exemption are entitled to substantial weight, they must nevertheless afford the requester an ample opportunity to contest, and the court to review, the soundness of the withholding. *Campbell v. Dep't of Justice*, 164 F.3d at 30 (observing that "deference is not equivalent to acquiescence"); *Goldberg v. Dep't of State*, 818 F.2d 71, 76-77 (D.C. Cir. 1987) (noting that Exemption 1 does not relieve the courts of their "independent responsibility" to review the agency's decision).

Defendant invokes E.O. 12958, which authorizes the classification of records that include "intelligence activities and methods," Exec. Order 12958 § 1.4(c), and "foreign relations or foreign activities," *id.* § 1.4(d), and asserts that the Executive Order protects documents that the FBI has "marked at the 'Secret' level." (Sixth Hardy Decl. ¶ 32.) These criteria and interests are of the exact sort that FOIA seeks to exempt in § 552(b)(1). *E.g.*, *People for Am. Way Found. v. Nat'l Sec. Agency*, 462 F. Supp. 2d 21, 33 (D.D.C. 2006) (concluding that agency had properly invoked Exemption 1 for records withheld pursuant to E.O. 12958).

As noted above, courts must afford agency declarations like those filed here "substantial weight" because "the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosures of a particular classified record." *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981));

*see Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982). If the agency's declarations "are neither contradicted by other record evidence nor contaminated by indications of bad faith, the reviewing court should not ordinarily second-guess the agency's judgment." *ACLU v. Dep't of Justice*, 265 F. Supp. 2d 20, 27, 29 (D.D.C. 2003) (noting that the agency's burden under Exemption 1 is "not especially onerous").

Hardy elaborates on the nature and uses of the information and the risks involved in its disclosure with sufficient detail to persuade the Court that it is properly classified pursuant to E.O. 12958. (Sixth Hardy Decl. ¶¶ 37, 39.) Hardy's declaration describes "the context and nature of the withheld information," *Campbell*, 164 F.3d at 31, and the "justifications for non-disclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project*, 656 F.2d at 738 (citations omitted).

Given the need for deference to agency affidavits, plaintiff's bewilderment at the classification falls far short of overcoming the FBI's expert judgment that the disputed information must be withheld pursuant to E.O. 12958 because it is reasonably connected to national defense or foreign policy. The Court is "satisfied that proper procedures have been followed and that the information logically falls into [Exemption 1], [so it] need not go further to test the expertise of the agency." *Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C. Cir. 1982).

### E. FOIA Exemption 5

Among the documents that defendant found in the FBI's SIFO files were two drafts of a settlement agreement, prepared by the U.S. Attorney's Office for the Southern District of Illinois for internal purposes. Plaintiff claims that the final settlement agreement was released to the

public and refers to him and his forfeited property. (Pl.'s Opp'n at 10.) Despite plaintiff's urging to release the draft, the Court agrees with defendant that the deliberative process privilege of FOIA Exemption 5 shields it from release.

Exemption 5 "protects from disclosure 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting 5 U.S.C. § 552(b)(5)). "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Id.* The privileges that are incorporated into Exemption 5 include the deliberative process privilege, the attorney work-product privilege, and the attorney-client communications privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

Here, defendant asserts the deliberative process privilege. The deliberative process privilege's purpose is to "prevent injury to the quality of agency decisions." *NLRB*, 421 U.S. at 151. The privilege applies to records that the government demonstrates to be both "predecisional" – *i.e.*, "generated before the adoption of an agency policy" – and "deliberative," – *i.e.*, "reflect[ive of] the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). To demonstrate that a document is predecisional, the burden is on the agency to "establish[] what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Id.* at 868. The "deliberative" requirement renders Exemption 5 inapplicable to purely factual materials, or factual portions of otherwise deliberative documents. *E.g.*, *EPA v. Mink*, 410 U.S. 73, 91 (1973); *Coastal States*, 617 F.2d at 867.

Moreover, "[d]raft documents, by their very nature, are typically predecisional and deliberative," *Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983), and these documents' role in the deliberative process are adequately described by Hardy. According to Hardy, the drafts for which defendant asserts Exemption 5 were created for internal purposes only. (Sixth Hardy Decl. ¶ 50.) Defendant has produced partially redacted copies to plaintiff, and plaintiff concedes that he has access to the final settlement agreement, but plaintiff seeks disclosure of the draft documents without redactions. (Pl.'s Opp'n at 10.) The redacted portions of the draft documents differ from the publically released final settlement agreement. (Sixth Hardy Decl. ¶ 50.)

Hardy expounds on the predecisional and deliberative attributes of the drafts: they were part of the government's negotiations and preparations for a final settlement agreement, and as a result of their advisory nature their release could affect employees' candor with their colleagues on similar matters in the future. (Sixth Hardy Decl. ¶¶ 49-50.) The drafts originated from a government agency – the U.S. Attorney's Office. (*Id.* ¶ 50.) They are predecisional because, as proposed terms for a document which the government would later sign (*id.*), they had a concrete role within a decision-making process. Finally, the redacted terms composed advice and not facts, thus constituting deliberative material. Given this description and the relevant law, the Court concludes that the drafts were properly withheld.

### F. Segregability

Agency defendants in FOIA cases always carry a burden of showing that withheld documents contain no "reasonably segregable" factual information, 5 U.S.C. § 552(b), and plaintiff suggests that defendant has not satisfied its burden here. (*See, e.g.*, Pl.'s Opp'n at 9.) FOIA requires that "even if some materials from the requested record are exempt from

disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information," *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552(b)), "unless [the non-exempt portions] are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

To show that the agency met its segregability obligation, Hardy declares under penalty of perjury that "[t]he FBI has processed and released all segregable information from the documents responsive to plaintiff's request" and that "[i]n the processing of the records concerning plaintiff, the objective was to release as much segregable information as possible" without revealing exempted information.[8] (Sixth Hardy Decl. ¶¶ 71, 80; *see also id.* ¶¶ 21, 32(e), 55, 65.) Defendant's conscientious efforts at segregation are manifest by the agency's disclosure to plaintiff of 1,108 partially redacted pages of records, compared with only 48 pages withheld in full. (*See* Sixth Hardy Decl. ¶ 4.)

The exemptions at work here and defendant's reasons for withholding implicate sensitive information, the disclosure of which could jeopardize the identity of confidential sources, the secrecy of investigatory and enforcement techniques, the privacy and safety of individuals, and international law enforcement partnerships. Moreover, Hardy explains that the documents include information "that is detailed and singular in nature," such that even if the source's name is redacted one could nonetheless identify who the source was. (Sixth Hardy Decl. ¶¶ 73, 79.) Therefore, and because "there is nothing in the record to indicate that such [withholdings] are inappropriate," the Court is inclined to accept as true Hardy's assertions. *See Judicial Watch, Inc. v. Dep't of Justice*, No. 01-CV-639, 2006 WL 2038513, at *5-*6 (D.D.C. July 19, 2006)

---

[8] The presumption of good faith is sustained by the Court's prior conclusion in *Fischer II* that defendant's segregability analysis had been consistent with FOIA's requirements. *See* 596 F. Supp. 2d at 44.

(rejecting plaintiff's segregation claim where agency declaration "very clearly declare[d], under penalty of perjury . . . that 'all reasonably segregable information has been disclosed'"). Having shown both the highly sensitive nature of the exempt information and that non-exempt information is so intertwined with exempt information that the FBI could not release any meaningful portion without disclosing exempt information, defendant has satisfied its segregability burden.

## V. MONEY DAMAGES

Plaintiff seeks unspecified money damages under the Privacy Act's provision for civil remedies. (*See* Pl.'s Opp'n at 12.) He specifically invokes the Act's application of damages for an agency's failure "to maintain any record . . . with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination," 5 U.S.C. § 552a(g)(1)(C) or "to comply with any other provision of [the Privacy Act], or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." *Id.* § 552a(g)(1)(D). Having already found that defendant neither inappropriately withheld information nor acted in bad faith, the Court must reject any claim for damages.

The Privacy Act requires agencies to ensure that all records "used by the agency in making any determination about any individual" are maintained "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). Flagrant violations of the Privacy Act can entitle a plaintiff to money damages under § 552a(g)(1). If the Court finds that the agency "acted in a manner which was intentional or willful," the United States is liable for "actual damages sustained by the individual as a result of" the agency's failure to properly maintain the record. *Id.* § 552a(g)(4); *see generally Doe v. United States*, 821 F.2d 694, 697 n.8 (D.C. Cir. 1987). In

17

sum, to make out a claim for damages, a "plaintiff must allege: inaccurate records, agency intent, proximate causation, and an adverse determination." *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002) (internal quotation marks omitted); *see Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996).

The Court has granted summary judgment to defendant with respect to the only information the FBI has withheld pursuant to the Privacy Act, *see supra* Part IV.A, and without any violation of the Privacy Act, no damages can be awarded. The Court has also found that – despite the agency's less-than-perfect search and production of documents – defendant acted in good faith. (*See supra* Part II.) Aside from the already-established absence of intentionally or willfully inappropriate withholdings, plaintiff does not claim to have suffered "actual damages" as a consequence of any non-disclosure. A request for money damages cannot be granted where plaintiff has neither pled nor proven those elements.

## CONCLUSION

For the reasons stated herein the Court will grant defendant's motion for summary judgment in part. This judgment, together with the Court's disposition in *Fischer II*, disposes of all claims in the instant case. A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: July 13, 2010